motions, and the cases were then transferred to this court as part of MDL 1203.

The plaintiffs maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Wyeth counters that the non-diverse physicians and physicians' practice groups were fraudulently joined because the applicable two-year statute of limitations bars plaintiffs' claims against these non-diverse defendants.[7] See VA. CODE ANN. § 8.01-243(A) (West 2003). Thus, Wyeth argues, plaintiffs' claims against the non-diverse defendants should be disregarded for purposes of determining diversity of citizenship of the parties. Plaintiffs respond that the statute of limitations has not expired because they discovered their injuries less than two years prior to filing their motions for judgment against the non-diverse defendants.

II.

Under the federal removal statute, " ... any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court .... "  28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions between citizens of different

_____

7. The statute of limitations is not an issue in plaintiffs' claims against Wyeth, which has waived its right to assert the statute of limitations defense in return for the plaintiffs giving up their right to sue Wyeth for "punitive, exemplary, or multiple damages." Settlement Agreement § IV.D.3.c; see PTO No. 2625 and PTO No. 2680.

states if the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Complete diversity, of course, is required. State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31 (1967). If an action originally instituted in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court provided certain procedures are followed and certain conditions met. 28 U.S.C. §§ 1441 and 1446. Similarly, if the federal court subsequently determines that it does not have subject matter jurisdiction over a removed action, it must remand the action to the state court where it originated. 28 U.S.C. § 1447(c). A plaintiff or a defendant may seek to remand the case, or the court may do so on its own motion. Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 16-19 (1951); 16 Moore's Federal Practice, § 107.41[1][b][i] (Matthew Bender 3d ed.); see also Moses v. Ski Shawnee, Inc., 2000 WL 1053568, at *2 (E.D. Pa. July 31, 2000).

The presence of a party fraudulently joined cannot defeat removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Under our Court of Appeals' decision in Boyer v. Snap-on Tools Corporation, 913 F.2d 108, 111 (3d Cir. 1990), joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); In re Ikon Office Solutions, Inc. Secs. Litig., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000). As discussed above, we must decide whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer, 935 F.2d at 111.

We recognize that the burden on Wyeth to establish fraudulent joinder is a heavy one. See Wilson, 257 U.S. at 111. While we "must resolve all contested issues of substantive fact in favor of plaintiff," we do not take this to mean we must blindly accept whatever the party seeking remand may say no matter how incredible or how contrary to the overwhelming weight of the evidence. Id. We are also cognizant that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). The Supreme Court made it clear in Wilson that if a plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence. Wilson, 257 U.S. at 98. We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute.

On matters of substantive law, "[i]f there is even a possibility that a state court would find that the complaint

-7-

states a cause of action against any one of the resident
defendants, the federal court must find that joinder was proper
and remand the case to state court." Boyer, 913 F.2d at 111
(citation omitted). We are mindful that our inquiry into Wyeth's
claim of fraudulent joinder is less searching than that
permissible when a party seeks to dismiss a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure. Batoff v.
State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992); see also
Gaul v. Neurocare Diagnostic, Inc., No. 02-CV-2135, 2003 WL
230800, at *2 (E.D. Pa. Jan. 1, 2003). In other words, simply
because a claim against a party may ultimately be dismissed for
failure to state a claim does not necessarily mean that the party
was fraudulently joined. The test is whether this court thinks
there is a "reasonable basis" for finding the claim to be
colorable, that is, whether it is "wholly insubstantial and
frivolous." Batoff, 977 F.2d at 852.

### III.

The key issue for present purposes is whether the
prescribing physicians and their respective practice groups, all
purportedly Virginia citizens, were fraudulently joined as
defendants for the purpose of destroying diversity of citizenship
and preventing removal. Plaintiffs have brought claims for
medical negligence against all of these non-diverse defendants.

Wyeth argues that plaintiffs' motions for judgment do
not state colorable claims against these defendants because
plaintiffs' claims are barred by the Virginia statute of

limitations. It reads in pertinent part that "every action for
personal injuries, whatever the theory of recovery, and every
action for damages resulting from fraud, shall be brought within
two years after the cause of action accrues." VA. CODE ANN.
§ 8.01-243(A). The Virginia Code further provides that "[i]n
every action for which a limitation period is prescribed, the
right of action shall be deemed to accrue and the prescribed
limitation period shall begin to run from the date the injury is
sustained in the case of injury to the person." VA. CODE ANN.
§ 8.01-230 (West 2003). Virginia courts have found that the
injury is deemed to occur and the statute of limitations begins
to run whenever any injury, however slight, is sustained. St.
George v. Pariser, 484 S.E.2d 888, 889 (Va. 1997) (citation
omitted). Moreover, even if a plaintiff suffers substantial
effects from the injury only at a later date, the statute begins
to run when the injury is first incurred. Lo v. Burke, 455
S.E.2d 9, 13 (Va. 1995).

Unlike some states that have adopted discovery rules,
"Virginia law does not calculate statute of limitations in
personal injury from the date of diagnosis." Wade v. Danek
Medical Inc., 5 F. Supp. 2d 379, 382 (E.D. Va. 1998) (citations
omitted). Instead, "a cause of action can accrue before a
disease ... manifests itself by symptoms, since it is the onset
of the disease itself that triggers the running of the limitation
period." Hollingsworth v. Shenandoah Med. Imaging, Inc., 1996 WL
1065478, at *5 (Va. Cir. Ct. Jan. 18, 1996) (citation omitted).

-9-

Under Virginia law, a cause of action accrues when all essential elements are present.  Locke v. Johns-Manville Corp., 275 S.E.2d 900, 904 (Va. 1981).  Here, where the plaintiffs claim medical negligence, the cause of action accrues when (1) the defendants have a legal obligation to the plaintiffs, (2) the defendants violate or breach that duty, and (3) harm or damage occurs as a proximate result of the breach or violation.  See id. Accordingly, the statue of limitations begins to run when there is injury to the plaintiffs, "without which no cause of action would come into existence."  Id.

The crucial issue we must resolve is the time when the plaintiffs were first injured.  See Locke, 275 S.E.2d at 905. Wyeth claims that the last possible date on which plaintiffs could have sustained injuries was September 15, 1997, or shortly thereafter, when fen-phen was pulled from the market. Plaintiffs, on the other hand, contend that their respective injuries did not accrue until they were diagnosed with various heart problems within the past two years.[8]  To determine when

_____

8.  Plaintiffs, in their motions for judgment, aver that their injuries are as follows:  Audrey Alexander claims that an echocardiogram in May, 2002 reveals moderate mitral regurgitation as a result of her usage of Pondimin; Ida Haynes maintains that an echocardiogram in March, 2002 reveals moderate mitral regurgitation with left atrium enlargement as a result of her usage of Pondimin; Ruth Higginbottom claims that an echocardiogram in July, 2002 reveals moderate mitral regurgitation with left atrium enlargement as a result of her usage of Pondimin; Thomas Jarrell asserts that he became FDA positive (moderate or greater mitral regurgitation) within the past two years as a result of his usage of Redux; Cynthia Kanode claims that an echocardiogram in July, 2002 reveals moderate mitral regurgitation with left atrium enlargement as a result of (continued...)

-10-

plaintiffs' alleged injuries occurred, it is necessary to examine the relevant medical evidence. See id. "The 'time plaintiff was hurt' is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." Id. Because Wyeth claims that plaintiffs' claims are barred by the statute of limitations, it "bears the burden of proving the date on which the injury was sustained with a reasonable degree of medical certainty." St. George, 484 S.E.2d at 890. Wyeth is "not required to establish as a matter of law the exact date that the injury was first sustained; [it] need only to establish that it was more probable than not that it occurred more than two years prior to the filing of suit." Wade, 5 F. Supp. 2d at 383.    To support their position that their injuries occurred within two years of filing their motions for judgment, plaintiffs each submit an affidavit from either Dr. Emeki Nkadi or Dr. Peter S. Ro, board certified cardiologists, which states that "within a reasonable degree of medical probability and certainty, ... the plaintiff in this action sustained the injury to her heart that is the basis of this lawsuit within two years prior to the filing of this suit," Nkadi Decls. at ¶ 5, or "that the plaintiff in this action was injured

---

8.(...continued)
her usage of Pondimin, Redux, and/or Phentermine; and Linda
Trisvan maintains that an echocardiogram in July, 2002 reveals
moderate aortic regurgitation as a result of her usage of Redux.

and became FDA+ within two years prior to the filing of this
suit." Ro Decl. at ¶ 5.[9]

Wyeth, on the other hand, points out that Judge
Louis C. Bechtle,[10] in PTO No. 1415, determined that Pondimin and
Redux did not cause latent heart valve injuries but that the
injury occurred at or near the time of last use.[11]   See PTO
No. 1415, <u>Brown v. American Home Products Corporation</u>, CIV.A. No.
99-20593 (E.D. Pa. Aug. 28, 2000).  After a full hearing, Judge
Bechtle found:

> Pondimin and Redux were withdrawn from the
> market in September 1997 accompanied by an
> unprecedented amount of publicity which
> effectively warned diet drug users that they
> may have developed valvular lesions which
> could be detected through non-invasive
> echocardiograms.  Also, these lesions are not
> latent.  If they are going to occur, they are
> going to occur during drug use (or shortly
> thereafter) and be demonstrable on
> echocardiogram.

PTO No. 1415 at 41.  In reaching this conclusion, Judge Bechtle
considered a number of studies that tracked former Pondimin
and/or Redux patients for a number of years to find that "there
was no emergence of new disease after some latency period." <u>Id.</u>

_____

9.  Plaintiff Thomas Jarrell submitted an affidavit from Dr. Ro.
The rest of the plaintiffs submitted an affidavit from Dr. Nkadi.

10.  Judge Bechtle was the original MDL 1203 judge who presided
over the class action settlement in <u>Brown</u>.  He retired on
June 30, 2001.

11.  Plaintiff Cynthia Kanode claims damages resulting from
Redux, Pondimin, and Phentermine, "either individually or in
combination."  Kanode Mot. for J. at ¶ 18.  Because Judge Bechtle
determined in PTO No. 1415 that the ingestion of Phentermine did
not cause damage, we need not address Ms. Kanode's allegations of
damages resulting from Phentermine.

-12-

at 106-07.  In addition, Judge Bechtle relied upon the experts
who testified in the case, all of whom agreed that Pondimin,
Redux, and the fen-phen combination "do not cause latent valvular
regurgitation" and "that there is no evidence of significant
progression among such patients after they cease taking the
drugs."  Id. at 108.

    Importantly, class counsel, whom this court determined
adequately represented all class members including plaintiffs
here, had an opportunity but did not object to the contentions or
the finding of "no latency."  Judge Bechtle found that those who
did object ("objectors") "presented no evidence from any study to
support the contrary view that [heart disease] is either latent
or that it progresses in most former patients."  PTO No. 1415 at
107.  Judge Bechtle carefully analyzed the studies cited by the
objectors and determined that the studies did not support the
objectors' argument for latency.[12]  Specifically, one study cited
by the objectors found that "the prevalence and severity of [diet
drug] associated [heart problems] fifteen years after exposure is
similar to published reports of patients with recent exposure,
suggesting a lack of significant regression or progression of
[heart problems] over time."  PTO No. 1415 at 129.  Another study
cited by the objectors similarly noted that there does not appear
to be a progression of diet drug related heart problems.  Id.
The "competent medical evidence," as presented by Wyeth and

_____

12.  Judge Bechtle reviewed the studies of Eichelberger and
Fischer.  See PTO No. 1415 at 129 (citing Ex. P-118; Ex. P-119).

-13-

reviewed in detail by Judge Bechtle in PTO No. 1415, establishes "with a reasonable degree of medical certainty" that the diet drugs Pondimin and Redux do not create latent injuries.  Locke, 275 S.E.2d at 905.

Wyeth contends that the principle of collateral estoppel, that is issue preclusion, prevents the plaintiffs from relitigating the question when class members first suffered injuries from Pondimin and Redux.  Collateral estoppel bars the relitigation of an issue which has already been tried between the same parties or their privies.  It applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  Nat'l R.R. Passenger Corp. v. Pennsylvania Public Util. Comm'n, 342 F.3d 242, 252 (3d Cir. 2003) (citation omitted).

Here, the plaintiffs are class members and were thus parties to the Settlement Agreement.  The issue of latency was actually litigated in the fairness hearing and is the same issue that the plaintiffs are now raising to defeat the bar of the statute of limitations.  Judge Bechtle's determination of no latency, that is that class members' injuries occurred within a short time after ingesting fen-phen, was an essential finding, for it directly affected the adequacy of class representation. See PTO No. 1415 at 104-08.  Finally, PTO No. 1415, in which Judge Bechtle approved the Settlement Agreement, is a final and

-14-

valid judgment, upheld on appeal.  Thus, plaintiffs are collaterally estopped from relitigating the issue of latency through the affidavits of Dr. Ro and Dr. Nkadi.

Based on the record in this nationwide class action as set forth in PTO No. 1415, we find that plaintiffs' injuries were sustained and the cause of action accrued, at the latest, shortly after September 15, 1997, when fen-phen was withdrawn from the market.  Plaintiffs' motions for judgment were filed in the Virginia state courts over five years after September 1997 and thus over five years after their respective physicians prescribed these drugs.  Accordingly, there is "no reasonable basis in fact or colorable ground" that plaintiffs' motions for judgment against the defendant physicians and their practice groups were timely.  Boyer, 913 F.2d at 111.

IV.

Plaintiffs also bring claims against John Does 1-3 -- anonymous detail persons and marketing representatives of Wyeth whom plaintiffs believe to be citizens of Virginia.  Plaintiffs appear to join John Does 1-3 in an effort to defeat diversity. However, the removal statute, in relevant part, provides that "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a).  Thus, for the purposes of determining whether complete diversity exists so that these actions may remain in federal court, the citizenship of John Does 1-3 is irrelevant.

-15-

V.

Finally, we turn to the issue of whether a statute of limitations defense may be considered in support of a fraudulent joinder claim. We previously answered this question in the affirmative in PTO No. 2710 in Price v. American Home Products, CIV.A. No. 02-20229 (E.D. Pa. Jan. 17, 2003) and PTO No. 3207 in Ross v. Wyeth, et al., CIV.A. No. 03-20362 (E.D. Pa. Jan. 12, 2004), which are also part of the nationwide diet drug litigation. Because we have previously ruled on the same legal issue, we need not revisit it here. Instead, we refer the parties to our prior analysis of this issue. See e.g., PTO No. 3207 at 11-12.

We find that Wyeth has met its burden of proving that the statute of limitations defense "unquestionably" precludes plaintiffs from obtaining relief from their respective physicians and the physicians' practice groups. See Gaul, supra, 2003 WL 230800, at *3. Plaintiffs' attempts to join their physicians as defendants are improper efforts to prevent Wyeth from exercising its statutory right under 28 U.S.C. § 1441 to remove cases based on diversity of citizenship to federal court. Because Wyeth has met its heavy burden of establishing fraudulent joinder, we will deny plaintiffs' motions to remand these actions to the several Virginia state courts and dismiss plaintiffs' claims against defendant physicians, their respective practice groups, and John Does 1-3. Plaintiffs' motions for costs are without merit and will be denied.

-16-

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
IN RE: DIET DRUGS (Phentermine/     :
Fenfluramine/Dexfenfluramine)       :     MDL DOCKET NO. 1203
PRODUCTS LIABILITY LITIGATION       :
                                    :
THIS DOCUMENT RELATES TO:           :
------------------------------------:
BOBBIE AMIKER, et al                :     CIVIL ACTION NO. 03-20343
          v.                        :
WYETH, et al.                       :
                                    :
CAROLYN BREWER, et al.              :     CIVIL ACTION NO. 03-20279
          v.                        :
WYETH, et al.                       :
------------------------------------:
```

## PRETRIAL ORDER NO. 3391

AND NOW, this 2nd day of April, 2004, for the reasons
set forth in the accompanying Memorandum, it is hereby ORDERED
that:

(1)  the motion of plaintiffs in Bobbie Amiker, et al.
v. Wyeth, et al., CIV.A. No. 03-20343 (E.D. Pa.) to remand to the
Circuit Court of Bolivar County, Mississippi, is DENIED;

(2)  all claims in Amiker against Forrest Bailey, Susan
King, James Pittman, Jewell Norman, Amy Williams, and Gayle
Harrell are DISMISSED;

(3)  the motion of plaintiffs in Carolyn Brewer, et al.
v. Wyeth, et al., CIV.A. No. 03-20279 (E.D. Pa.) to remand to the
Circuit Court of Jones County, Mississippi, is DENIED; and

(4)  all claims in Brewer against defendants Forrest
Bailey, Susan King, James Pittman, Jewell Norman, Amy Williams,

Bruce Pruett, M.D., Guy Farmer, M.D., Jacob Edward Ulmer, M.D.,
Dan Overbeck, Susan Moulder, Charles T. Hull, M.D., and Mission
Primary Care Clinic are DISMISSED.

BY THE COURT:

*Harvey Bartle* J.

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ | : | MDL DOCKET NO. 1203 |
| Fenfluramine/Dexfenfluramine) | : | |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | FILED  APR 02 2004 |
| THIS DOCUMENT RELATES TO: | : | |
| ------------------------------- | : | |
| BOBBIE AMIKER, et al. | : | CIVIL ACTION NO. 03-20343 |
| v. | : | |
| WYETH, et al. | : | |
| | : | |
| CAROLYN BREWER, et al. | : | CIVIL ACTION NO. 03-20279 |
| v. | : | |
| WYETH, et al. | : | |

## MEMORANDUM AND PRETRIAL ORDER NO. 3391

Bartle, J.                                         April 2, 2004

        Before the court are the motions of thirty class

members in two separate actions to remand to the appropriate

Mississippi state courts their actions against defendants Wyeth,[1]

the Mississippi physicians who have prescribed Wyeth's diet drugs

Pondimin and/or Redux for them, one physician practice group,

five named sales representatives, and John Does 1-9 -- who appear

to be anonymous Mississippi sales representatives.  The state

court actions were captioned Bobbie Amiker, et al. v. Wyeth, et

al. (Miss. Cir. Ct. Bolivar County filed Dec. 30, 2002) and

Carolyn Brewer, et al. v. Wyeth, et al. (Miss. Cir. Ct. Jones

**ENTERED**

---

1.    Wyeth was previously known as American Home Products
Corporation ("AHP").

APR 0 2 2004

**CLERK OF COURT**

County filed Dec. 30, 2002). The plaintiffs in these actions are all represented by the same counsel.

Plaintiffs originally filed their complaints in Mississippi circuit courts in December, 2002, more than five years after Pondimin and Redux were withdrawn from the market in September, 1997. The Mississippi federal courts deferred ruling on plaintiffs' motions, and the cases were then transferred to this court as part of MDL 1203, the mass tort litigation involving Wyeth's diet drugs. No federal claim for relief is alleged.

I.

In brief summary, plaintiffs, all of whom are citizens of Mississippi, filed suits for injuries sustained as a result of their use of Pondimin and/or Redux. The defendant Wyeth, the manufacturer of these diet drugs, is a party of diverse citizenship from the plaintiffs. The defendant physicians who prescribed Pondimin and/or Redux to plaintiffs, and the defendant sales representatives who purportedly promoted these drugs are alleged to be citizens of Mississippi.

The plaintiffs maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Wyeth counters that the non-diverse physicians in these matters were fraudulently joined because the applicable two-year statute of limitations bars plaintiffs'

-2-

claims against them.[2]  See MISS. CODE ANN. § 15-1-36 (West 2003).
Plaintiffs respond that the statute of limitations has not
expired against the in-state physicians because plaintiffs
discovered their injuries less than two years prior to filing
their claims.  As for the claims against the in-state sales
representatives, Wyeth maintains that these claims are precluded
as a matter of law in Mississippi.  In response, plaintiffs
assert that the sales representatives are liable under the
learned intermediary doctrine.

II.

This court addressed many of the same issues presented
by plaintiffs' remand motions in Pretrial Order ("PTO") No. 3281
in French, et al. v. Wyeth, et al., CIV.A. No. 03-20353 (E.D. Pa.
Feb. 18, 2004), which is also part of the nationwide diet drug
litigation.  In French, we explained in detail the standards for
removal based on diversity jurisdiction and fraudulent joinder.
See PTO No. 3281 at 2-4.  Because we examined the same legal
issues as they applied to nearly identical facts in French, we
need not revisit them here.

---

2.  The statute of limitations is not an issue in plaintiffs'
claims against Wyeth, which has waived its right to assert this
defense in return for the plaintiffs' giving up their right to
sue Wyeth for "punitive, exemplary, and multiple damages."
Settlement Agreement § IV.D.3.c; see PTO No. 2625 and PTO No.
2680.

-3-

III.

We first turn to the issue of whether the prescribing
physicians, all purportedly Mississippi citizens, and Mission
Primary Care Clinic,[3] the one named physician practice group
located in Mississippi, were fraudulently joined as defendants
for the purpose of destroying diversity of citizenship and
preventing removal.   Plaintiffs have brought claims for medical
negligence against these non-diverse defendants.

Wyeth argues that plaintiffs' complaints do not state
colorable claims against these defendants because plaintiffs'
claims are barred by the Mississippi statute of limitations.   The
statute provides in relevant part:

> For any claim accruing on or before June 30,
> 1998, and except as otherwise provided in
> this section, no claim in tort may be brought
> against a licensed physician, osteopath,
> dentist, hospital, institution for the aged
> or infirm, nurse, pharmacist, podiatrist,
> optometrist or chiropractor for injuries or
> wrongful death arising out of the course of
> medical, surgical or other professional
> services unless it is filed <u>within two (2)</u>
> <u>years from the date the alleged act, omission</u>
> <u>or neglect shall or with reasonable diligence</u>
> <u>might have been first known or discovered.</u>

---

3.   Mission Primary Care Clinic appears to be the practice group
for Dr. Roe's 1-3, the unidentified prescribing physicians for
plaintiff Sharon Manning.   Dr. Roe's 1-3 are believed to be
Mississippi residents.   For the reasons stated <u>infra</u>, we need not
address the claims against Dr. Roe's 1-3.

-4-

MISS. CODE ANN. § 15-1-36(1) (emphasis added). For any claim accruing on or after July 1, 1998, the statute of limitations is the same for all relevant purposes.[4]

In <u>French</u>, we set forth the standard for when an action "accrues" under Mississippi law. <u>See</u> PTO No. 3281 at 6. In short, an action accrues when a patient can reasonably be held to have knowledge of the injury itself, cause of injury, and the conduct of the medical practitioner. <u>Fortenberry v. Mem'l Hosp. at Gulfport, Inc.</u>, 676 So.2d 252, 255 (Miss. 1996); <u>see also First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce</u>, 220 F.3d 331, 336-37 (5th Cir. 2000); <u>In re Catfish Antitrust Litig.</u>, 826 F. Supp. 1019, 1031 (N.D. Miss. 1993).

Plaintiffs contend that they brought their actions within two years "from the date the alleged act ... with reasonable diligence might have been first known or discovered." MISS. CODE. ANN. § 15-1-36(1). According to plaintiffs, they could not have reasonably discovered their purported injuries until their alleged heart problems were diagnosed after reviewing their echocardiograms. Plaintiffs assert that their diagnoses occurred less than two years prior to filing their complaints. Wyeth counters that plaintiffs should have been on notice of their stated injuries as a result of the widespread publicity

---

4. The statute of limitations for claims accruing after July 1, 1998 adds tolling provisions for fraudulent concealment and instances when a foreign object is left in a patient's body. <u>See</u> MISS. CODE. ANN. § 15-1-36(2)(a),(b). Both provisions require a plaintiff to bring an action within two years of the time when the alleged injury or fraud should have been discovered, and no later than seven years after the alleged act of neglect. <u>See</u> <u>id.</u>

accompanying the withdrawal of the diet drugs from the market in September, 1997. Wyeth further contends that plaintiffs should have known about their alleged injuries at the very latest in March, 2000, after Wyeth's extensive publicity campaign.

As set forth in greater detail in French, there was massive publicity, both locally and nationally, from September, 1997 through March, 2000 concerning Wyeth's diet drugs and their connection to valvular heart disease. In light of this massive publicity, plaintiffs, if they had acted with reasonable diligence, should have had knowledge of their alleged injuries by the end of March, 2000. We thus find that plaintiffs' actions accrued under the Mississippi statute of limitations no later than this time. See e.g., Fortenberry, 676 So.2d at 255. Since plaintiffs did not file their actions until December, 2002, their claims of negligence against the in-state physicians and Mission Primary Care Clinic are time barred.

IV.

Plaintiffs also maintain that the statute of limitations is tolled against the physician defendants because the physicians have fraudulently concealed facts which would alert plaintiffs about the dangers associated with the use of diet drugs. We previously addressed this issue in PTO No. 3350 in Cockrell, et al. v. Wyeth, et al., CIV.A. No. 03-20626 (E.D. Pa. Mar. 9, 2004). In short, where fraud or concealment of tortious conduct is alleged, Mississippi law specifies that, "the cause of action shall be deemed to have first accrued at, and not

-6-

before, the time at which such fraud shall be, or with reasonable

diligence should have been, first known or discovered." MISS.

CODE. ANN. § 15-1-36 (b).  Mississippi law requires that

plaintiffs plead with specificity "some act or conduct of an

affirmative nature designed to prevent and which does prevent

discovery of a claim."  Reich v. Jesco, Inc., 526 So.2d 550, 552

(Miss. 1998).

        Plaintiffs' complaints are devoid of anything that

would suggest that the physician defendants acted to conceal the

plaintiffs' alleged injuries.  Thus, as we determined in

Cockrell, there is "no reasonable basis in fact or colorable

ground" supporting plaintiffs' contention that the statute of

limitations should be tolled under Mississippi law because of

fraudulent concealment.  Boyer v. Snap-on Tools Corp., 913 F.2d

108, 111 (3d Cir. 1990); see also Reich, 526 So.2d at 552.

                              V.

        Plaintiffs also assert that the statute of limitations

defense is not applicable to the physician defendants under the

Settlement Agreement.  We disagree.  Section IV.D.3.c of the

Settlement Agreement states in relevant part:

> With respect to each Class Member who timely
> and properly exercises the Intermediate Opt-
> Out right and who initiates a lawsuit against
> any of the Released Parties within one year
> from the date on which the Intermediate Opt-
> Out right is exercised, the AHP Released
> Parties shall not assert any defense based on
> any statute of limitations or repose ....  A
> Class Member timely and properly exercising
> an Intermediate Opt-Out right may not seek
> punitive, exemplary, or any multiple damages
> against the AHP Released Parties or the Non-

-7-

AHP Released Parties; provided however, as
consideration for being a Non-AHP Released
Party and for receiving the benefit of this
waiver of punitive, exemplary, and multiple
damages, the Non-AHP Released Party must
agree in writing not to assert any defense
based on any statute of limitations or repose
... and provided further that if the Non-AHP
Released Party so agrees, then the Class
Member may not recover more than the total
amount of compensatory damages he or she is
entitled to from all persons or entities in
connection with any claimed injury arising
from his/her use of Diet Drugs, except where
such limitation is inconsistent with
applicable law.

The language of § IV.D.3.c of the Settlement Agreement

is clear in its instruction that any non-AHP released party

retains the benefit of the statute of limitations provided that

the party has not affirmatively waived the benefit in writing.

The physician defendants in this action are clearly non-AHP

released parties.[5]  Plaintiffs fail to contend or provide

---

5.  Non-AHP Released Parties include, <u>inter alia</u>:

All physicians who prescribed, and all pharmacists and
pharmacies who dispensed, Pondimin and/or Redux to the
extent that liability against such physicians, pharmacists
or pharmacies is based on:

(1)  the prescription or dispensing of Pondimin and/or Redux
     in a manner consistent with the product labeling;
     and/or

(2)  the prescription or dispensing of Pondimin for any
     period longer than a "few weeks"; and/or

(3)  the prescription or dispensing of Pondimin and/or Redux
     for concomitant use with Phentermine hydrochloride or
     Phentermine resin; and/or

(4)  a claim that the physician's or pharmacist's liability
     stems solely from having prescribed or dispensed
     Pondimin and/or Redux; and/or

(continued...)

-8-

information that any of these physicians has agreed in writing to waive the statute of limitations. As such, the in-state physician defendants in these matters retain the benefit of the statute of limitations defense.

VI.

In a further attempt to establish that their claims against their respective physicians and Mission Primary Care Clinic are not time barred, plaintiffs argue that the filing of various class action complaints throughout the country tolled the running of the statute of limitations. In support of their position, plaintiffs cite <u>Am. Pipe & Constr. Co. v. Utah</u>, 414 U.S. 556 (1974), which held that the filing of a putative class action tolls the running of the statute of limitations on behalf of putative class members against the defendant until a class motion is denied or plaintiffs opt out of the class. <u>Id.</u> at 561. This argument is totally without merit. The physician defendants here were not defendants in any identified putative class actions.

---

5. (...continued)

> (5)  a claim that the physician's or pharmacist's liability stems solely from the prescription or dispensing of a defective or unreasonably dangerous product.

> Physicians, pharmacists and pharmacies are not Released Parties with respect to any claim based on their independent negligence or culpable conduct, not consisting of conduct described in paragraphs (1)-(5) of this Subsection I.48.e.

Settlement Agreement § I.48.e.

-9-

Finally, plaintiffs contend that the court's approval of the National Settlement Agreement and PTO No. 1415 tolled the statute of limitations. The court is unaware of any language in either of these documents that supports plaintiffs' position in this regard.

Thus, there is no basis for tolling the statute of limitations as to the physician defendants or Mission Primary Care Clinic.

## VII.

Plaintiffs also bring claims in negligence and strict liability against Wyeth's in-state sales representatives. Wyeth argues that these defendants are fraudulently joined. We note first that there is no indication in either complaint that any of the plaintiffs, or any of the plaintiffs' physicians, received any drugs from these sales representative defendants. Further, any allegations of misrepresentation or fraud fall short of what is required under both federal and Mississippi law. See Fed. R. Civ. P. 9(b); Miss. R. Civ. P. 9(b); Allen v. Mac Tools Inc., 671 So.2d 636, 642 (Miss. 1996); Brabham v. Brabham, 483 So.2d 341, 342 (Miss. 1986).

Plaintiffs cite Swan v. I.P., Inc., 613 So.2d 846, 855-56 (Miss. 1993) to support their contention that the duty to warn extends to the sales representatives through the learned intermediary doctrine. We disagree. The learned intermediary doctrine provides that "a manufacturer's duty to warn may be discharged by providing information to a third person upon whom

-10-

it can reasonably rely to communicate the information to the
ultimate users of the product or those who will be exposed to its
hazardous effects." Id. at 851 (citations omitted). In Swan,
the court found that there was a material issue of fact as to
whether a polyurethane foam manufacturer was relieved of its duty
to warn because the manufacturer reasonably relied on the
contractor who used its polyurethane foam to warn the person
ultimately exposed to the hazardous effects of the product. In
the prescription drug context, however, Mississippi courts have
clearly decided that the duty to warn does not extend to sales
representatives. See e.g., Johnson v. Parke-Davis, 114 F. Supp.
2d 522, 524-25 (S.D. Miss. 2000). Thus, plaintiffs' contention
that the sales representative defendants breached their duty to
warn is without substance.

Furthermore, under Mississippi law, sales
representatives are not "sellers," but rather, employees of the
businesses which are the sellers. McCurtis v. Dolgencorp, Inc.,
968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997). As such, the
employees are not liable for failure to warn. See id.
Accordingly, there is "no reasonable basis in fact or colorable
ground supporting the claim against" the sales representative
defendants. Boyer, 913 F.2d at 111; see also Johnson, 114 F.
Supp. 2d at 524-25; In re Rezulin, 133 F. Supp. 2d 272, 288-90
(S.D.N.Y. 2001).

-11-

VIII.

Finally, plaintiffs bring claims against John Does 1-9, "Dr. Roes" 1-3, and John Doe Woods, M.D., who appear to be either anonymous in-state sales representatives of Wyeth or prescribing physicians whom plaintiffs believe to be citizens of Mississippi. Plaintiffs purportedly name these unidentified defendants in an effort to defeat diversity. However, the removal statute provides that "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). Thus, for the purposes of determining whether complete diversity exists so that these actions may remain in federal court, the citizenship of these unidentified defendants is irrelevant.

IX.

For many of the same reasons articulated in French, as well as the reasons detailed herein, Wyeth has met its heavy burden of showing that the above defendants are fraudulently joined. Accordingly, we will deny the motions of the plaintiffs to remand these actions to the Mississippi state courts and will dismiss the complaints as to these physicians and sales representatives.

-12-

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                   :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,         :
DEXFENFLURAMINE) PRODUCTS           :
LIABILITY LITIGATION                :
                                    :
THIS DOCUMENT RELATES TO:           :
                                    :          **FILED** JUN 12 2003
FREDDA RAINEY                       :
                                    :
        v.                          :
                                    :
WYETH, et al.                       :    CIVIL ACTION NO. 03-20128

PRETRIAL ORDER NO. 2886

        AND NOW, this 12th day of June, 2003, for the reasons
set forth in the accompanying Memorandum, it is hereby ORDERED
that the motions of plaintiff Fredda Rainey and defendant Luis
Franco to remand this action to the Circuit Court of Jefferson
County, Alabama (Bessemer Division), are DENIED.

                BY THE COURT:

                _____ J.

                ENTERED
                JUN 13 2003
                CLERK OF COURT

                                        TOTAL P.14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS            :   MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,  :
DEXFENFLURAMINE) PRODUCTS    :
LIABILITY LITIGATION         :                  FILED JUN 12 2003
                             :
THIS DOCUMENT RELATES TO:    :
                             :
FREDDA RAINEY                :
                             :
        v.                   :
                             :
WYETH, et al.                :   CIVIL ACTION NO. 03-20128

MEMORANDUM AND PRETRIAL ORDER NO. 2886

Bartle, J.                                   June 12, 2003

        Before the court are the motions of plaintiff Fredda

Rainey and defendant Dr. Luis Franco to remand this action to the

Circuit Court of Jefferson County, Alabama. The motions are

before the undersigned as the transferee judge in MDL 1203, the

mass tort litigation involving the diet drugs commonly known as

Fen-Phen. No federal claim for relief is alleged.

        In brief summary, plaintiff filed suit for injuries

sustained as a result of her use of Pondimin,[1] one of the weight

loss drugs. The complaint names as defendants: (1) Wyeth,[2] the

---

1.  Pondimin was the trade name under which Wyeth marketed
fenfluramine, half of the diet drug cocktail known as "Fen-Phen."
Dexfenfluramine, containing the same active ingredient as
fenfluramine, was also marketed by Wyeth, and was known under the
trade name Redux.

2.  Wyeth was previously known as American Home Products
                                            (continued...)

manufacturer of Pondimin and a party of diverse citizenship from the plaintiff; (2) nine Alabama sales representatives of Wyeth who plaintiff alleges marketed and promoted Pondimin;[3] and (3) an Alabama doctor, Dr. Luis Franco, who prescribed Pondimin to the plaintiff.

Plaintiff originally filed her complaint in the state court on November 5, 2002, more than five years after Pondimin was withdrawn from the market in September, 1997. On December 6, 2002, Wyeth removed the action to the United States District Court for the Northern District of Alabama. Thereafter, plaintiff and defendant Dr. Franco separately moved to remand under 28 U.S.C. § 1446. The Alabama federal court deferred ruling on plaintiff's motion, and the case was thereafter transferred to this court as part of MDL 1203.

The plaintiff and defendant Franco maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Defendant Wyeth counters that the non-diverse physician and sales representatives were fraudulently joined and thus should be disregarded for purposes of determining diversity of citizenship of the parties.

---

(...continued)
Corporation.

3. Although plaintiff alleges that sales representative Neil Blanton was an Alabama resident, in his affidavit he states he is actually a citizen of Florida.

-2-