# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ Fenfluramine/Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : | |
| ----------------------------- | : | |
| BOBBIE AMIKER, et al v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20343 |
| CAROLYN BREWER, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20279 |
| ----------------------------- | : | |

## PRETRIAL ORDER NO. 3391

AND NOW, this 2nd day of April, 2004, for the reasons
set forth in the accompanying Memorandum, it is hereby ORDERED
that:

(1) the motion of plaintiffs in Bobbie Amiker, et al.
v. Wyeth, et al., CIV.A. No. 03-20343 (E.D. Pa.) to remand to the
Circuit Court of Bolivar County, Mississippi, is DENIED;

(2) all claims in Amiker against Forrest Bailey, Susan
King, James Pittman, Jewell Norman, Amy Williams, and Gayle
Harrell are DISMISSED;

(3) the motion of plaintiffs in Carolyn Brewer, et al.
v. Wyeth, et al., CIV.A. No. 03-20279 (E.D. Pa.) to remand to the
Circuit Court of Jones County, Mississippi, is DENIED; and

(4) all claims in Brewer against defendants Forrest
Bailey, Susan King, James Pittman, Jewell Norman, Amy Williams,

Bruce Pruett, M.D., Guy Farmer, M.D., Jacob Edward Ulmer, M.D.,
Dan Overbeck, Susan Moulder, Charles T. Hull, M.D., and Mission
Primary Care Clinic are DISMISSED.

BY THE COURT:

Harvey Bartle  J.

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ Fenfluramine/Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | FILED  APR 02 2004 |
| BOBBIE AMIKER, et al. v. WYETH, et al. | : : : : | CIVIL ACTION NO. 03-20343 |
| CAROLYN BREWER, et al. v. WYETH, et al. | : : : : | CIVIL ACTION NO. 03-20279 |

MEMORANDUM AND PRETRIAL ORDER NO. 3391

Bartle, J.                                      April 2, 2004

        Before the court are the motions of thirty class
members in two separate actions to remand to the appropriate
Mississippi state courts their actions against defendants Wyeth,[1]
the Mississippi physicians who have prescribed Wyeth's diet drugs
Pondimin and/or Redux for them, one physician practice group,
five named sales representatives, and John Does 1-9 -- who appear
to be anonymous Mississippi sales representatives.  The state
court actions were captioned Bobbie Amiker, et al. v. Wyeth, et
al. (Miss. Cir. Ct. Bolivar County filed Dec. 30, 2002) and
Carolyn Brewer, et al. v. Wyeth, et al. (Miss. Cir. Ct. Jones

ENTERED

---

1.    Wyeth was previously known as American Home Products
Corporation ("AHP").

APR 0 2 2004

CLERK OF COURT

County filed Dec. 30, 2002). The plaintiffs in these actions are
all represented by the same counsel.

Plaintiffs originally filed their complaints in
Mississippi circuit courts in December, 2002, more than five
years after Pondimin and Redux were withdrawn from the market in
September, 1997. The Mississippi federal courts deferred ruling
on plaintiffs' motions, and the cases were then transferred to
this court as part of MDL 1203, the mass tort litigation
involving Wyeth's diet drugs. No federal claim for relief is
alleged.

I.

In brief summary, plaintiffs, all of whom are citizens
of Mississippi, filed suits for injuries sustained as a result of
their use of Pondimin and/or Redux. The defendant Wyeth, the
manufacturer of these diet drugs, is a party of diverse
citizenship from the plaintiffs. The defendant physicians who
prescribed Pondimin and/or Redux to plaintiffs, and the defendant
sales representatives who purportedly promoted these drugs are
alleged to be citizens of Mississippi.

The plaintiffs maintain that remand is appropriate
because complete diversity does not exist as required under
28 U.S.C. § 1332(a). Wyeth counters that the non-diverse
physicians in these matters were fraudulently joined because the
applicable two-year statute of limitations bars plaintiffs'

-2-

claims against them.[2]  See MISS. CODE ANN. § 15-1-36 (West 2003).
Plaintiffs respond that the statute of limitations has not
expired against the in-state physicians because plaintiffs
discovered their injuries less than two years prior to filing
their claims.  As for the claims against the in-state sales
representatives, Wyeth maintains that these claims are precluded
as a matter of law in Mississippi.  In response, plaintiffs
assert that the sales representatives are liable under the
learned intermediary doctrine.

II.

This court addressed many of the same issues presented
by plaintiffs' remand motions in Pretrial Order ("PTO") No. 3281
in French, et al. v. Wyeth, et al., CIV.A. No. 03-20353 (E.D. Pa.
Feb. 18, 2004), which is also part of the nationwide diet drug
litigation.  In French, we explained in detail the standards for
removal based on diversity jurisdiction and fraudulent joinder.
See PTO No. 3281 at 2-4.  Because we examined the same legal
issues as they applied to nearly identical facts in French, we
need not revisit them here.

---

2.  The statute of limitations is not an issue in plaintiffs'
claims against Wyeth, which has waived its right to assert this
defense in return for the plaintiffs' giving up their right to
sue Wyeth for "punitive, exemplary, and multiple damages."
Settlement Agreement § IV.D.3.c; see PTO No. 2625 and PTO No.
2680.

III.

We first turn to the issue of whether the prescribing physicians, all purportedly Mississippi citizens, and Mission Primary Care Clinic,[3] the one named physician practice group located in Mississippi, were fraudulently joined as defendants for the purpose of destroying diversity of citizenship and preventing removal.  Plaintiffs have brought claims for medical negligence against these non-diverse defendants.

Wyeth argues that plaintiffs' complaints do not state colorable claims against these defendants because plaintiffs' claims are barred by the Mississippi statute of limitations.  The statute provides in relevant part:

> For any claim accruing on or before June 30,
> 1998, and except as otherwise provided in
> this section, no claim in tort may be brought
> against a licensed physician, osteopath,
> dentist, hospital, institution for the aged
> or infirm, nurse, pharmacist, podiatrist,
> optometrist or chiropractor for injuries or
> wrongful death arising out of the course of
> medical, surgical or other professional
> services unless it is filed <u>within two (2)</u>
> <u>years from the date the alleged act, omission</u>
> <u>or neglect shall or with reasonable diligence</u>
> <u>might have been first known or discovered.</u>

_____

3.  Mission Primary Care Clinic appears to be the practice group for Dr. Roe's 1-3, the unidentified prescribing physicians for plaintiff Sharon Manning.  Dr. Roe's 1-3 are believed to be Mississippi residents.  For the reasons stated <u>infra</u>, we need not address the claims against Dr. Roe's 1-3.

-4-

MISS. CODE ANN. § 15-1-36(1) (emphasis added).  For any claim accruing on or after July 1, 1998, the statute of limitations is the same for all relevant purposes.[4]

In French, we set forth the standard for when an action "accrues" under Mississippi law.  See PTO No. 3281 at 6.  In short, an action accrues when a patient can reasonably be held to have knowledge of the injury itself, cause of injury, and the conduct of the medical practitioner.  Fortenberry v. Mem'l Hosp. at Gulfport, Inc., 676 So.2d 252, 255 (Miss. 1996); see also First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce, 220 F.3d 331, 336-37 (5th Cir. 2000); In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1031 (N.D. Miss. 1993).

Plaintiffs contend that they brought their actions within two years "from the date the alleged act ... with reasonable diligence might have been first known or discovered." MISS. CODE. ANN. § 15-1-36(1).  According to plaintiffs, they could not have reasonably discovered their purported injuries until their alleged heart problems were diagnosed after reviewing their echocardiograms.  Plaintiffs assert that their diagnoses occurred less than two years prior to filing their complaints.  Wyeth counters that plaintiffs should have been on notice of their stated injuries as a result of the widespread publicity

---

4.  The statute of limitations for claims accruing after July 1, 1998 adds tolling provisions for fraudulent concealment and instances when a foreign object is left in a patient's body.  See MISS. CODE. ANN. § 15-1-36(2)(a),(b).  Both provisions require a plaintiff to bring an action within two years of the time when the alleged injury or fraud should have been discovered, and no later than seven years after the alleged act of neglect.  See id.

-5-

accompanying the withdrawal of the diet drugs from the market in September, 1997.  Wyeth further contends that plaintiffs should have known about their alleged injuries at the very latest in March, 2000, after Wyeth's extensive publicity campaign.

As set forth in greater detail in French, there was massive publicity, both locally and nationally, from September, 1997 through March, 2000 concerning Wyeth's diet drugs and their connection to valvular heart disease.  In light of this massive publicity, plaintiffs, if they had acted with reasonable diligence, should have had knowledge of their alleged injuries by the end of March, 2000.  We thus find that plaintiffs' actions accrued under the Mississippi statute of limitations no later than this time.  See e.g., Fortenberry, 676 So.2d at 255.  Since plaintiffs did not file their actions until December, 2002, their claims of negligence against the in-state physicians and Mission Primary Care Clinic are time barred.

IV.

Plaintiffs also maintain that the statute of limitations is tolled against the physician defendants because the physicians have fraudulently concealed facts which would alert plaintiffs about the dangers associated with the use of diet drugs.  We previously addressed this issue in PTO No. 3350 in Cockrell, et al. v. Wyeth, et al., CIV.A. No. 03-20626 (E.D. Pa. Mar. 9, 2004).  In short, where fraud or concealment of tortious conduct is alleged, Mississippi law specifies that, "the cause of action shall be deemed to have first accrued at, and not

-6-

before, the time at which such fraud shall be, or with reasonable
diligence should have been, first known or discovered." Miss.
Code. Ann. § 15-1-36 (b). Mississippi law requires that
plaintiffs plead with specificity "some act or conduct of an
affirmative nature designed to prevent and which does prevent
discovery of a claim." Reich v. Jesco, Inc., 526 So.2d 550, 552
(Miss. 1998).

      Plaintiffs' complaints are devoid of anything that
would suggest that the physician defendants acted to conceal the
plaintiffs' alleged injuries.  Thus, as we determined in
Cockrell, there is "no reasonable basis in fact or colorable
ground" supporting plaintiffs' contention that the statute of
limitations should be tolled under Mississippi law because of
fraudulent concealment. Boyer v. Snap-on Tools Corp., 913 F.2d
108, 111 (3d Cir. 1990); see also Reich, 526 So.2d at 552.

V.

      Plaintiffs also assert that the statute of limitations
defense is not applicable to the physician defendants under the
Settlement Agreement.  We disagree.  Section IV.D.3.c of the
Settlement Agreement states in relevant part:

> With respect to each Class Member who timely
> and properly exercises the Intermediate Opt-
> Out right and who initiates a lawsuit against
> any of the Released Parties within one year
> from the date on which the Intermediate Opt-
> Out right is exercised, the AHP Released
> Parties shall not assert any defense based on
> any statute of limitations or repose .... A
> Class Member timely and properly exercising
> an Intermediate Opt-Out right may not seek
> punitive, exemplary, or any multiple damages
> against the AHP Released Parties or the Non-

-7-

AHP Released Parties; provided however, as
consideration for being a Non-AHP Released
Party and for receiving the benefit of this
waiver of punitive, exemplary, and multiple
damages, the Non-AHP Released Party must
agree in writing not to assert any defense
based on any statute of limitations or repose
... and provided further that if the Non-AHP
Released Party so agrees, then the Class
Member may not recover more than the total
amount of compensatory damages he or she is
entitled to from all persons or entities in
connection with any claimed injury arising
from his/her use of Diet Drugs, except where
such limitation is inconsistent with
applicable law.

The language of § IV.D.3.c of the Settlement Agreement

is clear in its instruction that any non-AHP released party

retains the benefit of the statute of limitations provided that

the party has not affirmatively waived the benefit in writing.

The physician defendants in this action are clearly non-AHP

released parties.[5]   Plaintiffs fail to contend or provide

───────────────

5.   Non-AHP Released Parties include, inter alia:

All physicians who prescribed, and all pharmacists and
pharmacies who dispensed, Pondimin and/or Redux to the
extent that liability against such physicians, pharmacists
or pharmacies is based on:

(1)   the prescription or dispensing of Pondimin and/or Redux
in a manner consistent with the product labeling;
and/or

(2)   the prescription or dispensing of Pondimin for any
period longer than a "few weeks"; and/or

(3)   the prescription or dispensing of Pondimin and/or Redux
for concomitant use with Phentermine hydrochloride or
Phentermine resin; and/or

(4)   a claim that the physician's or pharmacist's liability
stems solely from having prescribed or dispensed
Pondimin and/or Redux; and/or

(continued...)

-8-

information that any of these physicians has agreed in writing to waive the statute of limitations. As such, the in-state physician defendants in these matters retain the benefit of the statute of limitations defense.

VI.

In a further attempt to establish that their claims against their respective physicians and Mission Primary Care Clinic are not time barred, plaintiffs argue that the filing of various class action complaints throughout the country tolled the running of the statute of limitations. In support of their position, plaintiffs cite Am. Pipe & Constr. Co. v. Utah, 414 U.S. 556 (1974), which held that the filing of a putative class action tolls the running of the statute of limitations on behalf of putative class members against the defendant until a class motion is denied or plaintiffs opt out of the class. Id. at 561. This argument is totally without merit. The physician defendants here were not defendants in any identified putative class actions.

---

5. (...continued)

> (5)   a claim that the physician's or pharmacist's liability
>       stems solely from the prescription or dispensing of a
>       defective or unreasonably dangerous product.

Physicians, pharmacists and pharmacies are not Released Parties with respect to any claim based on their independent negligence or culpable conduct, not consisting of conduct described in paragraphs (1)-(5) of this Subsection I.48.e.

Settlement Agreement § I.48.e.

-9-

Finally, plaintiffs contend that the court's approval of the National Settlement Agreement and PTO No. 1415 tolled the statute of limitations. The court is unaware of any language in either of these documents that supports plaintiffs' position in this regard.

Thus, there is no basis for tolling the statute of limitations as to the physician defendants or Mission Primary Care Clinic.

## VII.

Plaintiffs also bring claims in negligence and strict liability against Wyeth's in-state sales representatives. Wyeth argues that these defendants are fraudulently joined. We note first that there is no indication in either complaint that any of the plaintiffs, or any of the plaintiffs' physicians, received any drugs from these sales representative defendants. Further, any allegations of misrepresentation or fraud fall short of what is required under both federal and Mississippi law. See Fed. R. Civ. P. 9(b); Miss. R. Civ. P. 9(b); Allen v. Mac Tools Inc., 671 So.2d 636, 642 (Miss. 1996); Brabham v. Brabham, 483 So.2d 341, 342 (Miss. 1986).

Plaintiffs cite Swan v. I.P., Inc., 613 So.2d 846, 855-56 (Miss. 1993) to support their contention that the duty to warn extends to the sales representatives through the learned intermediary doctrine. We disagree. The learned intermediary doctrine provides that "a manufacturer's duty to warn may be discharged by providing information to a third person upon whom

-10-

it can reasonably rely to communicate the information to the
ultimate users of the product or those who will be exposed to its
hazardous effects." Id. at 851 (citations omitted). In Swan,
the court found that there was a material issue of fact as to
whether a polyurethane foam manufacturer was relieved of its duty
to warn because the manufacturer reasonably relied on the
contractor who used its polyurethane foam to warn the person
ultimately exposed to the hazardous effects of the product. In
the prescription drug context, however, Mississippi courts have
clearly decided that the duty to warn does not extend to sales
representatives. See e.g., Johnson v. Parke-Davis, 114 F. Supp.
2d 522, 524-25 (S.D. Miss. 2000). Thus, plaintiffs' contention
that the sales representative defendants breached their duty to
warn is without substance.

Furthermore, under Mississippi law, sales
representatives are not "sellers," but rather, employees of the
businesses which are the sellers. McCurtis v. Dolgencorp, Inc.,
968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997). As such, the
employees are not liable for failure to warn. See id.
Accordingly, there is "no reasonable basis in fact or colorable
ground supporting the claim against" the sales representative
defendants. Boyer, 913 F.2d at 111; see also Johnson, 114 F.
Supp. 2d at 524-25; In re Rezulin, 133 F. Supp. 2d 272, 288-90
(S.D.N.Y. 2001).

-11-

### VIII.

Finally, plaintiffs bring claims against John Does 1-9, "Dr. Roes" 1-3, and John Doe Woods, M.D., who appear to be either anonymous in-state sales representatives of Wyeth or prescribing physicians whom plaintiffs believe to be citizens of Mississippi. Plaintiffs purportedly name these unidentified defendants in an effort to defeat diversity. However, the removal statute provides that "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). Thus, for the purposes of determining whether complete diversity exists so that these actions may remain in federal court, the citizenship of these unidentified defendants is irrelevant.

### IX.

For many of the same reasons articulated in <u>French</u>, as well as the reasons detailed herein, Wyeth has met its heavy burden of showing that the above defendants are fraudulently joined. Accordingly, we will deny the motions of the plaintiffs to remand these actions to the Mississippi state courts and will dismiss the complaints as to these physicians and sales representatives.

-12-

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: DIET DRUGS | : | MDL DOCKET NO. 1203 |
| (PHENTERMINE, FENFLURAMINE, | : | |
| DEXFENFLURAMINE) PRODUCTS | : | |
| LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **FILED** JUN 12 2003 |
| ———————————— | : | |
| FREDDA RAINEY | : | |
| | : | |
| v. | : | |
| | : | |
| WYETH, et al. | : | CIVIL ACTION NO. 03-20128 |

PRETRIAL ORDER NO. _2886_

AND NOW, this _12th_ day of June, 2003, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motions of plaintiff Fredda Rainey and defendant Luis Franco to remand this action to the Circuit Court of Jefferson County, Alabama (Bessemer Division), are DENIED.

BY THE COURT:

_Harvey Bartle_ J.

ENTERED

JUN 13 2003

CLERK OF COURT

TOTAL P.14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                   :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,         :
DEXFENFLURAMINE) PRODUCTS           :
LIABILITY LITIGATION                :
                                    :
THIS DOCUMENT RELATES TO:           :                      FILED JUN 12 2003
                                    :
FREDDA RAINEY                       :
                                    :
          v.                        :
                                    :    CIVIL ACTION NO. 03-20128
WYETH, et al.                       :

MEMORANDUM AND PRETRIAL ORDER NO. 2886

                                         June 12, 2003

Bartle, J.

          Before the court are the motions of plaintiff Fredda

Rainey and defendant Dr. Luis Franco to remand this action to the

Circuit Court of Jefferson County, Alabama.  The motions are

before the undersigned as the transferee judge in MDL 1203, the

mass tort litigation involving the diet drugs commonly known as

Fen-Phen.  No federal claim for relief is alleged.

          In brief summary, plaintiff filed suit for injuries

sustained as a result of her use of Pondimin,[1] one of the weight

loss drugs.  The complaint names as defendants:  (1) Wyeth,[2] the

_____

1. Pondimin was the trade name under which Wyeth marketed
fenfluramine, half of the diet drug cocktail known as "Fen-Phen."
Dexfenfluramine, containing the same active ingredient as
fenfluramine, was also marketed by Wyeth, and was known under the
trade name Redux.

2. Wyeth was previously known as American Home Products

                                                    (continued...)

manufacturer of Pondimin and a party of diverse citizenship from the plaintiff; (2) nine Alabama sales representatives of Wyeth who plaintiff alleges marketed and promoted Pondimin;[3] and (3) an Alabama doctor, Dr. Luis Franco, who prescribed Pondimin to the plaintiff.

Plaintiff originally filed her complaint in the state court on November 5, 2002, more than five years after Pondimin was withdrawn from the market in September, 1997. On December 6, 2002, Wyeth removed the action to the United States District Court for the Northern District of Alabama. Thereafter, plaintiff and defendant Dr. Franco separately moved to remand under 28 U.S.C. § 1446. The Alabama federal court deferred ruling on plaintiff's motion, and the case was thereafter transferred to this court as part of MDL 1203.

The plaintiff and defendant Franco maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Defendant Wyeth counters that the non-diverse physician and sales representatives were fraudulently joined and thus should be disregarded for purposes of determining diversity of citizenship of the parties.

---

(...continued)
Corporation.

3. Although plaintiff alleges that sales representative Neil Blanton was an Alabama resident, in his affidavit he states he is actually a citizen of Florida.

I.

Under the federal removal statute, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Complete diversity, of course, is required. State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31 (1967). If an action originally instituted in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court provided certain procedures are followed and certain conditions met. 28 U.S.C. §§ 1441 and 1446. Similarly, if the federal court subsequently determines that it does not have subject matter jurisdiction over a removed action, it must remand the action to the state court where it originated. 28 U.S.C. § 1447(c). A plaintiff or a defendant may seek to remand the case, or the court may do so on its own motion. American Fire & Cas. Co. v. Finn, 341 U.S. 6, 16-19 (1951); 16 Moore's Federal Practice, § 107.41[1][b][i] (Matthew Bender 3d ed.). See also Moses v. Ski Shawnee, Inc., 2000 WL 1053568 at *2 (E.D. Pa. July 31, 2000).

Under our Court of Appeals decision in Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), joinder is

-3-

fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.' The presence of a party fraudulently joined cannot defeat removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); In re Ikon Office Solutions, Inc. Secs. Litig., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000). As discussed above, we must decide whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer, 935 F.2d at 111.

We recognize that the burden on Wyeth to establish fraudulent joinder is a heavy one. Wilson, 257 U.S. at 111. While we "must resolve all contested issues of substantive fact in favor of plaintiff," we do not take this to mean we must blindly accept whatever plaintiff or the defendant seeking remand may say no matter how incredible or how contrary to the overwhelming weight of the evidence. Id. We are also cognizant that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted). The Supreme Court made it clear in Wilson that if a plaintiff contests a defendant's assertion

-4-

that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence. Wilson, 257 U.S. at 98. We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute.

On matters of substantive law, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111 (citation omitted). We are mindful that our inquiry into Wyeth's claim of fraudulent joinder is less searching than that permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992); see also Gaul v. Neurocare Diagnostic, Inc., No. 02-CV-2135, 2003 WL 230800, at *2 (E.D. Pa. Jan. 3, 2003). In other words, simply because a claim against a party may ultimately be dismissed for failure to state a claim does not necessarily mean that the party was fraudulently joined. The test is whether this court thinks there is a "reasonable basis" for finding the claim to be colorable, that is, whether it is "wholly insubstantial and frivolous." Batoff, 977 F.2d at 852.

II.

We first address defendant Wyeth's contention that Dr. Luis Franco, the prescribing physician and a citizen of Alabama,

-5-

was fraudulently joined solely for the purpose of destroying diversity of citizenship and preventing removal. Plaintiff has brought claims against him for medical negligence, as well as general claims for fraud and fraudulent concealment.

Wyeth argues that the complaint does not state a colorable claim against Dr. Franco because it is time-barred under the Alabama Medical Liability Act ("AMLA"), which states in relevant part:

> All actions against physicians, surgeons, dentists, medical institutions or other health care providers ... must be commenced within two years ... and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier, provided further, that in no event may the action be commenced more than four years after such act ....

Ala. Code § 6-5-482(a) (emphasis added). This statute governs all claims by a patient against her physician that arise from the physician-patient relationship, Collins v. Ashurst, 821 So. 2d 173, 175 (Ala. 2001), and sets forth a two year limitations period. Ala. Code § 6-5-482(a). Pondimin was withdrawn from the market in September, 1997, while plaintiff's lawsuit was not filed until November, 2002. Plaintiff does not deny that more than two years have elapsed between the time when plaintiff ingested the diet drug and the time when the doctor was sued. Rather, she first argues that the two year statute of limitations does not bar the action because of the Alabama discovery rule,

-6-

which allows a plaintiff to file suit within six months after the discovery of a medical injury.

The limitations period for a medical malpractice action under the AMLA begins to run upon the accrual of a cause of action, that is, when the act complained of results in legal injury to the plaintiff. McCormick v. Aderholt, 293 F.3d 1254, 1260 (11th Cir. 2002) (applying Alabama law). See also Grabert v. Lightfoot, 571 So. 2d 293, 294 (Ala. 1990). The key inquiry in determining the accrual date of a claim is not the date of the doctor's negligent act, or the date on which the plaintiff became aware of the degeneration, but the time when she first suffered the ill effect of the wrongful act. Ex parte Sonnier, 707 So. 2d 635, 637 (Ala. 1997). Since there is no latency period between ingestion of Pondimin and any injury,[4] plaintiff's injury at the latest commenced, and thus the limitations period began to run, shortly after Pondimin went off the market in late 1997. Based on the two-year statute of limitations alone, plaintiff would have needed to file her complaint by late 1999. Clearly, her November, 2002 filing is well beyond this deadline.

---

4. Judge Louis C. Bechtle, who presided over the fairness hearing in connection with the approval of the Nationwide Class Action Settlement, found that there is no latency period between the time of diet drug use and injury. In his August 20, 2000 Order approving settlement, Judge Bechtle stated "[t]he absence of a latency period between ingestion of [the diet drug] and the development of clinically detectable [heart disease] is ... confirmed by a number of studies ..., [each of which finds] that there was no emergence of new disease after some latency period." Memorandum and Pretrial Order No. 1415 at 46 (Aug. 28, 2000).

However, as stated above, the discovery provision in Ala. Code § 6-5-482(a) modifies the AMLA's two year limitation and gives an additional six months to file a claim from the time of discovery or when it would have been reasonable to discover such injury. Plaintiff claims that she did not discover her injury until October, 2002, when she had an electrocardiogram ("EKG"). She therefore contends her action, filed a month later in November, 2002, falls within the six month safe harbor period.

We find that plaintiff's allegation that she did not discover her injury until October, 2002 has no reasonable basis in fact. Bover, 913 F.2d at 111. Plaintiff admitted knowledge of her injury in March, 2000. On a form ("Orange Form #1") signed by plaintiff on March 29, 2000 to exercise her right to opt out of the national diet drug settlement, she was asked to respond to the following: "If you believe you have an adverse condition related to the use of Pondimin ..., please briefly describe your condition below." Plaintiff answered "yes." Directly below this question, right above where plaintiff signed and dated the form, it stated that plaintiff "had an opportunity to read the Official Court Notice transmitted to Class Members in connection with the nationwide Class Action Settlement." The Official Court Notice of the Nationwide Diet Drug Class Action Settlement contained a penalty provision for false claims specifying that "[a]ll Settlement Forms must be signed under penalties of perjury." By signing and dating the Orange Form #1, plaintiff swore that she knew of her injury as early as March,

-8-

2000. Yet, she did not initiate the suit within the six month period allowed under the discovery provision of the AMLA. Ala. Code § 6-5-482(a).

The fact that plaintiff may not have known about the seriousness of her injury in March, 2000 is inconsequential. As noted above, the limitation period "begins to run when the first injury, however slight occurs, even though that injury may later become greater or different." Free v. Granger, 887 F.2d 1552, 1555-56 (11th Cir. 1989). See also McCormick v. Aderholt, 293 F.3d 1254, 1260 (11th Cir. 2002).

Plaintiff relies upon this court's Memorandum and Pretrial Order No. 2710 in Price v. American Home Products, CIV.A. No. 02-20229 (E.D. Pa. Jan. 17, 2003). However, that decision does not support plaintiff's position. In that case, also part of the national diet drug litigation, we deemed Wyeth's removal to have been improper and remanded. Among other things, the plaintiff there had not provided information on an Orange Form akin to the information given by the plaintiff here. Moreover, Price involved the law of the District of Columbia, not the law of Alabama.

Alternatively, the plaintiff contends that she has properly pleaded fraud and fraudulent concealment against the doctor, and therefore those claims at least are not barred by the statute of limitations. Where there is fraud or concealment of tortious conduct, the AMLA specifies that the statute of limitations may be tolled "until the discovery by the aggrieved

-9-

party of the fact constituting the fraud, after which he must
have two years within which to prosecute his action."  Ala. Code
§§ 6-2-3, 6-5-482(b).  Plaintiff claims in her complaint that the
doctor committed actionable fraud by "failing to adequately warn
her of the dangers and side effects associated with Pondimin use
... knowingly concealing the dangers associated with the diet
drug and failing to advise her to undergo a[n] ... [EKG]."  She
alleges she did not learn about the fraud until October, 2002
when an EKG revealed heart damage.

There is no reasonable basis in fact to accept the
October, 2002 date.  As discussed above, plaintiff had actual
knowledge of the injuries in March, 2000.  Constant v. Wyeth, No.
3:03-0052, slip op. at 9 (M.D. Tenn. April 9, 2003).  Thus, her
fraud claims against Dr. Franco do not support her quest for
remand.

The plaintiff's claims against Dr. Franco are barred by
the statute of limitations.  There is no colorable ground to
support the claims against him, Boyer, 913 F.2d at 111, and he is
fraudulently joined.  Thus, we need not reach the issue of
whether plaintiff's claims are also barred by the language in the
AMLA that provides that "in no event may the action be commenced"
after four years.  Ala. Code § 6-5-482(a).

III.

We next turn to Wyeth's contention that nine sales
representatives were fraudulently joined – Joy Boozer, David
Wurm, Michael Crawford, Neil Blanton, Sam Wright, Steven Sells,

-10-

Mitchell DeLoach, William Owen, and Karen Cunningham.  At least
eight of them are Alabama citizens and thus non-diverse
defendants.  Plaintiff has brought claims against the sales
representatives, along with Wyeth, for their alleged fraudulent,
negligent and/or wanton marketing, promotion, selling, and/or
distribution of Pondimin.

        We note first that there is no indication in the
complaint that the plaintiff, or the plaintiff's physician Dr.
Franco, received any drugs from the sales representative
defendants.  In fact, according to an uncontested affidavit
submitted by Dan J. Shepherd, the Zone Vice President of Wyeth's
Southern Business Unit, no Wyeth sales representative ever
promoted Pondimin.  Additional affidavits submitted by eight of
the nine sales representative defendants further confirm that
they never advertised, assembled, created, designed, detailed,
distributed, labeled, made, manufactured, marketed, packaged,
promoted, sold, sterilized, supplied or tested Pondimin, or
trained anyone to do so, nor did they call or meet with Dr.
Franco.[5]  Since Alabama law only holds corporate employees liable
for wrongful actions in which they personally participate,
plaintiff has no colorable claim against the sales
representatives.  Ex Parte Charles Bell Pontiac-Buick-Cadillac-
GMC, Inc., 496 So. 2d 774, 775 (Ala. 1986); Turner v. Hayes, 719
So. 2d 1184, 1188 (Ala. Civ. App. 1997).  In fact, in the

---

5.  No affidavit was submitted for defendant Crawford, who
plaintiff has been unable to serve.  However, Mr. Shepherd states
that Mr. Crawford similarly could not have promoted Pondimin.

                            -11-

complaint, plaintiff barely discusses the sales representatives except generally to aver their involvement in marketing and promoting Pondimin. In her brief in support of the motion to remand, she does not even mention them.

Plaintiff has not provided a scintilla of evidence that the sales representative either promoted Pondimin generally or specifically to Dr. Franco. Since she has no colorable claim against them, we therefore find that they too were fraudulently joined.

IV.

Accordingly, the motions of plaintiff and of defendant Franco[6] to remand to the state court of Alabama will be denied.

---

6.  Defendant Franco alternatively requests, seemingly as an afterthought, that this court sever the plaintiff's claims against him and remand these claims to state court. However, Dr. Franco cites no authority for this proposition, and there does not appear to be consent by the parties to sever the claims against him. Further, as this court has determined as a matter of law that Dr. Franco was fraudulently joined, we will not sever and remand a non-colorable claim.

-12-

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                    :        MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,          :
DEXFENFLURAMINE) PRODUCTS            :
LIABILITY LITIGATION                 :

THIS DOCUMENT RELATES TO:            :
                                     :
PERRY MICHAEL FRENCH, et al.         :
                                     :
        v.                           :
                                     :
WYETH, et al.                        :        CIVIL ACTION NO. 03-20353

PRETRIAL ORDER NO. 3281

AND NOW, this 18th day of February, 2004, for the

reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that:

        (1) the motion of plaintiffs to remand to the Circuit

Court of Jones County Mississippi is DENIED; and

        (2) all claims against defendants Eric Dyess, M.D.,

Arthur Wood, M.D., Earl Lee Stewart, M.D., William Edwin Powell,

M.D., John M. Beaman, M.D., Jacob E. Ulmer, M.D., Stephen A.

Tramill, M.D., Todd Fulcher, M.D., E. Kelton Pace, M.D., Stanford

Owen, M.D., and Richard Miller, M.D. are DISMISSED.

                                BY THE COURT:

                                _____ J.

Feb-20-04   11:23am   From-REED SMITH LLP                215-851-1417        T-292  P.002/016  F-550

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                    :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,          :
DEXFENFLURAMINE) PRODUCTS            :
LIABILITY LITIGATION                 :

THIS DOCUMENT RELATES TO:            :
_____            :
PERRY MICHAEL FRENCH, et al.         :

           v.                        :

WYETH, et al.                        :    CIVIL ACTION NO. 03-20353

MEMORANDUM AND PRETRIAL ORDER NO. 3281

Bartle, J.                                        February 18, 2004

          Before the court is the motion of the eleven plaintiffs
to remand their complaint against defendant Wyeth and eleven non-
diverse physicians to the Circuit Court of Jones County,
Mississippi.[1] This motion is before the undersigned as
transferee judge in MDL 1203, the mass tort litigation involving
the diet drugs commonly known as fen-phen.  Plaintiffs assert
claims for negligence, negligence per se, strict liability
(design defect and failure to warn), misrepresentation, and
breach of warranties against Wyeth as well as claims against

_____

1.  The plaintiffs named in this action are:  Perry Michael
French, Brenda Thigpen, Shirley Allen, Angela Chapman, David
Graham, Beverly Hill, Margo Jones, Mildred Long, Brenda McDonald-
Lott, Gwendolyn Ratliff, and Paula Webb respectively.

their prescribing physicians for medical negligence.[2]  No federal claim for relief is alleged.

Plaintiffs originally filed their complaint in the state court on December 30, 2002, more than five years after Pondimin and Redux, the products manufactured by Wyeth, were withdrawn from the market in September, 1997.  Wyeth timely removed the action to the United States District Court for the Southern District of Mississippi.  Thereafter, plaintiffs moved to remand this action under 28 U.S.C. § 1447(c).  The Mississippi court deferred ruling on plaintiffs' motion, and the case was then transferred to this court as part of MDL 1203.

II.

Under the removal statute, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court ...."  28 U.S.C. § 1441(a).

---

2.  Specifically, plaintiffs have brought claims against the following physicians:  Perry Michael French contends that Eric Dyess, M.D. prescribed Pondimin and/or Redux to him; Brenda Thigpen maintains that Arthur Wood, M.D. prescribed Pondimin and/or Redux to her; Shirley Allen alleges that Earl Lee Stewart, M.D. prescribed Pondimin and/or Redux to her; Angela Chapman avers that William Edwin Powell, M.D. prescribed Pondimin and/or Redux to her; David Graham claims that John M. Beaman, M.D. prescribed Pondimin and/or Redux to him; Beverly Hill contends that Jacob E. Ulmer, M.D. prescribed Pondimin and/or Redux to her; Margo Jones maintains that Stephen A. Tramill, M.D. prescribed Pondimin and/or Redux to her; Mildred Long alleges that Todd Fulcher, M.D. prescribed Pondimin and/or Redux to her; Brenda McDonald-Lott maintains that E. Kelton Pace, M.D. prescribed Pondimin and/or Redux to her; Gwendolyn Ratliff avers that Stanford Owen, M.D. prescribed Pondimin and/or Redux to her; and Paula Webb claims that Richard Miller, M.D. prescribed Pondimin and/or Redux to her.

-2-

Federal district courts have original jurisdiction over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a). If an action originally filed in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court. 28 U.S.C. §§ 1441, 1446. If a federal court subsequently determines that it does not have subject matter jurisdiction over a removed action, it must remand the action to the state court from which it originated. See 28 U.S.C. § 1447(c).

Wyeth bears a heavy burden to establish fraudulent joinder. See Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). In determining whether Wyeth has met its burden, the court must "resolve all contested issues of substantive fact in favor of the plaintiff." Id. We are also cognizant of the fact that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted). The heavy burden placed upon Wyeth to establish fraudulent joinder does not mean we must accept blindly whatever plaintiffs may assert no matter how incredible or how contrary to the overwhelming weight of the evidence. The Supreme Court made it clear in Wilson v. Republic Iron & Steele Co., 257 U.S. 92 (1921), that if a plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the

evidence. <u>Wilson</u>, 257 U.S. at 98. We are not to decide automatically in favor of remand simply because some facts may be in dispute.

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. <u>See In re Korean Airlines Disaster</u>, 829 F.2d 1171, 1174 (D.C. Cir. 1987); <u>In re Ikon Office Solutions, Inc.</u>, 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000). This court must decide whether there is "a reasonable basis in fact or colorable ground supporting the claim against the joined defendant." <u>Boyer</u>, 935 F.2d at 111.

On matters of substantive law, "[i]f there is even a possibility that a state court would find that a plaintiff's complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." <u>Boyer</u>, 913 F.2d at 111 (citation omitted). We are mindful that our inquiry into Wyeth's claim of fraudulent joinder is less searching than that permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Batoff v. State Farm Ins. Co.</u>, 977 F.2d 848, 852 (3d Cir. 1992); <u>see also</u>, <u>Gaul v. Neurocare Diagnostic, Inc.</u>, No. 02-CV-2135, 2003 WL 230800, at *2 (E.D. Pa. Jan. 3, 2003). Simply because a claim against a party may ultimately be dismissed for failure to state a claim does not necessarily mean that the party was fraudulently joined. The test is whether a claim is colorable, that is, not "wholly insubstantial and frivolous." <u>Batoff</u>, 977 F.2d at 852.

-4-

## III.

It is undisputed that plaintiffs' ingestion of fen-phen occurred more than two years prior to the filing of this action. While plaintiffs concede as much, they contend that the statute of limitations did not begin to run until they discovered their injuries after receiving echocardiograms. Plaintiffs claim that it is "unrealistic to expect a layperson to perceive their injury at the time of the alleged wrongful act." Pls.' Mot. to Remand at 7. Accordingly, plaintiffs argue that their claims are not time barred because under Mississippi law they have two years from the discovery of an alleged injury in which to file a claim. MISS. CODE. ANN. § 15-1-36 (2002).

In Mississippi, a tort claim against a health care provider is subject to a two-year statute of limitations. Id. The statute provides in relevant part:

> For any claim accruing on or before June 30, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or the infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

-5-

MISS. CODE. ANN. § 15-1-36(1) (emphasis added).  For any claim
accruing on or after July 1, 1998, the statute of limitations is
the same for all relevant purposes.[3]

     Under Mississippi law, an action accrues when a patient
can reasonably be held to have knowledge of the injury itself,
cause of injury, and the conduct of the medical practitioner.
Fortenberry v. Memorial Hosp. At Gulfport, Inc., 676 So.2d 252
(Miss. 1996).  A plaintiff has a duty of reasonable inquiry upon
receiving information that indicates a claim exists.  "The would-
be plaintiff need not have become absolutely certain that he had
a cause of action; he need merely be on notice - or should be -
that he should carefully investigate the materials that suggest
that a cause probably or potentially exists."  First Trust Nat'l
Ass'n v. First Nat'l Bank of Commerce, 220 F.3d 331, 336-37 (5th
Cir. 2000) (emphasis in original).  In other words, "plaintiffs
need not have actual knowledge of the facts before the duty of
due diligence arises; rather, knowledge of certain facts which
are 'calculated to excite inquiry' give rise to the duty to
inquire."  In re Catfish Antitrust Litig., 826 F. Supp. 1019,
1031 (N.D. Miss. 1993) (citations omitted).

---

3.  The statute of limitations for claims accruing after July 1,
1998 adds tolling provisions for fraudulent concealment and
instances when a foreign object is left in a patient's body.  See
MISS. CODE. ANN. § 15-1-36(2)(a),(b).  Both provisions require a
plaintiff to bring an action within two years of the time when
the alleged injury or fraud should have been discovered, and no
later than seven years after the alleged act of neglect.  See id.

-6-

Plaintiffs contend that they brought their actions within two years "from the date the alleged act ... with reasonable diligence might have been first known or discovered." MISS. CODE. ANN. § 15-1-36(1).  According to plaintiffs, they could not have reasonably discovered their purported injuries until their alleged heart problems were diagnosed after reviewing their echocardiograms.  Plaintiffs claim that their diagnosis occurred less than two years prior to filing their complaint.  Wyeth counters that plaintiffs should have been on notice of their stated injuries as a result of the widespread publicity accompanying the withdrawal of the diet drugs from the market in September, 1997.  Wyeth further contends that plaintiffs should have known about their alleged injuries at the very latest in March, 2000, after Wyeth's extensive publicity campaign.

The publicity began on September 15, 1997.  At 10:00 p.m., the Jackson, Mississippi NBC affiliate reported a story announcing the withdrawal of the diet drugs from the market at the urging of the Food and Drug Administration ("FDA").  The story went on to report the FDA's findings that approximately 30 percent of diet drug patients who were evaluated had abnormal echocardiograms, even though symptoms had yet to manifest. Earlier that day, at approximately 12:30 p.m., the same local NBC affiliate station reported that the FDA advised people taking diet drugs to discontinue use and contact their doctors immediately.  The very next day, September 16, 1997, the Clarion Ledger, a Jackson, Mississippi based newspaper distributed

-7-

throughout the state, reported on its front page an article entitled "2 Popular Diet Drugs Removed From Stores."  The text of the news article echoed the findings of a 1997 FDA study and the subsequent urging by the FDA for individuals taking diet drugs to immediately discontinue their use.  On November 14, 1997, a story written by the Associated Press appeared in the Clarion Ledger with the headline "Fen-Phen users need exam, says government." The first sentence of this article paraphrased the FDA's suggestion that individuals who had taken diet drugs for any amount of time should see their doctors immediately for examination.

Media coverage of the withdrawal of the diet drugs from the market was not limited to local news outlets.  Reports about the withdrawal were the leading stories on major network news programs on television, including NBC Nightly News, CBS Evening News and the Today Show.  USA Today, a daily newspaper with a national readership, ran a front-page story regarding the withdrawal of diet drugs, its effects, and the response by various organizations throughout the United States regarding the news.  The article went so far as to report that potential litigation was imminent and people who had taken diet drugs were signing up with attorneys to take part in a large class action lawsuit.

Wyeth also informed consumers about the recall of its diet drugs as well.  Immediately after removing the drugs from the market on September 15, 1997, Wyeth issued a press release

-8-

advising patients who had used diet drugs to consult their
physicians.  It included the same message in full page
advertisements that it purchased in leading national and regional
newspapers.  These advertisements led with a banner in large
print, stating "An Important Message To Patients Who Have Used
Pondimin or Redux."  Furthermore, Wyeth sent a "Dear Health Care
Provider Letter" to approximately 450,000 doctors and pharmacists
informing them of the withdrawal of the drugs from the market and
of the potential association between use of the drugs and
instances of valvular heart disease.

    Even if the plaintiffs were somehow not apprised of
their potential claims as a result of this extensive publicity,
they certainly were put on notice by the end of March, 2000, by
the comprehensive publicity campaign regarding the proposed
nationwide class action Settlement Agreement with Wyeth.  See
Memorandum and Pretrial Order ("PTO") No. 997 at 7 (E.D. Pa.
Nov. 23, 1999).[4]  This notice program "employed sophisticated
media techniques and was designed to reach all class members" to
make them "aware of the potential risks posed by Pondimin and
Redux."  PTO No. 1415 at 79-80.  This court described the
exhaustive and far-reaching nature of this notice campaign in PTO
No. 1415:

       A television commercial was developed ...
      [which] broadcast 106 times over a period of
      five weeks on network television.  The
      television commercial message was also

---

4.  See also PTO No. 1415 at 62-66 (E.D. Pa. Aug. 28, 2000).

-9-

broadcast 781 times, for six consecutive weeks on various cable networks.

A summary notice was prepared for use in the print media. The summary notice appeared repeatedly in several magazines between January and March 2000. The summary notice appeared as a one-third page black and white ad in four national newspapers, 77 local newspapers, 3 newspapers distributed throughout the U.S. Territories and four newspapers targeted to the Hispanic market. These newspapers were selected because they were national publications, or because they represented the principal newspapers in the top 15 markets in the United States, or because they were published in geographic areas having the highest usage of Pondimin and Redux, and/or because they were targeted to African-American or Spanish speaking populations. In addition, the summary form of notice was published in a variety of publications targeted to healthcare providers and pharmacists. Banner ads were also developed for use on the Internet, directing potential class members to the official settlement website where class members could receive information concerning the settlement and obtain a notice package. These banner advertisements were placed within several media categories on a variety of Internet publishers.

In addition to the above, notice was transmitted by mail to all pharmacists in the United States and to doctors who were likely to have prescribed Pondimin or Redux or treated patients for complications resulting from the use of those drugs. Notices to these healthcare providers contained a "notice package," a letter of explanation and a counter card reflecting the summary form of notice described above, which pharmacists and physicians could display to alert patients about the existence of the settlement and the opportunity to obtain a "notice package" by contacting the 1-800 number or official web site .... Such mailings were transmitted to 784,128 physicians and to 108,288 pharmacists.

Id. at 80-82 (citations and footnotes omitted).

-10-

The court also explained that the summary notice appeared ten times between January and February, 2000 in the form of a full page black and white advertisement in Parade, People, and Time magazine. A full page black and white version of the summary notice was inserted into eight monthly magazines during February, 2000, including Better Homes & Gardens, Ladies Home Journal, Family Circle, McCalls, Women's Day, Redbook, Good Housekeeping and Ebony. Additional insertions of the summary notice appeared as full page black and white advertisements in the March editions of Better Homes & Gardens and Good Housekeeping. Finally, a two-page black and white version of the summary notice was placed in Reader's Digest during February and March, 2000.

This court found that the media program concerning the proposed settlement was "highly successful" at reaching targeted women. PTO No. 1415 at 83. It explained:

> 97% of women between the ages of 25 and 54 viewed one or more forms of televised or printed notice an average of 10 times. A reach and frequency analysis indicated that almost 80% of women between the ages of 25 and 54 were exposed to the messages contained in televised or printed forms of notice a minimum of five times .... In addition, a reach and frequency analysis indicated that the settlement message reached 97% of women 35 years and older an average of 11.4 times and that it reached 81% of women 35 years and older a minimum of five times. With respect to African-American women between the ages of 25 and 54, the reach and frequency analysis shows that the settlement message reached 97% of those women an average of 10.2 times and that 79% of African-American women between the ages of 25 and 54 viewed the message a minimum of five times.

-11-

Id. at 83 n.16 (citations omitted).

In support of plaintiffs' contention that their injuries occurred within two years of the filing of their complaint, they provide the court with affidavits from James H. Oury, M.D. and George K. Massing, M.D., both of whom opine that diet drug induced valvular heart disease is a latent disease. However, they say nothing about when the disease manifested itself in any of the plaintiffs.

Wyeth counters plaintiffs' position by referring to this court's ruling after receiving evidence on the latency issue at the fairness hearing in connection the nationwide class action Settlement Agreement. The court determined in PTO No. 1415 that Pondimin and Redux did not cause latent heart valve injuries but rather that any injury occurred at or near the time of last use. In the August 28, 2000 Order approving the Settlement Agreement, Judge Bechtle stated: "[t]he absence of a latency period between the ingestion of [the diet drug] and the development of clinically detectable [heart disease] is ... confirmed by a number of studies ... , [each of which finds] that there was no emergence of new disease after some latency period." PTO No. 1415 at 46.

The plaintiffs in these matters are class members and as such were parties to the Settlement Agreement. The issue of latency was actually litigated in the fairness hearing and is one of the same issues that the plaintiffs are now raising to defeat the bar of the statute of limitations. Judge Bechtle's

determination of no latency, that is that the class members'
injuries occurred within a short time after ingesting fen-phen,
was an essential finding, for it directly affected the adequacy
of class representation. See PTO No. 1415 at 104-08. Finally,
PTO No. 1415, in which Judge Bechtle approved the Settlement
Agreement, is a final and valid judgment, upheld on appeal.
Thus, plaintiffs are collaterally estopped from re-litigating the
issue of latency through the affidavits of Dr. Oury and Dr.
Massing.

## IV.

In light of the massive publicity concerning the health
risks associated with the use of diet drugs, the comprehensive
notice program associated with the settlement, and this court's
determination that diet drug induced valvular heart disease is
not a latent disease, we find that plaintiffs, through the
exercise of reasonable diligence, should have discovered their
alleged injuries at the very latest by the end of March, 2000.
Since plaintiffs did not file this action until December 30,
2002, their claims against their prescribing physicians are
clearly time barred.

Accordingly, Wyeth has shown that the in-state
physician defendants are fraudulently joined. We will deny the
motion of the plaintiffs to remand this action to the Circuit

-13-

Court of Jones County, Mississippi and dismiss the complaint as to these physician defendants.[5]

---

5.  Having determined that the court properly retains jurisdiction over this action based upon the fraudulent joinder of in-state physicians, we need not consider Wyeth's remaining arguments for the exercise of federal jurisdiction.