UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Mary Andrus ; Eleanor Archambeau;**<br>**Diane Bonneau; Lertis Caldwell;**<br>**Priscilla Cote ; Theresa DeJoy;**<br>**Laural Fankhauser; Nancy Kennedy ;**<br>**Barbara Williams ; Lucinda Youell,**<br><br>      Plaintiffs<br><br>v.<br><br>**Indevus Pharmaceuticals, Inc., F/K/A**<br>**Interneuron Pharmaceuticals, Inc.;**<br>**Wyeth, Inc., F/K/A American Home**<br>**Products Corporation;**<br>**Wyeth Pharmaceuticals, Inc F/K/A**<br>**Wyeth-Ayerst Pharmaceuticals,**<br>**Inc., A Division Of American Home Products**<br>**Corporation; and Boehringer Ingelheim**<br>**Pharmaceuticals, Inc.,**<br><br>      Defendants | **CIVIL ACTION**<br>**NO.  04-10911 GAO** |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO REMAND

## BACKGROUND

On March 10, 2004, plaintiffs filed a complaint in Massachusetts Superior Court,

Middlesex County, against the defendant, Indevus Pharmaceuticals, Inc., f/k/a Interneuron

Pharmaceuticals, Inc.("Indevus"), a Massachusetts company that designed and marketed the diet

drug dexfenfluramine ("Redux").  The complaint also names as defendants Wyeth, Inc. f/k/a

American Home Products Corporation; Wyeth Pharmaceuticals, Inc. f/k/a Wyeth-Ayerst

Phamaceuticals, Inc., a Division of American Home Products Corporation (collectively referred

to as "Wyeth"); and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer").  Plaintiffs seek

to recover damages for valvular heart disease ("VHD") and associated injuries caused by their ingestion of Redux.  *See* Ex. 1, Complaint.

On May 7, 2004, Wyeth removed this action from Middlesex Superior Court to this Court on the purported ground that Indevus was a "sham" defendant that was fraudulently joined in order to preclude federal jurisdiction over this case.  However, Wyeth admits that the real purpose of its removal is to gain a tactical advantage by attempting to obtain a stay of proceedings and, ultimately, to have the action transferred to the MDL court.  Because Indevus is a proper defendant, and because Wyeth cannot satisfy the stringent burden required to prove fraudulent joinder, this case should be remanded to the Massachusetts Superior Court, plaintiffs' forum of choice.

**1.  The Massachusetts Consolidated Actions.**

Subsequent to the filing of *Linnen v. A.H. Robins, et al*., Middlesex County, No. 97-2307, hundreds of diet drug cases were filed against Indevus in courts throughout Massachusetts. These were collectively known as "Fen-Phen 1."  By April 6, 2000, as a result of the large volume of pending diet drug cases, and by agreement between plaintiffs and defendants, Indevus and Wyeth, the Honorable Raymond J. Brassard, acting as Supervising Judge, entered a Stipulated Pre-Trial Order establishing *In re Massachusetts State Court Diet Drug Litigation*, Case No.: 98-5255 A, a consolidated docket for both pre-trial procedures, and trial over such cases.  *See* PTO #2  attached as Ex. 2.  In his supervision of the consolidated litigation Judge Brassard has demonstrated a willingness and ability to manage and advance the large-scale diet drug docket.  Plaintiffs' case was consolidated with other diet drug cases before Judge Brassard.

During the pendency of the consolidated diet drug proceedings in Massachusetts, Wyeth filed cross claims against Indevus, seeking contractual and common-law indemnity against

Indevus for any and all injuries sustained by the various plaintiffs.  (*See* Ex. 3, *In Re Diet Drug Litigation* Docket, at 11-12).  Assuming that Wyeth's cross-claims were filed in good faith, they are further evidence that plaintiffs' claims against Indevus are not "sham" proceedings.

Another action involving opt-out plaintiffs, *Sawyer v. Indevus Pharmaceuticals* (Civil Action No. 03-5028-B), is pending before Judge Brassard.  Indevus has filed a motion for summary judgment on the ground that the statute of limitations has expired, and Wyeth, which is not a defendant in that case, has filed an amicus brief supporting Indevus' motion.  The motion is set for hearing on June 16, 2004.  Notably, Wyeth's argument for removal here is virtually identical to Indevus' argument for summary judgment in *Sawyer*.  *See* Ex. 4, Indevus' memorandum of law in *Sawyer*.

**2.  Plaintiffs Allegations Against Indevus.**

Wyeth opens its Notice of Removal with a lengthy – but irrelevant - effort to tar this action by recounting a selective history of other diet drug litigation in various parts of the country.  Whatever the merits may have been of naming peripheral defendants in other cases, Wyeth acknowledges that Indevus played a central role in the developing and marketing of Redux.  In a related action in Massachusetts Superior Court, Indevus itself has admitted that it had licensed the rights to manufacture and sell Redux in the United States, and that it sponsored the application to the FDA for approval of the use of Redux as a diet drug.  *See* Ex. 4, Indevus' memorandum of law in *Sawyer*, p. 1.

Plaintiffs allege that Redux, developed by Indevus as an appetite suppressant, caused countless users, including plaintiffs, to sustain serious and sometimes fatal injuries including VHD, PPH and secondary pulmonary hypertension.  More specifically, plaintiffs allege that Indevus manufactured and marketed a dangerously defective drug and withheld,

mischaracterized, and actively misrepresented reports and information in its possession which directly related to the risk of developing VHD and PPH.  *See* Ex. 1, Complaint, at ¶¶ 89-117. Plaintiffs' complaint also describes the facts underlying their claims against Indevus in extensive detail.  *Id.* at ¶¶ 16-116.  Under these circumstances, any assertion that plaintiffs do not intend to fully litigate this claim against Indevus is meritless.

**3.  The National Class Action Settlement.**

Redux was removed from sale in the United States on September 15, 1997, following publication of research which disclosed the high incidence of VHD and PPH suffered by consumers of the drug.  Litigation against those responsible for this catastrophic sequence of events took place throughout the United States, including the Massachusetts Superior Court.  In December of 1997, the Judicial Panel for Multidistrict Litigation transferred all the federal diet drug actions to the United States District Court for the District of Pennsylvania, creating Multidistrict Litigation 1203.

Wyeth began global settlement negotiations and the parties reached a tentative settlement agreement for a nationwide class.  On August 28, 2000, the MDL court entered a final order certifying the class and approving the settlement.  Under the terms of the settlement agreement, class members agreed to release Wyeth with the proviso that  they were given "opt-out" rights at several points in time.  This allowed class members who were initially asymptomatic to opt out at a later stage and pursue their claims against Wyeth in any otherwise proper forum once an injury manifested itself.  In exchange for the agreement by the opt-out plaintiffs not to pursue claims of punitive or multiple damages, Wyeth agreed not to assert statute of limitations defenses against these individual claimants.  A comprehensive history of the class action litigation is given in *In Re Diet Drugs,* 2004 WL 1152824 (3rd Cir. 2004), attached hereto as Ex. 5 .

Plaintiffs have exercised their opt-out rights under the class settlement by filing this action after they were diagnosed with VHD within the last three years. Plaintiffs allege that they diligently attempted to discover any injury caused by their ingestion of the diet drugs by following the advice of their physicians. They did not discover their injuries until they had an echocardiogram which showed the presence of VHD. *See* Ex. 1, Complaint at ¶ 6. Nevertheless, Wyeth asserts that these claims are untimely with respect to the claims against Indevus, a Massachusetts defendant, which, unlike Wyeth, is not precluded from raising the statute of limitations defense.

## ARGUMENT

### 1. Fraudulent Joinder Standard.

Actions can be removed from state to federal court "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). When a resident party such as Indevus has been joined as a defendant, the party invoking removal jurisdiction of the federal courts bears a heavy burden. The removal statute must be strictly construed against removal and all doubts should be resolved in favor of remand. *See Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir. 1999) citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109 (1941). This is consistent with the trend to limit removal jurisdiction. *See Getty Oil Corp. v. Insurance Co. of N. Am.,* 841 F.2d 1254, 1263 n.13 (5th Cir. 1988).

Under this rigorous standard, joinder is considered fraudulent only when there is *no possibility* that the plaintiff can prove a cause of action against the resident defendant. *Fabiano Shoe Company, Inc. v. Black Diamond Equipment, Ltd.,* 41 F. Supp. 2d 70, 71 (D.Mass. 1999), citing *Triggs v. John Crump Toyota, Inc.,* 154 F. 3d 1284, 1287 (11th Cir. 1998); *Burden v.*

*General Dynamics Corp.,* 60 F. 3d 213, 216 (5ᵗʰ Cir. 1995). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Fabiano, supra,* at 71-72 (emphasis in original).

Wyeth cannot succeed in its removal effort unless it can show "by clear and convincing evidence, either that outright fraud has been committed in the plaintiff's pleadings, *or* that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Mills v. Allegiance Healthcare Corp.,* 178 F. Supp. 2d 1, 5 (D.Mass. 2001), citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2ⁿᵈ Cir. 2001). Thus, in order to remand this case, plaintiffs need only establish one claim to be colorable against Indevus. This is a level of scrutiny even less searching than when a party seeks to dismiss a claim under Fed. R. Civ. P. 12(b)(6). *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 852 (3ʳᵈ Cir. 1992). As long as any of plaintiffs' claims are not insubstantial or frivolous, this case must be remanded. *Id.* at 853.

Rather than rely upon its amicus brief in *Sawyer,* Wyeth improperly invokes federal jurisdiction over a resident defendant. This exceeds the proper use of the removal statute and should not be countenanced. "Perhaps they should be given credit for their ingenuity, but it should not surprise them that a federal court, careful of its diversity jurisdiction, is, in the circumstances, unwilling to indulge the masquerade." *Mill-Bern Associates, Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240, 246 (D.Mass. 1999)

## 2. The Massachusetts Discovery Rule Precludes Removal In This Case.

The sole basis for Wyeth's removal of this action is its unsubstantiated assertion that the applicable statute of limitations in this action has expired as to Indevus. However, as Wyeth is

forced to acknowledge, Massachusetts has adopted a discovery rule that delays the running of the statute of limitations until the plaintiff learns that she has been harmed by the defendant's conduct: "Where injury is present but not discernible, or an injury is recognized but its cause is not ascertainable, accrual of the cause of action is held to be in abeyance until the time when a modicum of knowledge supplants ignorance in the mind of the claimant, or may be reasonably imputed to her." *Lioji v. Massachusetts Bay Transportation Authority,* 28 Mass. App. Ct. 926 (1990).

In paragraph 6 of the complaint, plaintiffs allege that they acted diligently in attempting to discover any injury caused by the ingestion of Redux, including following the advise of their physicians, and that they could not reasonably have discovered their injury until they had an echocardiogram showing VHD. *See* Complaint, Ex. 1. On its face, this allegation is sufficient to survive a 12(b)(6) motion. "[T]he question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact." *Riley v. Presnell,* 409 Mass. 239, 240 (1991). Wyeth fails to offer any evidence to rebut these allegations. For this reason alone, removal was improper. In addition as argued below, plaintiffs' reasonable reliance is described in their affidavits.

**a. Wyeth Misstates The Discovery Rule.**

In order to avoid the consequences of plaintiffs' reasonable conduct prior to the discovery of their injuries, Wyeth mischaracterizes the discovery rule as triggering the statute of limitations when a plaintiff "knows she **may** have been harmed." Notice of Removal, ¶ 13 (emphasis added). However, knowledge of *possible* harm is not the test. The actual language in the cited case is: "we do require that a plaintiff have (1) **knowledge or sufficient notice that she was harmed** and (2) knowledge or sufficient notice of what the cause of harm was." *Bowen v. Eli*

*Lilly & Co., Inc.,* 408 Mass. 204, 208, 577 N.E. 2d 739 (1990) (emphasis added).  Indeed, the

Supreme Judicial Court explained that so-called inquiry notice only arises in factual scenarios

which are the opposite of those presented here.  This is because the inquiry as to the *cause* of

harm is only at issue for limitations purposes if the plaintiff is already aware of the harm itself:

> This case presents an aspect of the discovery rule with which this court has not previously been confronted.  **Our prior cases have focused on the question whether, in given circumstances, the plaintiffs should reasonably have discovered that they had been harmed.**  In each of these cases, there was no significant doubt concerning the cause of the harm once the plaintiffs discovered it.  **In this case, on the other hand, the plaintiff was always well aware that she had sustained substantial physical harm.**  The question is whether she was sufficiently on notice as to the cause of her physical harm.

*Id.* (emphasis added).  In *Bowen,* the plaintiff was aware of her injury for 14 years before

filing suit.  For this reason, the Supreme Judicial Court focused upon the second prong of the

discovery rule – whether the plaintiff had reasonable notice of the *cause* of the harm.  Unlike in

*Bowen* and related cases, plaintiffs here were not aware of their injuries until recently and, hence,

the *Bowen* analysis does not apply.

The courts have been particularly averse to requiring that plaintiffs file suit before the

nature of their harm has become clear.  "Not only does it offend fairness to require of claimants

the gift of prophecy, cf. *Franklin v. Albert,* 381 Mass. at 618, but it is unsound judicial policy to

encourage the initiation of law suits in anticipation that a grave disease will manifest itself

pendente lite." *Gore v. Daniel O'Connell's Sons, Inc.*,  17 Mass. App. Ct. 645, 648 (1984).   In

its Notice of Removal, Wyeth runs afoul of this cautionary directive by asking this Court to

impose upon plaintiffs a standard that would require that they file suit before being aware that

they had suffered appreciable harm.  For good reason, that is not the law in Massachusetts.

**b. Latency of Injury is Irrelevant.**

Since Wyeth cannot succeed on the salient issue of when the plaintiffs discovered their injuries, it focuses upon what it argues is the non-latent nature of the injuries. This approach is incorrect for several reasons. First, it is not a relevant consideration under the discovery rule. Second, Wyeth relies upon an improper factual source for its latency argument.

Contrary to Wyeth's implication, the inquiry under the Massachusetts discovery rule is not when the injury occurred, but rather when the injury *could reasonably have been discovered* by the plaintiff. Wyeth's contention that VHD is not a latent injury simply has no bearing on that inquiry. Indeed, Wyeth has made similar contentions in other cases, to no avail. *See, e.g., Dykes v. Reeves*, No. 2:03CV121PG (S.D. Miss. Nov. 6, 2003) (*See* Ex. 6). The *Dykes* Court explained:

> Defendants strongly argue that the MDL litigation has determined that valvular heart disease is not a latent disease and as such the parties in this case are bound by such finding. The fallacy of Defendant's argument in this regard is that the issue is not whether or not the condition is latent**,** but whether . . . the condition should have been found with "reasonable diligence." That is the issue. The issue is not whether or not the condition is latent. Whether Plaintiff should have discovered her condition prior to June 21, 2000, is a fact question.

*Dykes* at 6-7.

As argued in more detail in plaintiffs' opposition to Indevus' motion for summary judgment in *Sawyer*, VHD may be asymptomatic until long after the ingestion of Redux, even as harm may be occurring. *See* Ex. 7, Plaintiffs' Opposition at 11-15. Plaintiffs have alleged, and confirmed by affidavit, that they followed the advice of their doctors to determine whether they had been harmed by the ingestion of Redux. Wyeth does not claim otherwise. Under

Massachusetts law, that is sufficient to postpone the accrual of plaintiffs' cause of action until the injury was actually discovered.

Plaintiffs' reliance upon the professional judgment of their physicians, as well as the advice of the U.S. Government, and all major medical societies, shows that plaintiffs have a more than colorable claim that their suit against Indevus is timely filed.  *See Zamboni v. Aladan Corp.,* 304 F. Supp. 2d 218, 226 (D. Mass. 2004) (holding that plaintiff's reliance upon diagnosis of physicians created issue of fact precluding summary judgment on grounds of discovery rule); *Lindsay v. Romano*, 427 Mass. 771, 775 (1998) (holding that plaintiff reasonably relied on numerous medical opinions that failed to establish link between the defendant's conduct and the plaintiff's injury); and *Castillo v. Massachusetts General Hospital,* 38 Mass. App. Ct.  513, 516 (1995) (holding that there was no basis for concluding that reasonable person would have discovered harm until physician interpreted his medical test results).  Given the plaintiffs' reliance upon medical advice, Wyeth's claim that plaintiffs could have discovered their injuries by September 1997 had they gone to a doctor for "appropriate" testing merely raises an issue of fact.  In this case, the plaintiffs' unrebutted allegation is that they each did exactly what the defendant and other authorities suggested they do – they consulted with their physicians.

**c.  Plaintiffs' Reasonable Reliance Upon Medical Advice Is Supported By Affidavit.**

Quite apart from the allegations in the complaint with respect to plaintiffs' proper reliance upon the advice of their physicians, the plaintiffs have substantiated these allegations by affidavit.  *See, e.g*., Exs. 8-10, Affidavits of Nancy Kennedy, Laurel Fankhauser and Diane Bonneau, in which they each aver that they saw physicians every year from 1996 until 2001 for regular checkups during which their physician or health care practitioner would determine whether or not there was any heart damage.  It was only in 2001 or 2002, when an

echocardiogram was performed, that they learned of their injuries. Although such affidavit evidence is unnecessary to defeat the removal of this action, the absence of any particularized contrary evidence from Wyeth is striking.

In this case, Wyeth has failed to present any evidence that even <u>one</u> of the plaintiffs failed to visit her physician to obtain an evaluation following her use of diet drugs. So too has Wyeth failed to present any support for the proposition that such a visit would have resulted in an echocardiogram that necessarily would have revealed FDA positive heart valve disease. It is noteworthy that Wyeth does not suggest that the plaintiffs' physicians' initial failure to discover valvular heart disease through auscultation, and their decision not to order an echocardiogram, was an unreasonable exercise of their professional judgment.

Under these circumstances there is at least a genuine issue of material fact as to whether VHD was reasonably discoverable by the plaintiffs any earlier than when it was ultimately diagnosed.

### d. Wyeth's Reliance On Court Findings On Latency Is Impermissible.

The core of Wyeth's statute of limitations argument is based upon findings by the MDL court in Pretrial Order 1415, 2000 WL 1222042 (E.D. Pa. 2000), which was drafted for the purpose of certifying and approving a nationwide settlement of the diet drug class action litigation. In the course of its memorandum, the MDL court made certain findings with respect to the latency of injuries caused by the ingestion of diet drugs. Those findings were subsequently relied upon by the successor MDL judge in a series of cases that Wyeth has attached to its Notice of Removal.

Wyeth's reliance upon the factual findings of the MDL court with regard to latency is in violation of the settlement agreement. As the Court of Appeals for the Third Circuit recently

ruled after the removal of this case, the settlement agreement to which Wyeth was a party

contained a provision that precluded any party in an unrelated judicial proceeding from relying

upon any finding of fact made by the MDL court for the purpose of effectuating the settlement:

> Section VIII.F.3 [of the settlement agreement] provides:
>
> **The Parties to the Settlement ... shall not seek to introduce** and/or offer the terms of the Settlement Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Settlement Agreement, **any** statements in the notice documents appended to this Settlement Agreement, **stipulations, agreements, or admissions made or entered into in connection with the fairness hearing or any finding of fact or conclusion of law made by the Trial Court, or otherwise rely on the terms of this Settlement, in any judicial proceeding, except insofar as it is necessary to enforce the terms of the Settlement.**

*In Re Diet Drugs,* 2004 WL 1152824, *13 & n.9 (3rd Cir. 2004) (emphasis added) (vacating

preclusive evidentiary rulings of the MDL court).

The Third Circuit Court held that the preclusion language of the settlement agreement

must "be strictly construed against those who seek to restrict class members from pursuing

individual claims." *Id.* at *12-*13. The Court went on to hold that, because of the quoted

language in the settlement agreement, "**neither party can offer evidence regarding the**

**settlement agreement, including evidence regarding its negotiation or <u>implementation</u>.**" *Id.*

at *14 (emphasis added). Wyeth is not referring to the MDL court's findings on latency "to

enforce the terms of the Settlement." Instead, it is improperly attempting to prevent the plaintiffs

from litigating an independent claim against Indevus, which was not a party to the settlement.

Thus, the only factual basis for Wyeth's argument relies upon inadmissible evidence and should

be disregarded.

**e.  Collateral Estopel Cannot Be A Basis For Fraudulent Joinder.**

Apart from ignoring the clear directive of the settlement agreement with respect to findings of the MDL court, Wyeth goes further and claims that plaintiffs are collaterally estopped from challenging those findings.  In so doing, Wyeth imputes too much to the findings in PTO 1415 and also overlooks Massachusetts law, which precludes use of collateral estoppel where it would be unfair.

As previously stated, the issue of latency is not relevant to the application of the discovery rule in Massachusetts, because the court's findings on latency have no bearing upon the plaintiffs' reasonable reliance on the advice of their physicians.  Accordingly, the application of collateral estoppel is not determinative of this case.

In any event, regardless of whether Wyeth's argument is regarded as offensive or defensive use of collateral estoppel, the relevant inquiry "is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.' "  *Alba v. Raytheon Co.,* 2004 WL 1178314, *3 (Mass. 2004), quoting *Fidler v. E.M. Parker Co.,* 394 Mass. 534, 541, 476 N.E.2d 595 (1985).  *See also*, *Bar Counsel v. Board of Bar Overseers,* 420 Mass. 6, 11-12 (holding that fact finder should be afforded wide discretion to determine whether it would be fair to apply collateral estoppel offensively).

In this case, a fact finder is likely to hold that it would be grossly unfair to collaterally estop the plaintiffs from litigating the issue of latency.  As the Third Circuit held, the "opt-out" provisions of the settlement agreement were intended to protect the rights of class members who became aware of their injuries after the execution of the agreement.  *In Re Diet Drugs,* 2004 WL 1152824, *12 (3rd Cir. 2004).  "In this case, important information for these potential class

members included the availability, benefits and disadvantages of the intermediate opt-out. **This opt-out choice raises a significant issue of fairness**… **they can hardly knowingly waive some of their tort rights without a clear notice of what they are waiving.**" *Id.* (emphasis added).

Although the class notice and the settlement agreement describe in considerable detail the preclusive effects of the agreement, there is no mention that by agreeing to the settlement the plaintiffs were effectively waiving their right of action against third parties such as Indevus. In fact, as stated above, the opposite is true. Class members were informed that no part of the deliberations involving the settlement could be used in other proceedings. "[D]ue process considerations counsel against binding absent potential class members to understandings that were not made express in the class notice or settlement agreement." *Id.* at *15.

The plaintiffs here had no reason to litigate the issue of latency at the time of the settlement hearing since they had no symptoms of harm. As plaintiffs pointed out in their opposition to Indevus' motion for summary judgment in *Sawyer*, there was evidence at the time of PTO 1415 that harm from Redux was latent. However, that evidence was not before the trial judge, and hence, the issue was not effectively litigated. *See* Ex. 7, Plaintiffs' Opposition at 20-23.

Furthermore, there was no notice to the plaintiffs that the issue of latency could not be contested in an independent hearing. The issue of fairness, which must be determined by a state court judge, precludes a finding of fraudulent joinder under the strict standards set out previously.

### e. Publicity of Potential Harm Does Not Trigger The Statute of Limitations.

Wyeth's reliance upon cases that have held that generalized publicity has put plaintiffs on notice of their claims is also misplaced. In each of these cases, none of which is binding

authority in Massachusetts, either the publicity disclosed the actual harm, or the plaintiff was aware of an injury when publicity disclosed the cause of the injury. *See, e.g.*, *United Klans of Am. v. McGovern,* 621 F. 2d 152 (5th Cir. 1980) (civil rights claims disclosed by publicity). Here, plaintiffs allege, and their affidavits demonstrate, that they could not reasonably have discovered that they were harmed until long after any alleged publicity of the potential danger of Redux.

Under the discovery rule, mere notice of *possibility* of injury is not sufficient for a cause of action to accrue. A plaintiff must have reasonable notice of both the injury and the cause of the injury. Even assuming that plaintiffs became aware that they had unwittingly used a potentially dangerous drug, this awareness did not put any of them on notice that they had an actionable claim until they had evidence of appreciable harm. Although the plaintiffs were examined by their physicians repeatedly from 1997 onwards, the first indication of injury did not become manifest until 2001 or 2002. It was only then that each of the plaintiffs acquired the requisite knowledge of ascertainable harm that triggered the limitations countdown. This is far from the clear and convincing evidence Wyeth must put forth to survive plaintiffs' Motion to Remand.

**3.  Class Tolling Applies.**

Although the Court need not reach this issue, the fact that the statute of limitations was tolled under the principle of equitable tolling provides an alternative and additional ground for granting plaintiffs' Motion to Remand. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Despite numerous pages in its brief on the class action tolling issue, Wyeth fails to demonstrate either (1) that Massachusetts does not

recognize class action tolling under *Amercan Pipe*; or (2) that plaintiffs' claims would not be covered by any class action filed in Massachusetts or in another jurisdiction.

Under the fraudulent joinder standard, the court "must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Batoff v. State Farm Ins. Co.,* 977 F. 2d 848, 852 (3rd Cir. 1992), quoting *Boyer v. Snap-On Tools Corp.*, 913 F. 2d 108, 111 (3rd Cir. 1990). Wyeth espouses the opposite standard by seeking to have this Court resolve in its favor any uncertainties or gaps in Massachusetts class-tolling law.

Contrary to Wyeth's arguments, Massachusetts *has* recognized the principles of class action tolling set out in *American Pipe* and *Crown Cork*. As stated by the Appeals Court in *Dicerbo v. Commissioner of the Dept.. of Employment and Training*, 54 Mass. App. Ct. 128, n.13 (2002), "as to putative class members who wish to intervene, the statute of limitations is tolled upon the filing of the complaint," citing both *American Pipe* and *Crown Cork*.

The Supreme Judicial Court of Massachusetts has also adopted the holding of *American Pipe* in the context of class actions. *See Baldissari v. Public Finance Trust*, 369 Mass. 33 (1975). In *Baldissari*, the Court specifically stated:

> [W]e think he and others similarly situated may join in a class action to redress that injury and similar injuries caused by the same act or practice. Multiple demands for relief need not be filed on behalf of all the members of the class. If no reasonable tender of settlement is made in response to the first demand, further demands are not likely to serve any useful purpose and are not required. The modern class action is '**designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions**.' *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550, 94 S.Ct. 756, 765, 38 L.Ed.2d 713 (1974).

*Id.* at 707 (emphasis in original).

Defendant's only citation to Massachusetts law regarding class action tolling in no way stands for the proposition for which it is cited, namely - that Massachusetts does not recognize class tolling. *See Mass. Elec. Co. v. Mass. Comm'n Against Discrimination*, 375 Mass. 160, 165

n.2 (1978).  The Court in that case merely decided that it need not reach that issue.  In fact, by indicating that such a determination could be made, the *Mass Elec.* court implicitly recognized that Massachusetts had adopted the principles of *American Pipe*.   Wyeth's briefing on this issue misses the mark in framing the issue as whether Massachusetts would recognize class action tolling.[1]  This issue has already been answered in the affirmative by the Supreme Judicial Court in *Baldissari.*

Wyeth's lengthy discussion of class action tolling is but a further attempt to complicate the issues facing this Court and illustrates its failure to meet the required test for fraudulent joinder. "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  *Batoff,* 977 F.2d at 853.  Apart from the rule of *Baldissari,* the very complexity of Wyeth's argument dooms it to failure.

### 4.  This Court Should Not Stay A Ruling On Plaintiffs' Motion

Wyeth has indicated that it will ask this Court to stay all proceedings, including any determination of whether federal jurisdiction exists, pending transfer of this case to the diet drug MDL 1203.  Plaintiffs intend to oppose such a request for a stay, as it is contrary to the mandates of the Judicial Panel on Multi-District Litigation, the Manual for Complex Litigation[2], 3rd Edition, the diet drug MDL Court and federal law.

---

[1]  Wyeth addresses this argument by discussing whether Massachusetts courts would certify a personal injury class action. However, the question of whether a class is ultimately certified is not dispositive of the issue of whether potential class members' claims would be tolled until such time as certification was denied.

[2]  "The transferor court should not automatically . . . postpone rulings on pending motions … upon being notified of the filing of a motion for transfer.  **Matters such as motions to dismiss or remand, raising issues unique to the particular case, may be resolved before the panel acts on the motion to transfer**."  *Manual for Complex Litigation*, *3d*, at 31.131, p.288 (emphasis added).

The case law supports a District Court's obligation to examine its own jurisdiction at the very outset. *See U.S. v. Hays*, 515 U.S 737, 742-744, 155 S.Ct. 2431, 2435 (1995) ("The court has an independent obligation to examine the petition for removal to determine if federal jurisdiction exists over the case."). This approach has been bolstered by a directive of the Judicial Panel on Multidistrict Litigation ("JPMDL") which instructs the various district courts to exercise their authority to rule on all motions addressing state law, including remand motions, rather than deferring to MDL-1203 for resolution . See February 20, 2004 letter from William Terrell Hodges, Chairman, to Involved Judges, Re: MDL-1203 (attached hereto as Ex. 11).[3]

The underlying rationale for Judge Hodges' directive may well be that a local district court is in a superior position to decide jurisdictional issues premised upon local law – in this case, Massachusetts and First Circuit law. The issue raised by the plaintiffs' motion to remand – whether plaintiffs claims against Massachusetts resident Indevus are barred by the Massachusetts statute of limitations - is not an issue that will be raised in cases transferred to the MDL court from around the country.

The MDL court has no special knowledge of Massachusetts law or expertise in the application of the Massachusetts discovery rule that would enable it to more effectively resolve the plaintiffs' motion to remand than this Court. Rather, **this Court,** and Judge Brassard, presiding over diet drug litigation in Massachusetts Superior Court, have a greater familiarity with Massachusetts law than the Pennsylvania District Court, and this Court is in a better position to quickly and efficiently decide plaintiffs' motion to remand. Indeed, the ruling by

---

[3] Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation clearly establishes that "[t]he pendency of a motion, order to show cause, conditional transfer order . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." *See* Judicial Panel on Multidistrict Litigation Rule 1.5.

Judge Brassard on Indevus' motion for summary judgment in *Sawyer,* may well moot Wyeth's arguments *in toto.*

## <u>CONCLUSION</u>

As in *Mill-Bern Associates, Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240 (D.Mass. 1999), Wyeth does not contend that the factual allegations of plaintiffs' complaint, if proven, fail to state an actionable claim. Instead, it relies upon evidence outside of the complaint that is either inadmissible or irrelevant. In addition, Wyeth is forced to rely upon unresolved and complex issues of state law. "It follows that if the Court would not grant summary judgment on the present record, it should not form the slightly more drastic conclusion that the claims against [Indevus] are so meritless that an inference of fraudulent joinder is warranted." *Id.* at 245. For the foregoing reasons, plaintiffs respectfully request that their Motion to Remand be GRANTED.

Respectfully submitted this 7th day of June, 2004.

The Plaintiffs

By their attorneys,

/s/__Michael S. Appel_____
Edward J. Barshak (BBO # 032040)
Michael S. Appel (BBO # 543898)
Samuel M. Furgang (BBO # 559062)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030


Samuel W. Lanham, Jr. *(Motion for Pro Hac Vice to be filed)*
Cuddy & Lanham, P.A.
470 Evergreen Woods
Bangor, ME 04401
(207) 942-2898


Neil D. Overholtz *(Motion for Pro Hac Vice to be filed)*
Aylstock, Witkin & Sasser, P.L.C.
55 Baybridge Drive
P.O. Box 1147
Gulf Breeze, FL 32562-1147
(850) 916-7450


DATED: June 7, 2004



350283