# EXHIBIT 8

AFFIDAVIT OF NANCY KENNEDY

STATE OF MISSISSIPPI:

COUNTY OF WILKINSON:

BEFORE ME, the undersigned authority, Nancy Kennedy, appeared, who after being duly sworn by me, deposes and says: My name is Nancy Kennedy, I am a resident of Wilkinson, Mississippi. The following items are attested to of my own personal knowledge:

1. I ingested the diet drug Redux in the years 1996 and 1997. It was not until June of 2001 that I learned or had any reason to know that I had injuries to my heart associated with my use of Redux. It was not until late 2003 that I learned Interneuron was responsible for causing my injuries.

2. In fact, in the years **1996, 1997, 1998, 1999, 2000, and 2001** I saw physicians for regular checkups, yearly physicals, treatment for minor medical ailments such as a cold, and other care.

3. Regularly during this period between 1996 and 2001 such physicians or health care practitioners, would listen to my heart with a stethoscope to determine whether or not I had any murmurs or other indications of heart damage. In fact, I continued to see my prescribing doctor between 1997 and 2001 as my primary care physician. Each time, he listened to my heart, told me my heart sounded fine, and at no time made me aware of any type of heart damage or recommended that I have an echocardiogram. At no time did any of these doctors mention anything about me having a heart murmur. In June of 2001, I had an echocardiogram performed that showed moderate mitral, and moderate aortic valve regurgitation.

4.  Until my echocardiogram was performed in June of 2001, I had not been advised by any of my physicians or other health care practitioners that I had a heart murmur, any other indication of valvular heart disease, or any other problem associated with my use of Redux. To the contrary, prior to my echocardiogram in June 2001, I was told that my heart sounded fine. In addition, prior to the year 2001, I thought that I was in generally good health, and did not have any symptoms that I thought could be associated with any heart problem whatsoever.

5.  At no time before my 2001 echocardiogram did any of my physicians or health care practitioners recommend that I have an echocardiogram or other diagnostic test to determine whether or not I had a problem with my heart valves. Had they made such a recommendation, I would have followed their advice and had such a test.

Witness the signature of the affiant on the day hereinafter mentioned.

/s/ Nancy Kennedy
NANCY KENNEDY

Sworn to and subscribed before me this 2 day of June, 2004.

/s/ _____
Notary Public

My Commission Expires: NOTARY PUBLIC STATE OF MISSISSIPPI AT LARGE
MY COMMISSION EXPIRES: May 26, 2007
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# EXHIBIT 9

## AFFIDAVIT OF LAUREL FANKHAUSER

STATE OF WISCONSIN:

COUNTY OF COLUMBIA:

BEFORE ME, the undersigned authority, Laurel Fankhauser, appeared, who after being duly sworn by me, deposes and says: My name is Laurel Fankhauser, I am a resident of Portage, Wisconsin. The following items are attested to of my own personal knowledge:

1. I ingested the diet drug Redux in the years 1996 and 1997. It was not until January of 2002 that I learned or had any reason to know that I had injuries to my heart associated with my use of Redux. It was not until late 2003 that I learned Interneuron was responsible for causing my injuries.

2. In fact, in the years **1996, 1997, 1998, 1999, 2000, 2001, and 2002** I saw physicians for checkups, yearly physicals, treatment for minor medical ailments such as a cold, or other care.

3. Regularly during this period between 1996 and 2002 such physicians or health care practitioners, would listen to my heart with a stethoscope to determine whether or not I had any murmurs or other indications of heart damage. At no time did any of these doctors mention anything about me having a heart murmur or recommend that I have an echocardiogram. In January of 2002, I had an echocardiogram performed that showed moderate aortic valve damage.

4. Until my echocardiogram was performed in January of 2002, I had not been advised by any of my physicians or other health care practitioners that I had a heart murmur, any other indication of

valvular heart disease, or any other problem associated with my use of Redux. To the contrary, prior to my echocardiogram in January of 2002, I was told that my heart sounded fine.. In addition, prior to the year 2002, I thought that I was in generally good health, and did not have any symptoms that I thought could be associated with any heart problem whatsoever.

5. At no time before my 2002 echocardiogram did any of my physicians or health care practitioners recommend that I have an echocardiogram or other diagnostic test to determine whether or not I had a problem with my heart valves. Had they made such a recommendation, I would have followed their advice and had such a test.

Witness the signature of the affiant on the day hereinafter mentioned.

/s/ _Laurel Fankhauser_

LAUREL FANKHAUSER

Sworn to and subscribed before me this 2 day of June, 2004.

/s/ _Kimberly J Kocian_

Notary Public

My Commission Expires: 1-8-06

[Notary Seal: KIMBERLY J KOCIAN, NOTARY PUBLIC, STATE OF WISCONSIN]

# EXHIBIT 10

AFFIDAVIT OF DIANE BONNEAU

STATE OF MAINE:

COUNTY OF SOMERSET:

BEFORE ME, the undersigned authority, Diane Bonneau, appeared, who after being duly sworn by me, deposes and says: My name is Diane Bonneau, I am a resident of Skowhegan, Maine. The following items are attested to of my own personal knowledge:

1. I ingested the diet drug Redux in the years 1996 and 1997 and the diet drug Pondimin in 1997. It was not until November of 2002 that I learned or had any reason to know that I had injuries to my heart associated with my use of Redux and Pondimin.

2. In fact, in the years **1996, 1997, 1998, 1999, 2000, 2001, and 2002** I saw physicians for regular checkups, yearly physicals, treatment for minor medical ailments such as a cold, and other care. In the year 2000 I had surgery and received several tests on my heart. At this time the doctors told me that my heart was fine.

3. Regularly during this period between 1996 and 2002 such physicians or health care practitioners, would listen to my heart with a stethoscope to determine whether or not I had any murmurs or other indications of heart damage. In fact, I continued to see my prescribing doctor between 1997 and 2002 as my primary care physician. Each time she listened to my heart, told me my heart sounded fine, and at no time made me aware of any type of heart damage or recommended that I take an echocardiogram. At no time did any of my doctors mention anything about me having a heart murmur. In November of 2002, I had an echocardiogram performed that showed mitral valve

regurgitation.

4. Until my echocardiogram was performed in November of 2002, I had not been advised by any of my physicians or other health care practitioners that I had a heart murmur, any other indication of valvular heart disease, or any other problem associated with my use of Redux and Pondimin. To the contrary, prior to my echocardiogram in November of 2002, I was told that my heart sounded fine. In addition, prior to the year 2002, I thought that I was in generally good health, and did not have any symptoms that I thought could be associated with any heart problem whatsoever.

5. At no time before my 2002 echocardiogram did any of my physicians or health care practitioners recommend that I have an echocardiogram or other diagnostic test to determine whether or not I had a problem with my heart valves. Had they made such a recommendation, I would have followed their advice and had such a test.

Witness the signature of the affiant on the day hereinafter mentioned.

/s/ Diane M Bonneau

DIANE BONNEAU

Sworn to and subscribed before me this 2nd day of June, 2004.

/s/ Shirley M Lewis

Notary Public

My Commission Expires: _____

Shirley M. Lewis
Notary Public Maine
My Commission Expires June 15, 2007

# EXHIBIT 11

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

**DIRECT REPLY TO:**
Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax: [202] 502-2888
http://www.jpml.uscourts.gov

February 20, 2004

TO INVOLVED JUDGES

Re: MDL-1203 -- In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation

(See Attached Schedule of Actions)

Dear Judges:

Presently before the Panel pursuant to 28 U.S.C. § 1407 is a notice of opposition to the Panel's conditional transfer order in at least one action before you in the above-described docket. The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session. The purpose of this letter is to apprise you of the effect of the pendency of the actions before the Panel. Panel Rule 1.5, 199 F.R.D. 425, 427 (2001), provides:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

Thus your jurisdiction continues until any transfer ruling becomes effective. <u>If you have a motion pending before you in the action -- particularly a motion to remand to state court (if the action was removed to your court) -- you are encouraged to rule on the motion</u> unless you conclude that the motion raises issues likely to arise in other actions in the transferee court, should we order transfer, and would best be decided there.

Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman

Attachment