Member or the healthcare provider or applicable records custodian, all Medical Information and a properly and fully completed GREEN FORM (and GRAY FORM, if applicable) relating to such Claim.

b.  If the Class Member seeking a Matrix payment is unable to obtain the documentation described above through the exercise of reasonable efforts, the Trustees and/or Claims Administrator(s) shall have the right to consider other supporting documentation including but not limited to declarations of other Qualified Physician(s) under penalty of perjury setting forth opinion(s) to a reasonable degree of medical certainty to support the claim that the Class Member's condition entitles him or her to a Matrix payment, subject to review by the Court as set forth in Section VIII.D. If this evidence establishes the Class Member's condition to the satisfaction of the Trustees and/or Claims Administrator(s), the Class Member shall be entitled to receive the appropriate Matrix Compensation Benefits.

c.  Upon receiving a claim for Matrix Compensation Benefits, the Trustees and/or Claims Administrator(s) shall obtain the following information from the Class Member:

(1)  A copy of any fee agreement between the Class Member and the attorney representing that Class Member which shall be submitted and maintained in confidence;

(2)  A verified statement of the out-of-pocket costs incurred by the Class Member's individual attorney, which shall be submitted and maintained in confidence;

(3)  A written representation by the Class Member or the Class Member's attorney, made subject to penalties of perjury, as to whether or not a subrogation lien or claim has been asserted with respect to the Class Member's right to receive benefits under the Settlement and, if so, the name of the subrogee; and

(4)  If the Class Member is a Representative Claimant, such court approvals or authorizations as may be necessary to authorize that person to consummate a Settlement in a representative capacity.

Until the submission of all of the information referred to in Section VI.C.2, a Claim for Matrix Compensation Benefits shall not be considered "completed" and ready for determination.

d.   Subject to the audit provisions of this Settlement Agreement, Section VI.E and Section VI.F, the Trustees and/or Claims Administrator(s) shall make Matrix Benefits Determinations based upon the Medical Information provided to them by an appropriate Board-Certified physician on or with a properly and fully completed GREEN FORM. In making Matrix Benefits Determinations, if the Trustees and/or Claims Administrator(s) determine any inconsistency in the information provided in a Claim Form, the Trustees and/or Claims Administrator(s) shall review the Medical Information relating to such Claim to determine if the Medical Information resolves such inconsistency.

e.   No earlier than thirty (30) days after AHP receives access to the documents provided to AHP by the Trustees and/or Claims Administrator(s) pursuant to Section VI.F.1, and no later than sixty (60) days after receiving a completed Claim for Matrix Compensation Benefits, the Trustees and/or Claims Administrator(s) shall make a tentative determination:

  (1)   As to whether the Class Member(s) is entitled to compensation under the Matrices, and if so, the amount of compensation to which the individual is entitled, including an apportionment among Derivative and Representative Claimants to the extent necessary;

  (2)   The amount of counsel fees to which the attorney representing the Class Member is entitled, making the appropriate deduction of nine percent (9%) to account for the fees paid to Class Counsel as required by Section VIII.E.1.b or Section VIII.E.3 of this Agreement, whichever is applicable;

  (3)   The amount of reasonable out-of-pocket expenditures which should be reimbursed to the individual attorney representing the Class Member;

(4) The amount to which any subrogee is entitled in accordance with the provisions of Section VII.D.2 hereof; and

(5) The net amount to which the Class Member is entitled after making appropriate deductions for counsel fees, reimbursement of litigation expenses, and payment of all appropriate subrogation liens.

f. Immediately upon making the determination required by the preceding paragraph, the Trustees and/or Claims Administrator(s) shall notify the Class Members; the attorneys for the Class Members, if any; and the subrogees if any, of the determination and provide them with a period of thirty (30) days in which to contest the tentative determination by the Trustees and/or Claims Administrator(s), and to provide additional information concerning the level of Matrix Compensation Benefits which should be paid as well as the distribution and apportionment of those benefits. At the same time as this notice, the Trustees and/or Claims Administrator(s) shall also notify AHP of the determination required by the preceding paragraph.

g. Within sixty (60) days of receiving any explanatory or supporting information pursuant to the preceding paragraph or within ninety (90) days of receiving a completed Claim for Matrix Compensation Benefits, whichever is later, the Trustees and/or Claims Administrator(s) shall make a final determination:

(1) As to whether the Class Member is entitled to compensation under the Matrices, and, if so, the amount of compensation to which the Class Member is entitled, including an apportionment among Derivative and Representative Claimants to the extent necessary;

(2) The amount of counsel fees to which the attorney representing the Class Member is entitled, making the appropriate deduction of nine percent (9%) to account for the fees paid to Class Counsel as required by Section VIII.E.3 or Section VIII.E.1.b of this Agreement, whichever is applicable;

(3) The amount of reasonable out-of-pocket expenditures which should be reimbursed to the individual attorney representing the Class Member;

(4) The amount to which any subrogee is entitled in accordance with the provisions in Section VII.D hereof; and

(5) The net amount to which the Class Member is entitled after making appropriate deductions for counsel fees, reimbursement of litigation expenses, and payment of all appropriate subrogation liens.

At the same time as notice is given to the affected Class Member(s), attorney(s), and/or subrogee(s) of the final determination under Section VI.C.4.g, the Trustees and/or Claims Administrator(s) shall also notify AHP of such final determination.

During the first full twelve (12) calendar months following the AIO Start Date, the Trustees and/or Claims Administrator(s) shall make this final determination within sixty (60) days of receiving any explanatory or supporting information pursuant to Section VI.C.4.f above or within 105 days of receiving a completed Claim for Matrix Compensation Benefits, whichever is later, rather than the sixty and ninety day periods stated above.

h. Within fifteen (15) days of receiving notice of the Trustees' and/or Claims Administrator's(s') final determination, the affected Class Member(s), attorney(s), and/or subrogee(s) may appeal the determination by filing a Notice of Appeal in the form appended hereto as Exhibit "24" with the Trial Court and serving a copy on the Trustees and/or Claims Administrator(s).

i. In the event of such an appeal, the Court shall refer the matter to Arbitration by a single Arbitrator appointed by the Court from a panel of arbitrators appointed by the Court for that purpose. With respect to an appeal by a Class Member relating to the determination of the gross amount of Matrix Compensation Benefits to which the Class Member is entitled, the Arbitrator shall determine whether the Trustees and/or Claims Administrator(s) have properly applied the criteria set forth in the Settlement Agreement to the information submitted by the Class Member in support of the claim and shall enter a report and award which either

VI. CLAIMS ADMINISTRATION                                                   108

affirms the decision of the Trustees and/or Claims Administrator(s) or directs a different payment than that which was determined by the Trustees and/or Claims Administrator(s). With respect to an appeal relating to the distribution of counsel fees and costs, the Arbitrator shall determine the amount of the attorneys fees to which the attorney is entitled under the provisions of the applicable state law after deducting nine percent (9%) as required by Section VIII.E.1.b of this Agreement and the extent to which the attorney should receive reimbursement for out-of-pocket costs from the Class Member's recovery under applicable state law. In the case of an appeal relating to a subrogation issue, the Arbitrator shall determine the amount to which the subrogee is entitled under applicable law to be consistent with the provisions of Section VII.D.2 of this Agreement.

The costs of such Arbitration, including the fees of the Arbitrator, shall be taxed by the Arbitrator in favor of the party who substantially prevails in the Arbitration if the Arbitrator finds that the appeal was taken or maintained in violation of the standards set forth in Fed. R. Civ. P. 11(b). Otherwise, the costs of such Arbitration shall be paid by the Trust. Any party may appeal from the report and award of the Arbitrator to the Court.

j.      If there is no appeal initiating an Arbitration process, then the decision of the Trustees and/or Claims Administrator(s) with respect to the gross amount to be paid on account of a Claim for Matrix Compensation Benefits shall be final, unless there is a documented change in the physical condition of the Diet Drug Recipient after submission of the claim which justifies consideration for a greater level of Matrix Compensation Benefits than previously applied for or justifies consideration for payment at the same level as previously applied for by reason of a different physical condition than that which was the subject of the prior Claim for Benefits by the Class Member.

k.      If there is no appeal initiating an Arbitration process, then the decision of the Trustees and/or Claims Administrator(s) with respect to the distribution of any portion of any amount paid on account of a Claim for Matrix Compensation Benefits to any attorney or subrogee shall be final.

l.     If an appeal initiating arbitration is taken, the decision of
the Arbitrator or, if an appeal from the report and award of
the Arbitrator is taken, the decision of the Court shall be
final and binding with respect to: (a) The gross amount to
be paid on account of a Claim for Matrix Compensation
Benefits unless there is a documented change in the
physical condition of the Diet Drug Recipient after the
submission of the claim which justifies consideration for a
greater level of Matrix Compensation Benefits than that
previously applied for or for payment at the same level as
previously applied for by reason of a different physical
condition than that which was the subject of the prior Claim
for Benefits by the Class Member; and (b) the distribution
of any portion of the gross amount to be paid for Matrix
Compensation Benefits to any attorney or subrogee for
attorneys' fees, reimbursement of litigation expenses, or
subrogation claims.

m.     Within forty-five (45) days after the end of each calendar
quarter or AIO Fiscal Quarter, whichever is applicable,
after the AIO Start Date and prior to Final Judicial
Approval, the Trustees and/or Claims Administrator(s)
shall pay the Matrix Compensation Benefit claims of all
Class Members who:

(1)     have completed Claims for Matrix Compensation
Benefits during the period prior to the
commencement of the above-referenced calendar
quarter or AIO Fiscal Quarter, whichever is
applicable, which have not been previously paid;
and

(2)     have executed Individual Agreements pursuant to
the AIO; and

(3)     whose rights to Matrix Compensation Benefits have
become final during the above-referenced calendar
quarter or AIO Fiscal Quarter, whichever is
applicable under this Section and are not then the
subject of an audit under the terms of the Settlement
Agreement.

In distributing the amount due with respect to a claim for
Matrix Compensation Benefits, the Trustees and/or Claims
Administrator(s) shall pay all sums due to the individual
attorney for the Class Member for payment of counsel fees
and reimbursement of litigation expenses, and all sums due

to any subrogee as determined by the above procedures. The net amount remaining after deducting such payments from the gross amount of the Matrix Compensation Benefits to which a Class Member is determined to be entitled, shall be distributed to the Class Member.

n.  Upon Final Judicial Approval, the preceding paragraph will cease to be effective and the following schedule will apply to the payment of all claims for Matrix Compensation Benefits. Within forty-five (45) days after the close of each Fiscal Quarter, the Trustees and/or Claims Administrator(s) shall pay all Claims for the Matrix Compensation Benefits of all Class Members:

(1)  who have completed Claims for Matrix Compensation Benefits during the period prior to the commencement of the above-referenced forty-five-day time period which have not been previously paid; and

(2)  whose rights to Matrix Compensation Benefits have become final during the above-referenced Fiscal Quarter under Section VI.C.5, and are not then the subject of an audit under the terms of the Settlement Agreement.

In distributing the amount due with respect to a claim for Matrix Compensation Benefits, the Trustees and/or Claims Administrator(s) shall pay all sums due to the individual attorney for the Class Member for payment of counsel fees and reimbursement of litigation expenses, and all sums due to any subrogee as determined by the above procedures. The net amount remaining after deducting such payments from the gross amount of the Matrix Compensation Benefits to which a Class Member is determined to be entitled, shall be distributed to the Class Member.

o.  The payment obligations in paragraphs (m) and (n) above are subject to the provisions of Section III.C.

5.  Beginning on the Preliminary Approval Date, the Trustees and/or Claims Administrator(s) shall take the steps reasonably necessary to receive and process Claims for Benefits according to the terms of this Agreement, but the time periods provided in Section VI.C for the processing of Claims by Class Members and for any actions by the Trustees and/or Claims Administrator(s) relating to such Claims shall not apply to any Claim until the later of September

30, 2000, or the AIO Start Date. Further, such time periods shall not apply to the Claims of Class Members who have submitted BLUE FORMS until the earlier of the Final Judicial Approval Date or February 1, 2001; provided, however, that the Trustees and/or Claims Administrator(s) shall have the authority to process the Claims of Class Members who have submitted BLUE FORMS before such time if warranted to achieve cost savings in the processing of Claims. At any time, the Court may extend any time period in Section VI.C for good cause shown upon application by the Parties, Trustees, Claims Administrator(s), and/or Interim Claims Administrator(s), after notice to AHP and Class Counsel.

**D.    PROCEDURE FOR RECOGNITION OF CREDITS.**

1.    AHP shall receive Credits in accordance with Section VII.A of this Settlement Agreement pursuant to the following procedure:

a.    With respect to each Class Member who has opted out of the Settlement and who has received a payment from AHP for which AHP seeks a Credit under Section VII.A (a "Request for Credit"), AHP shall supply the Trustees and/or Claims Administrator(s) with the following documents and information:

(1)    a copy of the form through which the Class Member(s) exercised an Opt-Out right;

(2)    a copy of the report of the Echocardiogram, if any, showing the degree of mitral and/or aortic valvular regurgitation in the Diet Drug Recipient whose condition is at issue prior to September 30, 1999, and/or as of the close of the Screening Period;

(3)    a copy of the check(s) evidencing payment or other evidence of payment to the Class Member(s) for which AHP seeks credit;

(4)    a copy of the release(s) executed by the Class Member(s) in favor of AHP;

(5)    a "RED FORM" for an Initial or Back-End Opt-Out which is appended to this Settlement Agreement as Exhibit "25" completed and signed subject to penalties of perjury by a knowledgeable representative of AHP and a Board-Certified Cardiologist or Board-Certified Cardiothoracic Surgeon;

(6)    all hospital reports of the admitting history and physical examination of the Diet Drug Recipient, medical histories, operative reports, pathology reports, Echocardiogram reports, cardiac catheterization reports and discharge summaries which relate to the condition of the Diet Drug Recipient that forms the basis of the Request for Credit;

(7)    a copy of the videotape or disk of the Echocardiogram results which, in whole or in part, form the basis for the Request for Credit;

(8)    a declaration under penalty of perjury from a Board-Certified Cardiologist or Cardiothoracic Surgeon, regardless of whether that Cardiologist was originally retained by AHP, the plaintiff or neither, setting forth an opinion to a reasonable degree of medical certainty that (1) the Diet Drug Recipient has the condition which would otherwise qualify a Class Member for a particular Matrix payment, including, where applicable, that the causation requirements applicable to conditions (b)(v) and (c) of Matrix-Level V, either are or are not present; (2) to the best of such physician's knowledge after reasonable inquiry, such condition which would otherwise qualify the Class Member for a particular Matrix payment was not present prior to usage of Pondimin® and/or Redux™; and (3) all the conditions which determine whether Matrix A-1 or B-1 are applicable, either are present or are not present;

(9)    a declaration under penalty of perjury from a Board-Certified Cardiologist, Cardiothoracic Surgeon, Neurologist or Neurosurgeon with regard to the functional outcome which the patient has had six months after a stroke, if applicable;

(10)   a declaration under penalty of perjury from a Board-Certified Cardiologist, Cardiothoracic Surgeon, or Pathologist regarding the existence of the pathological criteria for Endocardial Fibrosis defined in Section I.21 if applicable; and,

(11)    any other documentation which the Trustees and/or Claims Administrator(s) are otherwise authorized to request under this Settlement Agreement.

The records and information described in (1) through (11), inclusive, and/or the information described in Section VI.D.1.b below are referred to as the "Credit Information." Subject to the provisions of Section VI.D.1.b, a Request for Credit shall not be considered completed within the meaning of Section VI.D.1.c and ready for determination until the Trustees and/or Claims Administrator(s) have received all Credit Information and a properly and fully completed RED FORM relating to such Request for Credit.

b.    If AHP is unable to obtain the documentation described above through the exercise of reasonable efforts, the Trustees and/or Claims Administrator(s) shall have the right to consider other supporting documentation including but not limited to declaration(s) of other Qualified Physician(s) under penalty of perjury setting forth opinion(s) to a reasonable degree of medical certainty to support the claim that the Class Member's condition would have otherwise entitled him or her to a Matrix payment for which AHP would be entitled to a Credit, subject to review by the Court as set forth in Section VI.D.1.g.  If this evidence establishes the Class Member's condition to the satisfaction of the Trustees and/or Claims Administrator(s), AHP shall be entitled to receive the appropriate credit.

c.    Within forty-five (45) days of receiving a completed Request for Credit from AHP, the Trustees and/or Claims Administrator(s) shall make a preliminary determination as to whether AHP is entitled to a Credit, and, if so, the amount of the Credit to which AHP is entitled, and shall advise AHP and Class Counsel, in writing, of this determination.

d.    AHP and Class Counsel shall have forty-five (45) days from the date of receiving such a preliminary determination to submit additional information concerning the question of whether and to what extent a Credit should be given to AHP.

e.    Within sixty (60) days of receiving any additional information which is submitted pursuant to the preceding paragraph or within ninety (90) days of receiving a completed Request for Credit from AHP, whichever is

later, the Trustees and/or Claims Administrator(s) shall make a final determination as to whether AHP is entitled to a Credit and, if so, the amount of Credit to which AHP is entitled, and shall advise AHP and Class Counsel in writing of this determination.

f.      Within fifteen (15) days of receiving notice of the Trustees' determination, AHP may appeal the determination by filing a notice of the appeal in the form appended hereto as Exhibit "24" with the Trial Court and serving a copy on Class Counsel, and the Trustees and/or Claims Administrator(s).

g.      In the event of such an appeal, the Court shall refer the matter to Arbitration by a single Arbitrator appointed by the Court for that purpose. The Arbitrator shall determine whether the Trustees have properly applied the criteria set forth in the Settlement Agreement to the information supplied by AHP in support of the Request for Credit and shall enter a report and award, which either affirms the decision of the Trustees, directs a different Credit than that which was determined by the Trustees, or directs that no Credit shall be given to AHP. If the Arbitrator affirms the decision of the Trustees or awards a lower Credit than had been awarded by the Trustees and finds that the appeal was taken or maintained by AHP in violation of the standards set forth in Fed. R. Civ. P. 11(b), the cost of this Arbitration shall be borne by AHP. Otherwise, the costs of such Arbitration shall be paid by the Trust. Any party may appeal from the report and award of the Arbitrator to the Court.

h.      If there is no appeal initiating an Arbitration process, then the decision of the Trustees with respect to a claim for a Credit shall be final. If an appeal initiating Arbitration is taken, the decision of the Arbitrator or, if an appeal from the report and award of the Arbitrator is taken, the decision of the Court, shall be final and binding.

2.      Beginning on the Preliminary Approval Date, the Trustees and/or Claims Administrator(s) shall take the steps reasonably necessary to receive and process Requests for Credits according to the terms of this Agreement, but the time periods provided in Section VI.D for the processing of Requests for Credits by AHP and for any actions by AHP and the Trustees and/or Claims Administrator(s) relating to such Requests for Credits shall not apply until the later of September 30, 2000, or the AIO Start Date. At any time, the

Court may extend any time period in Section VI.D for good cause shown upon application by the Parties, Trustees, Claims Administrator(s), and/or Interim Claims Administrator(s), after notice to AHP and Class Counsel.

3. The RED FORM for a Request for a Credit for Initial Opt-Out Credits and for Back-End Opt-Out Credits shall be submitted by AHP to the Trustees and/or Claims Administrator(s) postmarked on or before the later of: (i) 180 days after the date that is five calendar years after the Final Judicial Approval Date; or (ii) 180 days after the date of the payment by AHP to or for the benefit of the Class Member for which AHP seeks the Credit.

4. Within thirty days after the close of each calendar quarter after December 31, 2002, through the quarter that includes the date that is five calendar years after the Final Judicial Approval Date, AHP shall provide a written report to Class Counsel and the AHP Settlement Trust of the approximate total dollar amount of Back-End Opt-Out Credits under Section VII.A.3 that it reasonably believes would arise from payments made by AHP during the preceding calendar quarter to Class Members.

E. **AUDITS OF CLAIMS BY TRUSTEES AND/OR CLAIMS ADMINISTRATOR(S)**

1. After the AIO Start Date, on a quarterly basis the Trustees and/or Claims Administrator(s) shall audit five percent (5%) of the total Claims for Matrix Compensation Benefits completed (within the meaning of Section VI.C.2 and Section VI.C.4) by Class Members during the prior quarter, and ten percent (10%) of the total Requests for Credits made by AHP during the prior quarter. Claims for Matrix Compensation Benefits and Requests for Credits shall be selected for audit pursuant to this Section of the Settlement Agreement as follows:

    a. The Trustees and/or Claims Administrator(s) shall retain one or more Board-Certified Cardiologists, who have successfully completed level three training in echocardiography, for purposes of reviewing claims for Matrix Compensation Benefits made by Class Members and Requests for Credits made by AHP (hereinafter "the Reviewing Cardiologist"). The Reviewing Cardiologist shall review a total of ten percent (10%) of the total Claims for Matrix Compensation Benefits completed (within the meaning of Section VI.C.2 and Section VI.C.4) by Class Members during the prior quarter, and ten percent (10%) of the total Requests for Credits made by AHP during the prior quarter. This review shall consist of a comparison

between the Medical Information and the information on the GREEN FORM submitted by a Class Member (in the case of a Claim for Matrix Compensation Benefits) or a comparison between the Credit Information and the information on the RED FORM submitted by AHP (in the case of a Request for Credit) for purposes of determining whether there is a material discrepancy between the Medical or Credit Information submitted in connection with a Claim or Request for Credit and the information on the GREEN FORM submitted by a Class Member or the RED FORM submitted by AHP. In the event that the Reviewing Cardiologist determines that there is such a material discrepancy, then the Claim or Request for Credit shall be referred for audit pursuant to this section of the Settlement Agreement.

b. In addition to the procedure provided in Section VI.E.1.a, the Trustees and/or Claims Administrator(s) shall select additional Claims for Matrix Compensation Benefits by Class Members and Requests for Credits by AHP during the prior quarter for audit pursuant to an audit plan which shall take into account, among other things:

(1) The fact that certain Class Members are represented by attorneys who represent what the Trustees and/or Claims Administrator(s) determine to be a disproportionate number of Class Members;

(2) The fact that certain Class Members or AHP rely on the certifications of doctors who have provided certifications for what the Trustees and/or Claims Administrator(s) determine to be a disproportionate number of Class Members or Requests for Credits; and

(3) The need to incorporate random sampling into the Audit Plan;

provided however, that under this Section VI.E.1.b and Section VI.E.1.a combined the Trustees shall not audit more than five percent (5%) of the total Claims for Matrix Compensation Benefits completed by Class Members during the prior quarter and ten percent (10%) of the total Request for Credits made by AHP during the prior quarter, subject to the provisions of Section VI.F.

---

VI. CLAIMS ADMINISTRATION                117

2.    A Claim may not be paid and a Credit may not be allowed while that Claim or Credit is the subject of an audit or a request for an audit. If a Claim of a Diet Drug Recipient or Representative Claimant is subject to audit or a request for audit, then the Claims of all Derivative Claimant(s) based on that Claim shall also be subject to the audit or audit request, but shall not be considered as part of the percentage of Claims to be audited by the Trustees and/or Claims Administrator(s) in that quarter.

3.    With respect to Claims which are selected for audit, the Trustees and/or Claims Administrator(s) may require that the Class Member(s) provide them with the following information as a condition to consideration of the Claim:

a.    Identification of all general practitioners, family physicians, primary care providers, internists or sub-specialists in internal medicine, surgeons or sub-specialists in surgery, and obstetricians or gynecologists who, at any time during the ten-year period prior to the filing of the Claim subject to audit, rendered any medical care to and/or were consulted by the Diet Drug Recipient whose Claim forms the basis of the Claim subject to audit;

b.    Fully completed and executed authorizations which will allow the Trustees and/or Claims Administrator(s) to obtain copies of the Class Member's medical records; and

c.    Such other relevant documents or information within the Class Member's custody, possession, or control as may reasonably be requested by the Trustees and/or Claims Administrator(s).

If the Class Member unreasonably fails or refuses to provide any material documents or information after being afforded an adequate opportunity to do so, the Class Member's Claim shall be denied.

4.    With respect to requests for Credit which are selected for audit, the Trustees and/or Claims Administrator(s) may require that AHP provide them with the following information as a condition to consideration of a Request for Credit:

a.    All medical records relating to the Diet Drug Recipient whose condition is the subject of the Request for Credit, which are in the custody, possession, or control of AHP and its counsel;

VI. CLAIMS ADMINISTRATION                                                118

b.  All depositions, interrogatories, fact sheets, and like documents relating to the condition and circumstances of the Diet Drug Recipient whose condition is the subject of the Request for Credit, which are in the custody, possession or control of AHP and its counsel;

c.  Such other relevant documents or information within AHP's or its counsel's custody, possession or control as may reasonably be requested by the Trustees and/or Claims Administrator(s).

5.  If AHP unreasonably fails or refuses to provide any material documents or information after being afforded an opportunity to do so, its Request for Credit shall be denied.

6.  In conducting an audit of those Claims and Requests for Credit selected for audit, the Trustees and/or Claims Administrator(s) shall follow the following procedure: All Accelerated Implementation Option acceptance form(s) ("PINK FORM"), registration form(s) ("BLUE FORM"), videotapes or disks of Echocardiograms, medical reports, and other information submitted by AHP in support of a Request for Credit or by a Class Member in support of a Claim, together with a copy of the claimant's medical records, and Echocardiogram videotapes or disks obtained by the Trustees/Claims Administrator(s) shall be forwarded to a highly-qualified, independent, Board-Certified Cardiologist (hereinafter referred to as the "Auditing Cardiologist") selected by the Trustees/Claims Administrator(s). After thoroughly reviewing these materials, the Auditing Cardiologist shall make a determination as to whether or not there was a reasonable medical basis for the representations made by any physician in support of the Claim or Request for Credit.

7.  If the Auditing Cardiologist makes the determination that there was a reasonable medical basis to support the Class Member's Claim or AHP's Request for Credit and if there is no substantial evidence that the Class Member or AHP intentionally made a material misrepresentation of fact in connection with a Claim or a Request for Credit, then the Claim or Credit shall be allowed. If, on the other hand, the Auditing Cardiologist makes the determination that there was no reasonable medical basis to support any of the material representations made by any physician in support of the Class Member's Claim or AHP's Request for Credit, or if the Trustees and/or Claims Administrator(s) determine that the Class Member or AHP intentionally made a material misrepresentation of fact, the Trustees and/or Claims Administrator(s) shall not pay the Claim or allow the Credit and

shall apply to the Court for an order to show cause why the Claim should be paid or the Credit should be allowed, and for an order to show cause as to why other Claims or Credits involving the same attorney and/or physician should not be subject to an audit.

8.    If the Court determines that there was no reasonable medical basis to support a material representation made by a physician in support of a Claim or Request for Credit or that the Class Member or AHP intentionally made a material misrepresentation of fact in connection with Claim or Request for Credit, after the entry of a show cause order and a hearing pursuant to the preceding paragraph, the Court may grant such relief as may be appropriate, including any of the following:

a.    an order disallowing the Claim or Credit;

b.    an order directing an additional audit of other Claims or credits involving the same attorneys and/or physicians who were involved in the Claim or Request for Credit which was the subject of the show cause order;

c.    an order directing such other additional audits as may be appropriate in light of the Court's findings;

d.    an order imposing penalties including the payment of the Trustees' and/or Claims Administrator's(s') costs and attorneys' fees to the extent permitted by law; and/or

e.    an order making a referral of the matter to the United States Attorney or other appropriate law enforcement officials for possible criminal prosecution if there is probable cause to believe that the Claim was submitted fraudulently.

For good cause shown, including without limitation the results of audits conducted on any one or more Claims, groups of Claims, and/or requests for Credits made by AHP, the Court at any time, upon its own motion after notice to AHP and Class Counsel, or upon motion by any party and after such notice and hearing as the Court may direct, may order the Trustees and/or Claims Administrator(s) to perform such additional audits and/or adopt such additional claims administration procedures as the Court deems appropriate.

## F.    AHP-INITIATED AUDITS OF CLAIMS

1.    AHP may have access to all Claim Forms for Fund A or Fund B benefits submitted to the Trustees and/or Claims Administrator(s) and to all medical records, videotapes or disks of

Echocardiograms, forms submitted by Class Members, pharmacy records and all other documents submitted by Class Members in support of their Claims, upon reasonable request to the Trustees. Access to such documents shall be provided to AHP by the Trustees and/or Claims Administrator(s) no later than five (5) days after a Claim is completed (within the meaning of Section VI.C.2 and Section VI.C.4).

2.  AHP shall have no right to participate in the claims determination process for a particular Class Member as described in Section VI.C above; provided, however, that AHP shall have the right to submit particular Claims or groups of Claims to the Trustees and/or Claims Administrator(s) for audit, up to a total per quarter of ten percent (10%) of the total Claims for Matrix Compensation Benefits and ten percent (10%) of the total claims for Fund A Benefits completed by Class Members during the prior quarter. Along with such submissions, AHP shall identify to or provide the Trustees and/or Claims Administrator(s) information or documentation in its possession that it believes establishes either that there was no reasonable medical basis to support the Class Member's Claim or that the Class Member made a material misrepresentation of fact in connection with a Claim.

3.  The Trustees and/or Claims Administrator(s) shall audit all Claims properly submitted by AHP for audit under Section VI.F.2 above in a particular quarter. Such Claims shall be in addition to and different from the five percent (5%) of Claims audited by the Trustees and/or Claims Administrator(s) per quarter pursuant to Section VI.E.1. Should any of the Claims submitted for audit by AHP include those selected by the Trustees and/or Claims Administrator(s) for audit in the same quarter, then the Trustees and/or Claims Administrator(s) shall select other Claims for audit to ensure their audit of five percent (5%) of Claims per quarter as required by Section VI.E.1 in addition to the Claims submitted by AHP for audit.

4.  If Class Counsel or AHP has a good faith belief that an Auditing Cardiologist employed by the Trustees has failed to perform his/her duties in accordance with accepted standards of medical practice, they may apply to the Court for appropriate relief, including an order disqualifying the Auditing Cardiologist from any further participation in any audits and requiring a re-audit of those Claims or Requests for Credit for which the Auditing Cardiologist made a determination.

5.  In connection with any audit initiated by AHP under Section VI.F.2, AHP shall have the right to obtain, at its expense, an

independent Transthoracic Echocardiogram of a Diet Drug Recipient who has made a claim for Matrix Benefits under the following circumstances:

    a.    where AHP presents evidence to the Trustees and/or Claims Administrator(s) that the center or physician from which the Echocardiogram was obtained has a disproportionate number of FDA Positive or Matrix-Level Claims; or

    b.    where AHP submits a certification from a Board-Certified Cardiologist under penalty of perjury that the report of the Echocardiogram and/or the videotape or disk deviate materially from accepted standards of practice in the fields of Cardiology or Echocardiography; or

    c.    where AHP submits to the Trustees and/or Claims Administrator(s) evidence that the Class Member or any physician making representations in support of a Class Member's Claim made material misrepresentations of fact; or

    d.    where AHP submits a certification from a Board-Certified Cardiologist under penalty of perjury that the videotape or disk of the Echocardiogram cannot properly be read for any reason, including, but not limited to, poor quality, or improper setting.

6.    Independent AHP Echocardiograms conducted pursuant to Section VI.F.5 above, shall be subject to the following conditions:

    a.    the affected Class Member will be afforded at least ninety (90) days within which to schedule the Echocardiogram at a time convenient to the Class Member;

    b.    the Echocardiogram shall take place not more than twenty-five (25) miles from the Class Member's place of residence unless AHP provides transportation, but, in no event, more than 100 miles;

    c.    AHP shall pay for the Echocardiogram;

    d.    Echocardiogram shall be conducted pursuant to the procedures set forth in Section I.54.

    e.    a report of the Echocardiogram together with a copy of the videotape and/or disk of the Echocardiogram results shall be submitted to the Trustees and/or Claims

Administrator(s) and to the Diet Drug Recipient who was the subject of the Echocardiogram.

If the results of the report of the Independent AHP Echocardiogram obtained by AHP pursuant to this paragraph differ materially and significantly from the results or report of the Echocardiogram submitted by the Class Member in support of the Class Member's Claim for Benefits, then the Trustees and/or Claims Administrator(s) may in their discretion take the results into consideration in connection with their audit.

## VII.   AHP RIGHTS AND BENEFITS

### A.   CREDITS

1.   If a Class Member timely and properly exercises an Initial or Back-End Opt-Out right pursuant to Section IV.D.2 or Section IV.D.4 hereof, asserts a claim and obtains any payment from AHP as a result of such claim (whether pursuant to a pre-Judgment or post-Judgment settlement of such claim or pursuant to a judgment on such claim), AHP shall receive Credits against its Fund B obligations to the extent set forth in this Section VII.A ("Credits").

2.   With respect to an Initial Opt-Out, if (a) a Diet Drug Recipient (or his or her Representative Claimants) timely and properly opts out of this Settlement as an Initial Opt-Out during the Initial Opt-Out Period and the Diet Drug Recipient has a Matrix-Level Condition at the time of such Initial Opt-Out or payment by AHP, and/or (b) a Derivative Claimant of such Diet Drug Recipient is deemed to have opted out of this Settlement pursuant to Section IV.D.2, then AHP shall receive a Full Credit with respect to any amounts paid by AHP to such Diet Drug Recipient (or his or her Representative Claimants) and/or to the Derivative Claimant ("Initial Opt-Out Credits"), regardless of whether such payments were made pursuant to a Judgment or pre-Judgment or post-Judgment settlement, subject to the following:

   a.   Initial Opt-Out Credits shall not exceed the sum of $300,000,000, in the aggregate.

   b.   Initial Opt-Out Credits shall be applied to reduce the Maximum Available Fund B Amount upon the later of: (i) the date that is five calendar years after the Final Judicial Approval Date; or (ii) the date on which the determination of the Initial Opt-Out Credit becomes final under Section VI.D.1.

   c.   Even though the application of Initial Opt-Out Credits to reduce the Maximum Available Fund B Amount is deferred pursuant to Section VII.A.2.b above, there shall be no accretions on Initial Opt-Out Credits (or any other Credits due AHP) under this Agreement.

3.   With respect to a Back-End Opt-Out, if (a) a Diet Drug Recipient (or his or her Representative Claimants) timely and properly exercises a Back-End Opt-Out under this Agreement, and the Diet Drug Recipient has a Matrix-Level Condition at the time of the exercise of such Back-End Opt-Out, and/or (b) a Derivative

Claimant of such Diet Drug Recipient is deemed to have opted out of this Agreement pursuant to Section IV.D.4 or otherwise, then AHP shall receive a Full Credit ("Back-End Opt-Out Credit") with respect to any amounts paid by AHP to such Diet Drug Recipient (or his or her Representative Claimants) and/or to the Derivative Claimant, regardless of whether such payments were made pursuant to a Judgment or pre-Judgment or post-Judgment settlement. Back-End Opt-Out Credits shall be applied to reduce the Maximum Available Fund B Amount upon the later of: (i) the date that is five calendar years after the Final Judicial Approval Date; or (ii) the date on which the determination of the Back-End Opt-Out Credit becomes final under Section VI.D.1.

4.    For purposes of this Section VII.A:

"Judgment" shall mean any decision by a court of law or any other authorized tribunal.

"Full Credit" shall mean a Credit in the amount of the lesser of:

(a)    the amount of payment to the Diet Drug Recipient (or his or her Representative Claimant) and/or Derivative Claimant; or

(b)    the Matrix payment for which such Diet Drug Recipient (or his or her representative Claimant) and/or Derivative Claimant would have qualified (as determined at the time such individual opted out of this Agreement or at the time of payment of such amount, whichever is higher), less Common Benefit Attorney's fees (such fees not to exceed nine percent (9%) of such Matrix payment).

"Back-End Opt-Out" includes any Class Member who has exercised or purported to exercise any opt-out right under the terms of this Agreement where: (i) the opt-out right was exercised after the end of the Initial Opt-Out Period; (ii) the relevant Diet Drug Recipient was first diagnosed with a Matrix-Level Condition after September 30, 1999, and before the Matrix Payment Cut-Off Date; and (iii) the Class Member meets the eligibility criteria for a Back-End Opt-Out under Section IV.D.4.a of this Agreement, regardless of the manner in which the Class Member characterized the opt-out.

5.    In order to qualify for any of these Credits, AHP must provide the Trustees and/or Claims Administrator(s) with the appropriate Credit Information described in Section VI.D.1.a above.

**B.    EFFECT ON CLAIMS**

1.    Effective upon Final Judicial Approval, every Settled Claim of each Class Member against AHP or any other Released Party shall be conclusively compromised, settled and released, and each such Class Member shall be barred from initiating, asserting or prosecuting any Settled Claim against AHP or any other Released Party, except to the extent permitted by this Settlement Agreement for any Class Member who has timely and properly exercised any applicable opt-out right.

2.    To confirm the provisions set forth in Section VII.B.1, above, within five (5) days after Final Judicial Approval, the Class Representatives, individually and on behalf of the Settlement Class and all of the Subclasses, shall deliver to AHP a fully executed Release and Covenant Not to Sue in the form attached as Exhibit "27."

3.    Each Class Member shall be required to execute an individual Release and Covenant Not to Sue as part of the forms required to be submitted by Class Members in order to seek to participate in the benefits of the Settlement.    Such individual releases shall become ineffective, null and void in the event that the Settlement fails to obtain Final Judicial Approval or in the event that AHP terminates this Agreement for any reason, other than as to persons entering into AIO Individual Agreements.    Such individual releases shall furthermore be ineffective, null and void as to all Settled Claims except those set forth in I.53(e) and (g) above, with respect to any Class Member who timely and properly exercises any applicable opt-out right granted by this Agreement subsequent to the execution of the releases.

4.    For purposes of any statute of limitations or similar time bar, the AHP Released Parties shall not assert that a Class Member actually had PPH unless and until the condition of the Class Member meets the definition of PPH set forth in Section I.46.

5.    In the event that a Class Member initiates a claim based on PPH, the AHP Released Parties shall not assert a defense based on "splitting" of claims, causes of action and/or parties by virtue of the fact that the Class Member is included in the Settlement, but the claim based on PPH is not a Settled Claim.

6.    The forms of release necessary to effectuate this Settlement and the Accelerated Implementation Option set forth in Section V are set forth in the PINK FORM (for Class Members accepting the AIO)

and the BLUE FORM (for all other Class Members) appended hereto as Exhibits "9" and "21" respectively.

7.    The amended complaint in *Sheila Brown, et al. v. American Home Products Corporation*, Civil Action No. 99-20593 (E.D. Pa.), and all Settled Claims which were or could have been asserted, including claims for punitive damages, on behalf of the Settlement Class or any subclass against AHP and/or any Released Parties shall be dismissed with prejudice upon Trial Court Approval. Such dismissal will be vacated in the event that the Settlement does not receive Final Judicial Approval.

8.    After Date 2, the following persons shall have no further right to any benefits under the Settlement and shall have no right to pursue any Settled Claims against AHP or any Released Party, except to the extent such persons timely and properly exercise, or have exercised, an Initial, Intermediate, Back-End or Financial Insecurity Opt-Out:

a.    with respect to all Settled Claims against AHP or any Released Party other than those based on Endocardial Fibrosis, any Class Member asserting a claim based on a Diet Drug Recipient who: (a) has not been diagnosed by a Qualified Physician as FDA Positive nor as having Mild Mitral Regurgitation by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period, or (b) has been diagnosed by a Qualified Physician as FDA Positive or as having Mild Mitral Regurgitation by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period, but the Class Member has not registered or been deemed to have registered for settlement benefits by Date 2.

b.    with respect to Settled Claims against AHP or any Released Party based on Endocardial Fibrosis, any Class Member asserting a claim based on a Diet Drug Recipient who: (a) has not been diagnosed by a Qualified Physician as having Endocardial Fibrosis by September 30, 2005, or (b) has been diagnosed by a Qualified Physician as having Endocardial Fibrosis by September 30, 2005, but the Class Member has not registered or been deemed to have registered for settlement benefits by January 31, 2006.

**C.    PROTECTION OF AHP FROM CLAIMS BY NON-SETTLING DEFENDANTS**

1.    It is the intent of this Settlement Agreement that no Settlement Class Member shall recover, directly or indirectly, any sums for Settled Claims from AHP or any Released Party other than those received under the Settlement Agreement and that AHP shall make no payments to any third party defined herein as a Non-Settling Defendant for any amounts arising out of a Settled Claim brought by a Class Member against such Non-Settling Defendant, except to the extent that Class Members timely and properly exercise an Initial, Intermediate, or Back-End Opt-Out right provided by the Settlement Agreement. It is the further intent of this Settlement Agreement that Settlement Class Members agree to reduce any judgments against Non-Settling Defendants to the extent necessary, under applicable law, to relieve AHP and the Released Parties of liability for contribution or non-contractual indemnity to any Non-Settling Defendant. In particular:

a.    The Parties shall seek an order from the Court, which shall be a condition to AHP's obligations under this Agreement as set forth in Section VIII.D hereof, enjoining and barring all Non-Settling Defendants from commencing or prosecuting any claim against AHP or any other Released Party for contribution and/or non-contractual indemnity, arising out of a claim against such Non-Settling Defendant on behalf of any Class Member asserting Settled Claims in any present or future litigation, other than any Class Member who has timely and properly exercised an Initial, Intermediate or Back-End Opt-Out right provided by this Agreement and subject to the provisions of Section VII.C.2 below.

b.    Nothing in this Agreement is intended to adversely affect any Non-Settling Defendant's right, if any, to set-off or judgment reduction under any state contribution among tortfeasors act or other applicable law. Non-Settling Defendants will be entitled, at a minimum, to whatever set-off or judgment reduction is afforded them by operation of applicable law. Settlement Class Members who do not timely and properly exercise Initial, Intermediate or Back-End Opt-Out rights agree that all defendants are joint tortfeasors in cases in which Settlement Class Members have joined Non-Settling Defendants, AHP, and/or the Released Parties or in any other case in which a Settled Claim is asserted.

c.    The Parties recognize that, under the law of some states, claims for contribution or non-contractual indemnity against a settling defendant survive a Settlement unless the Settlement provides set-off or judgment reduction rights that go beyond those that would otherwise exist by operation of applicable law.  In those cases, the Parties intend that Non-Settling Defendants shall be entitled to the additional set-off or judgment reduction necessary under applicable law to extinguish Non-Settling Defendants' claims, if any, for contribution or non-contractual indemnity against AHP and the Released Parties arising from Settled Claims only.  Settlement Class Members, however, reserve their right to contend that, due to the nature of the theories of liability alleged or presented against the Non-Settling Defendants (*i.e.*, conspiracy or concert of action), Non-Settling Defendants have no right to contribution or non-contractual indemnity from AHP or the Released Parties as a matter of law even though they are joint tortfeasors.

d.    In the event that any claim that a Non-Settling Defendant would have for contribution or non-contractual indemnity against AHP or the Released Parties in the absence of this Settlement Agreement with respect to a Settled Claim would not be extinguished under applicable law by the set-off or judgment reduction to which the Non-Settling Defendant would be entitled by operation of law, any Settlement Class Member who recovers a judgment against any Non-Settling Defendant with respect to a Settled Claim for which AHP and/or any Released Party would be liable by a claim for contribution or non-contractual indemnity but for the provisions of this Settlement Agreement, shall reduce his judgment against the Non-Settling Defendant by the amount, percentage, or share of such judgment necessary, under applicable law, to relieve AHP and the Released Parties of liability for contribution or non-contractual indemnity. By way of example, under a statute modeled on the 1939 version of the Uniform Contribution Among Tortfeasors Act, Settlement Class Members would reduce their judgments against Non-Settling Defendants in the situation described in this Section to the extent of the pro rata shares (as determined under applicable law) of AHP and any relevant Released Party. In the absence of a statute, Settlement Class Members would reduce their judgments against Non-Settling Defendants in the situation described in this Section by the amount, percentage, or

share of such judgment that would lawfully be attributable to AHP and/or the Released Party or Parties but for the provisions of this Settlement Agreement.

e.  To avoid inconvenience and expense to AHP, the other Released Parties, and the Settlement Class Members, and to eliminate the objection that certain states' law requires that AHP and the Released Parties remain as parties in a lawsuit to facilitate the adjudication of Non-Settling Defendants' set-off or judgment reduction rights with respect to a Settled Claim, the releases provided under this Settlement Agreement shall incorporate, to the extent required by applicable law, what is known in Pennsylvania as a "*Griffin* release" and/or what is known in Wisconsin and elsewhere as a "*Pierringer* release." By this provision, Settlement Class Members and Class Counsel acting on behalf of Settlement Class Members agree that the lack of a judicial determination that the settling defendant is a joint tortfeasor does not preclude Non-Settling Defendants from obtaining set-off or judgment reduction rights they would otherwise have under applicable law in the absence of this Agreement. *See Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974); *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963). By this provision, Settlement Class Members and Class Counsel acting on behalf of Settlement Class Members further agree to waive any rights that they might have against Non-Settling Defendants, the assertion of which would, under applicable law, allow Non-Settling Defendants to add or retain AHP and/or the Released Parties as defendants in actions brought by Settlement Class Members against Non-Settling Defendants with respect to Settled Claims for the purpose of adjudicating Non-Settling Defendants' rights, if any, to set-off or judgment reduction. This provision is intended to obviate the necessity and expense of having AHP and the Released Parties added or remain as parties on the record and obliged to participate in a trial merely for the purpose of determining if in fact they were tortfeasors so as to entitle other tortfeasors to a reduction of any verdict. This provision, however, in no way constitutes an admission of liability by AHP and the Released Parties or an admission by Settlement Class Members that any Non-Settling Defendant is entitled to contribution or non-contractual indemnity from AHP or a Released Party.

f.     The Parties intend that this Settlement Agreement result in the termination or bar of all claims for contribution and/or non-contractual indemnity against AHP and the Released Parties with respect to Settled Claims. To the extent that the Parties' intent is not fully realized, and a Non-Settling Defendant obtains a judgment for contribution or non-contractual indemnity against AHP and/or a Released Party with respect to Settled Claims, Settlement Class Members agree to reduce their judgments against Non-Settling Defendants by the amount, percentage, or share of such judgment necessary to satisfy any such judgment or non-contractual indemnity for the benefit of AHP and/or the Released Party. If, despite the provisions of this section, AHP or any Released Party incurs any judgments due to a claim for contribution or non-contractual indemnification arising out of a claim brought by a Settlement Class Member against a Non-Settling Defendant, such Settlement Class Member shall indemnify AHP and the Released Parties for such amount, provided that AHP and the Released Parties shall have made all reasonable efforts to avoid liability for contribution and/or non-contractual indemnity to Non-Settling Defendants under the Settlement Agreement. In this regard, AHP shall have the right to recover indemnity obligations from any unpaid Matrix payments that may be due to the Class Member.

g.     If, despite the provisions of this section, AHP or any Released Party makes a payment of any judgment due to a claim for contribution and/or non-contractual indemnity arising out of a claim brought by a Settlement Class Member against a Non-Settling Defendant with respect to a Settled Claim, such Settlement Class Member shall indemnify AHP and the Released Parties for such amount, and AHP shall make reasonable efforts to reduce such indemnity obligations to judgment in the underlying litigation involving the Non-Settling Defendant. To the extent that, for any reason, a Settlement Class Member has failed to satisfy an indemnity obligation arising under this paragraph or the prior paragraph (either directly or through recovery of payments for Matrix-Level Conditions otherwise due the Class Member) within ninety (90) days after AHP makes any such payment, AHP may, at any time thereafter, assign its indemnity rights against the Class Member to the Trustees and, in such event, shall receive a credit against its Fund B obligations in the amount of the unsatisfied portion of the indemnity (a "Cross-Claim

Credit").    Cross-Claim Credits shall be applied to reduce the Maximum Available Fund B Amount as of the date on which the determination of the Cross-Claim Credit becomes final.

2.    To protect further the Non-Settling Defendants' interests, the Parties have agreed that the bar order shall incorporate the following provisions:

a.    If, despite the provisions of Section VII.C.1, (i) applicable law precludes a Non-Settling Defendant from obtaining a set-off or judgment reduction to which a Non-Settling Defendant would otherwise be entitled under applicable law in an individual case brought by a Settlement Class Member with respect to a Settled Claim without naming AHP or a Released Party as a party in the lawsuit, and (ii) the Non-Settling Defendant and the Settlement Class Member cannot reach agreement on this issue sufficient to eliminate the Non-Settling Defendant's alleged need to name AHP or a Released Party in the lawsuit, the Non-Settling Defendant may apply to the Court for relief from the bar order.

b.    The Non-Settling Defendant's application to the Court shall set forth with specificity (i) the facts and law that would give rise to a claim for contribution and/or non-contractual indemnity but for the provisions of this Settlement Agreement; (ii) the efforts that the Non-Settling Defendant has made to reach an accommodation with the Settlement Class Member with respect to the need to name AHP or a Released Party as a defendant in the case; and (iii) the factual and legal bases for the Non-Settling Defendant's claim that, under the particular facts of the case and the particular provisions of applicable law, the Non-Settling Defendant must be permitted to name AHP or a Released Party in the case despite the bar order.

c.    A copy of the Non-Settling Defendant's application to the Court shall be served on Class Counsel and on counsel for AHP.

d.    The Court shall modify the bar order to permit a Non-Settling Defendant to name AHP or a Released Party in a particular case brought against a Non-Settling Defendant by a Settlement Class Member with respect to a Settled Claim, only where doing so is essential to protect set-off or

judgment reduction rights to which the Non-Settling Defendant would be entitled under applicable law but for the provisions of this Settlement Agreement. Any order modifying the bar order will contain provisions that protect the interests of AHP and the Released Parties in finality under this Settlement Agreement, including, among other things, provisions affirming that the Settlement Class Member has agreed (i) to forego any direct or indirect recovery from AHP or the Released Parties of sums over and above those received under this Settlement Agreement and (ii) to give up any portion of any judgment obtained against a Non-Settling Defendant that is attributed to AHP or any Released Party with respect to a Settled Claim.

e.  Applications made by Non-Settling Defendants for modification of the bar order will be subject to the provisions of Fed. R. Civ. P. 11.

3.  For purposes of this Section VII.C of the Settlement Agreement:

a.  "Non-Settling Defendant" shall mean any person or entity that is not AHP or a Released Party as defined herein, against whom or which a Settled Claim has been or is hereafter made, asserted or commenced. A physician or other Released Party may be a Non-Settling Defendant as to any claim with respect to which he, she, or it is not a Released Party. The term Non-Settling Defendant is not limited to persons or entities who are sued in an action in which AHP or another Released Party is also a party.

b.  "Non-Contractual Indemnity" or "Non-Contractual Indemnification" means a right of indemnity based upon the relationship between or conduct of the parties. These terms include, and the protections provided AHP and the Released Parties herein apply to, a contractual obligation of indemnification voluntarily assumed by AHP to the extent AHP would have been liable to such claimant for indemnity in the absence of such contractual indemnification.

c.  "Settlement Class Member" shall mean any member of the Settlement Class who has not timely and properly exercised an Initial Opt-Out right, an Intermediate Opt-Out right, a Back-End Opt-Out right, or a Financial Insecurity Opt-Out right pursuant to the terms of this Agreement. Upon the timely and proper exercise of any such opt-out rights, the

provisions of this Section VII.C shall become ineffective in connection with any action brought by each Class Member who has timely and properly exercised any such right of opt-out.

4.  To implement the bar order provided for in this Section VII.C, all claims pending against AHP or any other Released Party in any court which are prohibited by such bar order shall be dismissed with prejudice upon Trial Court Approval. Such dismissals will be vacated in the event that the Settlement does not receive Final Judicial Approval.

5.  In the event any Class Member who has received a payment for a Matrix-Level Condition under this Agreement subsequently obtains a judgment or award against a Non-Settling Defendant, other than a physician, and the Non-Settling Defendant successfully asserts a contractual indemnity claim against AHP and/or a Released Party, then, to the extent not already required by Sections VII.C.1-4 above, the Class Member shall reduce the judgment or award against the Non-Settling Defendant by the percentage of fault, liability or other liability-producing conduct attributable to AHP and/or a Released Party. In the event a Class Member who has not received a payment for a Matrix-Level Condition under this Agreement subsequently obtains a judgment or award against a Non-Settling Defendant, other than a physician, and the Non-Settling Defendant successfully asserts a contractual indemnity claim against AHP and/or a Released Party, then, to the extent not already required by Sections VII.C.1-4 above, the Class Member shall reduce the judgment or award against the Non-Settling Defendant by the percentage of fault, liability or other liability-producing conduct attributable to AHP and/or a Released Party or, in the alternative, shall waive any claim to additional benefits under this Agreement, including payments for a Matrix-Level Condition.

D.  **PROTECTION OF AHP FROM POSSIBLE SUBROGATION CLAIMS**

1.  To the extent that any person has rights of subrogation by virtue of a payment or payments made to or for the benefit of any specific Class Member who has not properly and timely exercised a right of opt-out, such rights of subrogation may be asserted with respect to the Trustees' obligation to make payments to that Class Member from Fund B but shall not be asserted directly against AHP and/or the Released Parties except to the extent required by applicable Federal or State law. AHP will promptly notify the Trustees and/or Claims Administrator(s), and the affected Class Member of

the assertion of such a subrogation claim against AHP. The Parties shall move the Court, upon granting Trial Court Approval, to enter a bar order to preclude the assertion of such subrogation claims against AHP and/or the Released Parties, except to the extent that it would be impermissible to bar such claims under provisions of applicable law.

2.    The Trustees and/or Claims Administrator(s) shall provide notice of subrogation claims received by the Trustees to affected Class Members and afford them an opportunity to contest, otherwise object to or compromise any such claims. In making distribution of any amounts to which Class Members are entitled from Fund B, the Trustees shall recognize and pay subrogation claims from the amount otherwise payable to such Class Member, but only to the extent that the subrogation claim is recognized by applicable law. Unless the law clearly sets forth different principles, the Trustees shall not recognize a subrogation claim unless: (1) it is affirmatively brought to their attention prior to distribution of Funds to a Class Member; (2) it is based on a positive provision of law or a valid enforceable contract; (3) the putative subrogee clearly establishes that the subrogee actually made a payment or payments to or for the benefit of the Class Member which is of a type that the putative subrogee would be entitled to recover against AHP and/or the Released Parties, and then (4) only to the extent of the actual payment made less an equitable debit for attorneys' fees, and any other allowable or appropriate charges against the putative subrogee.

3.    In the event that AHP and Class Counsel enter into a settlement agreement with any subrogee in which the subrogee releases its subrogation claims against AHP and the Settlement Class, then after the effective date of the Fifth Amendment to the Settlement Agreement, notwithstanding any other provision of the Settlement Agreement or any previous agreement relating to the settlement of subrogation claims, no amount shall be deducted from any Matrix Compensation Benefits payment due to any Class Member on account of any subrogation claim that has been or could be made by any such subrogee with respect to the recovery of any Class Member, and the Trust shall refund to a Class Member any amount deducted from the Class Member's Matrix Compensation Benefits for such purpose before the effective date of the Fifth Amendment to the Settlement Agreement.

===============================
**VII. AHP RIGHTS AND BENEFITS**                                        135