**E.    WALKAWAY RIGHTS**

1.    AHP shall have the option to terminate and withdraw from the Settlement Agreement, in its sole discretion, based upon the number of persons who have timely and properly elected during the Initial Opt-Out Period to be excluded from the Settlement Class. If AHP elects to exercise this "walkaway right," it shall do so by giving written notice to the Court and to Class Counsel within thirty (30) days of the close of the Initial Opt-Out Period. AHP shall seek to reach its decision with respect to exercise of its "walkaway right."

2.    The exercise of this "walkaway right" by AHP will not affect its obligation to provide the benefits to those Class Members who have accepted the Accelerated Implementation Option prior to AHP's exercise of its "walkaway right" or during any subsequent period in which AHP continues to offer the AIO.

**F.    LIMITATION ON FINANCIAL OBLIGATIONS**

1.    The maximum amount that AHP shall be obligated to pay under this Settlement Agreement shall be AHP's obligation to make the payments to Fund A and the Escrow Agent as specified in Section III.B and AHP's obligation to make payments to Fund B in accordance with Section III.C. These limitations shall also apply to AHP's obligations under Individual Agreements entered into pursuant to the Accelerated Implementation Option.

## VIII.  SETTLEMENT IMPLEMENTATION

### A.  GENERAL

1. In order to become effective, the Settlement must receive Final Judicial Approval, except as to the Accelerated Implementation Option and as otherwise expressly provided herein.

2. The Parties recommend that the Court establish an Advisory Committee of Class Counsel, which would consist of counsel actively involved in State and Federal Diet Drug Litigation. The purpose of the Advisory Committee of Class Counsel would be to advise the Trustees concerning the proper operation and implementation of the Settlement Agreement.

### B.  JURISDICTION

1. The United States District Court for the Eastern District of Pennsylvania will have original and exclusive jurisdiction over all provisions of this Agreement, including the creation and operation of the Settlement Trust and the award of attorneys' fees and reimbursement of litigation expenses, subject to appropriate participation by State Courts in the manner set forth herein. The Parties agree and intend that the Court retain such exclusive jurisdiction for all such purposes: (i) during the pendency of any appeal taken from Trial Court Approval or the denial of Trial Court Approval; and (ii) if Final Judicial Approval is not obtained, subject to Section V.H of this Agreement.

2. In order to become effective as to Class Members who do not exercise the Accelerated Implementation Option, the Settlement contemplated by this Settlement Agreement must receive Final Judicial Approval within the federal judicial system.

3. A State Court Judicial Advisory Committee will be established within fifteen (15) days of Preliminary Approval and will consist of the judges from the State Courts which, as of October 7, 1999, had issued any order certifying state-wide class actions in relation to the effects of Pondimin® and/or Redux™.

4. The State Court Judicial Advisory Committee shall provide advice and counsel to the Federal District Court on all matters pertinent to the Settlement, including approval of the Settlement, which affect Class Members residing in the States of each committee member. In addition, prior to making any award of counsel fees and reimbursement of litigation expenses, the Federal District Court shall consult with and give substantial deference to the views of

the State Court Judicial Advisory Committee concerning the actual contribution which was made to the overall resolution of the litigation by the attorneys with whom the members of the committee are familiar.

5. The costs incurred by members of the State Court Judicial Advisory Committee in fulfillment of their obligations, such as expenses for travel, shall be reimbursed as administrative expenses of the Settlement Trust.

6. During the period of time from the date on which the Trust is established until December 31, 2004, the majority of the Trustees or Administrators shall be approved by the State Court Judicial Advisory Committee.

C. APPROVAL PROCESS AND NOTICE PROVISIONS

1. Within ten (10) days after executing this Agreement, the Parties shall jointly move the Court, by filing a motion for the entry of an order granting Preliminary Approval, in the form attached as Exhibit "11." Such Order shall preliminarily and conditionally appoint the Plaintiffs in *Sheila Brown, et al. v. American Home Products Corporation* as the Class Representatives of the Settlement Class and of each of Subclasses 1(a), 1(b), 2(a), 2(b) and 3; preliminarily and conditionally appoint counsel for such plaintiffs as Class Counsel for the Settlement Class; preliminarily and conditionally certify the Settlement Class, for Settlement purposes only; grant Preliminary Approval of this Agreement; approve the appointment of the Interim Escrow Agent and Interim Claims Administrator(s); authorize the dissemination of the Settlement notice in accordance with Section VI.B hereof; designate the Initial Opt-Out Period to terminate ninety (90) days after the date on which publication and/or mailing of the Settlement notice commences in accordance with the Order granting Preliminary Approval; schedule the date for filing objections to the Settlement; and schedule a formal fairness hearing to review comments concerning this Agreement, to consider its fairness, reasonableness and adequacy under Fed. R. Civ. P. 23(e) and to determine whether an Order should be entered granting Trial Court Approval.

2. Fund A will pay fifty percent (50%), and Fund B will pay fifty percent (50%) of the total costs of printing, publishing and otherwise disseminating the notice. In the event that the Settlement does not receive Final Judicial Approval, the costs of printing, publishing or otherwise disseminating notice shall be

borne by AHP, and the Settlement Trust will therefore have no obligation to return or refund such costs to AHP.

3.    AHP shall retain its right to contest class certification for litigation purposes.

4.    The Parties shall cooperate and assist in all of the filings and proceedings relating to the obtaining of Preliminary Approval as well as Trial Court Approval and in any further filings and proceedings necessary to obtain Final Judicial Approval of the Settlement, and in any related appeals.

5.    Upon Final Judicial Approval, the Class Counsel and all Class Members shall cooperate with AHP and any other Released Party to cause the dismissal, with prejudice and without costs, of any action against AHP or any Released Party asserting a Settled Claim brought by or on behalf of any Class Member who has not timely and properly exercised an Initial Opt-Out right, including but not limited to class actions, whether or not certified as such, which are pending in any state, federal or territorial court. Upon Trial Court Approval, the Class Counsel and all such Class Members shall cooperate with AHP and any other Released Party to cause further proceedings in all such settled actions in which the Class Members did not timely and properly opt out to be stayed pending Final Judicial Approval.

D.    **CONDITIONS**

1.    AHP's obligations under this Agreement, other than its obligations to Class Members who accept the AIO during the period in which it is available for acceptance, will be subject to the following conditions:

a.    Trial Court Approval of the Settlement, which approval order or orders shall:

(1)    Confirm the certification of the Settlement Class and the creation of Subclasses 1(a), 1(b), 2(a), 2(b), and 3, under Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), 23(c)(1) and 23(e), for Settlement purposes only;

(2)    Confirm the appointment of the plaintiffs in *Sheila Brown, et al. v. American Home Products Corporation* as the representatives of the Settlement

Class and of each of Subclasses 1(a), 1(b), 2(a), 2(b) and 3;

(3)     Approve this Agreement in its entirety pursuant to Fed. R. Civ. P. 23(e) as fair, reasonable, adequate, and non-collusive;

(4)     Dismiss with prejudice and without costs the Amended Complaint in *Sheila Brown, et al. v. American Home Products Corporation*, as well as all other claims or actions asserting Settled Claims against AHP pending before the Court, with the condition that such complaints may be reinstated in the event that Final Judicial Approval is not obtained;

(5)     Bar and enjoin all Class Members who have not timely and properly exercised an Initial Intermediate, Back-End, or Financial Insecurity Opt-Out right from asserting and/or continuing to prosecute against AHP or any other Released Party any and all Settled Claims which the Class Member had, has, or may have in the future in any federal, state or territorial court;

(6)     Bar and enjoin the commencement and/or prosecution of any claim for contribution and/or non-contractual indemnity, pursuant to Section VII.C hereof and subject to the provisions of Section VII.C.2, in any federal, state or territorial court against AHP or any other Released Party by any Non-Settling Defendant arising from or relating to any Settled Claim asserted by any Class Member;

(7)     Bar and enjoin the commencement and/or prosecution of any claim or action against AHP in any federal, state or territorial court based on rights of subrogation by virtue of a payment or payments made to or for the benefit of a Class Member arising out of or in relation to any Settled Claims, except to the extent that it would be impermissible to bar such claims under provisions of applicable law;

(8)     Reserve the Court's continuing and exclusive jurisdiction over the Parties, including AHP and the Class Members, to administer, supervise, interpret,

and enforce this Agreement in accordance with its terms and to supervise the operation of the Settlement Trust; and

(9)     Enter such other orders as are needed to effectuate the terms of the Settlement;

b.     Final Judicial Approval of this Agreement.

2.     AHP may at its election terminate this Settlement Agreement if the Final Judicial Approval does not meet all the conditions set forth in Section VIII.D.1.a above.

E.     **ATTORNEYS' FEES**

1.     In the event that the Settlement receives Final Judicial Approval, the Court shall award counsel fees and litigation expenses from the Settlement funds to those attorneys who actually contributed to the creation of the Settlement funds through work devoted to the "common benefit" of Class Members, including any attorney who actually conferred benefits upon the class through State Court litigation ("Common Benefit Attorneys") and may award Class Action Representative Incentive Fees to the certified State and Federal Court Class Representatives in accordance with applicable principles of law and subject to the following provisions.

a.     As provided in this Section, AHP agrees to pay to Class Counsel, Common Benefit Attorneys and the certified State and Federal Class Action Representatives fees in an aggregate amount of up to $200,000,000, together with any accrued interest thereon from the date of deposit into the Fund A Escrow Account, for the services related to Fund A, subject to approval by the Court. To the extent that such fees are awarded by the Court, they shall be paid by the Escrow Agent from the escrow account into which AHP is required to deposit said amounts for that purpose, as set forth above in Section III.B.3 (Fund A Escrow Account).

b.     Attorneys' fees relating to Fund B shall be paid from Fund B. For purposes of awarding attorneys' fees from Fund B, AHP agrees that attorneys' fees should be awarded and paid as a percentage of or otherwise based on the net present value, as of the Final Judicial Approval Date, of the maximum amounts which AHP may be legally obligated to pay to Fund B for the benefit of the Settlement Class, regardless of the amount of claims actually paid at any

given point in time, pursuant to the principle expressed in the case law, *see Boeing v. Van Gemert*, 444 U.S. 472 (1980). The Parties stipulate that, only for purposes of calculating payment of attorneys' fees, the net present value, as of the Final Judicial Approval Date, of the maximum amounts which AHP may be legally obligated to pay to Fund B for the benefit of the class is $2,550,000,000. The Parties further agree that the attorneys' fees payable from Fund B to counsel for the Settlement Class ("Class Counsel") and Common Benefit Attorneys from Fund B shall not exceed $229 million, which is nine percent (9%) of the $2,550,000,000 dollar amount, and that the actual amount of attorneys' fees shall be as determined by the Court. An amount shall be deducted from each payment made to a Class Member from Fund B in an amount equal to nine percent (9%) of the total Matrix payment due the Class Member before any deductions. Individual Class Members who are represented by attorneys entitled to a contingent fee under any valid written contingent fee agreement with such Class Member shall be subject to a further reduction for attorneys' fees due to their attorney. The amount to be paid to the Class Member's attorney shall be the total attorney's fee due under the terms of the contingency fee arrangement less nine percent (9%) of the total Matrix payment due to the Class Member before any deductions. Fund B payments to any such individually-represented Class Members shall also be reduced by the amount of reasonable out-of-pocket costs of such Class Member's attorney to the extent authorized in the document evidencing such attorney's retention and the individual attorney's agreement with the Class Member and to the extent permitted or allowed by applicable law in which the agreement was entered. It is expected that the Trustees will not honor contingent fee agreements with private counsel which were entered into in violation of applicable law. In the event that the Trial Court has not entered any order with respect to the payment of attorneys' fees from Fund B by the end of the first Fiscal Quarter, then within five (5) business days after the end of the first Fiscal Quarter, AHP shall establish and thereafter maintain an interest-bearing escrow account (the "Fund B Attorneys' Fees Account") in the amount of $229 million, for payment of the maximum attorneys' fees payable under this section. The establishment and funding of such Fund B Attorneys' Fees Account shall reduce the Maximum Available Fund B Amount as of that time in the same fashion as a Fund B

Deposit Amount. All income earned by the Fund B Attorneys' Fees Account shall remain in and be added to the Fund B Attorneys' Fees Account, except that any taxes payable on such income shall be paid out of such income. The amount in the Fund B Attorneys' Fees Account shall be available to be distributed as attorneys' fees as directed by the Trial Court or by a court with appellate jurisdiction over such ruling. Any portion of the total balance in the Fund B Attorneys' Fees Account not finally awarded as attorneys' fees shall be paid to AHP within five (5) business days after the order regarding such fees becomes final and the Maximum Available Fund B Amount shall be increased as of the date of such payment by the total amount paid to AHP.

c.      If the Court awards less than nine percent (9%) of the present value amount stated above as payment for the attorneys' fees of Class Counsel and Common Benefit Attorneys from Fund B, the Court shall direct that appropriate adjustments be made in the distribution of Fund B amounts to Class Members and their individual attorneys, including, if necessary, additional payments to Class Members and individual attorneys who received Fund B distributions prior to the Court's decision concerning the award of counsel fees to Class Counsel and Common Benefit Attorneys.

2.      In the event that the Settlement does not receive Final Judicial Approval or is terminated by AHP for any reason, AHP shall make a payment for attorneys' fees for Fund A benefits paid or provided under the AIO to an account to be established, subject to the supervision of the Court. The first such payment shall be in the amount of twenty percent (20%) of the dollar value of all Fund A benefits paid or provided to individuals under the AIO as of the date of such fee payment. At quarterly intervals thereafter, AHP shall pay into the account an amount equal to twenty percent (20%) of the dollar value of all Fund A benefits paid or provided to individuals under the AIO during the preceding quarter. Any amounts paid into this account which are not awarded in attorneys' fees shall be returned to AHP by order of the Court. Any attorney who reasonably believes that he or she actually conferred benefits upon individuals electing the AIO through State Court litigation, may apply to the Court for a portion of the amount deposited in such account and may receive payment of such common benefit fees in accordance with applicable provisions of law. Those accepting the AIO must expressly agree to this provision regarding

fees as a condition to exercising the option. This paragraph shall not be construed to require AHP to make any payment for attorneys' fees for Fund A benefits prior to Final Judicial Approval unless this Agreement is terminated prior to that date.

3.    Prior to the time that the Settlement receives Final Judicial Approval or in the event that the Settlement does not receive Final Judicial Approval or is terminated by AHP for any reason, AHP shall deduct from any Fund B benefits paid to those accepting the AIO an amount equal to nine percent (9%) of the total Matrix payment due to the Class Member before any deductions and shall deposit such amounts in the account to be established pursuant to Section VIII.E.2 above. At such time as the Settlement fails to receive Final Judicial Approval or is terminated by AHP for any reason, any attorney who reasonably believes that he or she actually conferred benefits upon individuals electing the AIO through State Court litigation, may apply to the Court for a portion of the amount deposited in such account and may receive payment of such common benefit fees and costs in accordance with applicable provisions of law. Individual Class Members who are represented by attorneys entitled to a contingent fee under any valid written contingent fee agreement with such Class Member shall be subject to a further reduction for attorneys' fees due to their attorney. The amount to be paid to the Class Member's attorney shall be the total attorney's fee due under the terms of the contingency fee arrangement less nine percent (9%) of the total Matrix payment due to the Class Member before any deductions. Payment of Fund B benefits to any such individually-represented Class Member shall also be reduced by the amount of reasonable out-of-pocket costs of such Class Member's attorney to the extent authorized in the document evidencing such attorney's retention and individual attorney's agreement with the Class Member and to the extent permitted or allowed by law. Those accepting the AIO must expressly agree to this provision regarding fees as a condition to exercising the option. If the Court awards less than nine percent (9%) of the amount stated above as payment for the attorneys' fees of Class Counsel and Common Benefit Attorneys from the amount paid to individuals accepting the AIO, the Court shall direct that appropriate adjustments be made in the distribution of these fund amounts to individuals accepting the AIO and their individual attorneys, including, if necessary, additional payments to individuals who accepted the AIO and their individual attorneys who received payment prior to the Court's decision concerning the award of counsel fees to Class Counsel and Common Benefit Attorneys.

4.  In the event that the Settlement receives Final Judicial Approval, no additional attorneys' fees or litigation expenses shall be paid for benefits conferred on those individuals who accepted the AIO.

5.  The Parties shall recommend that the Court enter an Order precluding a Class Member's individual attorney from recovering a fee in connection with the recovery of the $3,000 cash benefit provided by Section IV.A.2.c or the $6,000 cash benefit provided by Section IV.A.1.c, which is greater than twenty percent (20%) of such amounts.  This twenty percent (20%) fee for a Class Member's individual attorney shall not be affected by fees paid to Class Counsel or Common Benefit Attorneys, pursuant to the Court's order.

**F.   OTHER PROVISIONS**

1.  Any information provided by or regarding a Class Member or otherwise obtained pursuant to this Agreement shall be kept confidential and shall not be disclosed except to appropriate persons to the extent necessary to process Claims or provide benefits under this Agreement or as otherwise expressly provided in this Agreement.  All Class Members shall be deemed to have consented to the disclosure of this information for these purposes.

2.  This Settlement Agreement shall be binding on the successors and assigns of the Parties.

3.  The Parties to the Settlement, including AHP, the Released Parties, or any Class Member, shall not seek to introduce and/or offer the terms of the Settlement Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Settlement Agreement, any statements in the notice documents appended to this Settlement Agreement, stipulations, agreements, or admissions made or entered into in connection with the fairness hearing or any finding of fact or conclusion of law made by the Trial Court, or otherwise rely on the terms of this Settlement, in any judicial proceeding, except insofar as it is necessary to enforce the terms of the Settlement. If a Class Member who has timely and properly exercised an Opt-Out right seeks to introduce and/or offer any of the matters described herein in any proceeding, the restrictions of this Section shall not be applicable to AHP and the Released Parties with respect to that Class Member.

4.  Neither this Agreement nor any exhibit, document or instrument delivered hereunder nor any of the statements in the notice documents appended to this Settlement Agreement or in

connection herewith, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession by AHP or the Released Parties of any liability or wrongdoing or of the truth of any allegations asserted by any plaintiff against it or them, or as an admission by the Class Representatives or members of the Settlement Class of any lack of merit in their claims, and no such statement, transaction or proceeding shall be admissible in evidence for any such purpose except for purposes of obtaining approval of this Settlement Agreement in this or any other proceeding.

5.   The headings of the sections and paragraphs of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

6.   As soon as practicable after the execution of the Settlement Agreement, the Parties shall take all steps which are reasonably necessary to enable the Trustees and/or Claims Administrator(s) promptly to provide Fund A benefits upon Final Judicial Approval to all Class Members not exercising Initial Opt-Out rights. This includes reasonable and necessary steps to establish the Settlement Trust; to establish a mechanism to operate the Settlement Trust and administer claims; to solicit, receive and process claims from Class Members which will be necessary to provide benefits to Class Members; to establish a mechanism to provide medical screening, services and cash to members of the class; to communicate with Class Members and like activities. These expenses shall not exceed $45 million, or such higher amount as may be requested in writing by the Interim Claims Administrator(s) and/or Trustees, agreed upon by the Parties, and approved by the Court. In the event that the Settlement is not approved, AHP will not be entitled to a refund of any of the money spent for these purposes.

7.   Any notice, request, instruction or other document to be given by AHP to Class Counsel or Class Counsel to AHP shall be in writing and delivered personally or sent by Federal Express or facsimile as follows, or as otherwise instructed by a notice delivered to the other Party pursuant to this subsection:

a.   If to AHP:

Louis L. Hoynes, Jr., Esquire
Senior Vice President and General Counsel
American Home Products Corporation

5 Giralda Farms
Madison, NJ 07940-0874

b.    If to the Class Representatives or Class Counsel:

Arnold Levin, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106

Gene Locks, Esquire
Greitzer & Locks
1500 Walnut Street
20th Floor
Philadelphia, PA 19102

8.    Any form or other documentation required to be submitted under this Agreement shall be deemed timely if postmarked on or before the date by which it is required to be submitted under this Settlement Agreement. Subject to other provisions for eligibility, a properly completed and executed AIO Individual Agreement or Opt-Out Form will be effective on the date it is postmarked.

9.    No provision of this Settlement Agreement or any Exhibit thereto is intended to create any third-party beneficiary to this Settlement Agreement.

10.   Upon execution of the Memorandum of Understanding dated October 7, 1999 ("MOU"), AHP and Class Counsel jointly established a toll-free telephone number and website for persons requesting additional information regarding the Settlement. This number and website has been and shall continue to be used to record the names and addresses of such individuals and other information, so that individual notice concerning the Settlement may be provided to them. These names and addresses shall be kept strictly confidential and shall not be disclosed to any person or used for any purpose other than for issuance of settlement notice upon prior order of the Court pursuant to Section VI.B.1.f(3). AHP shall pay all costs relating to the toll-free telephone line and website. In the event that the settlement receives Final Judicial Approval, all expenditures made by AHP in relation to the toll-free telephone line and website shall be considered administrative expenses of Fund A, and AHP shall receive a credit in the amount of all such expenditures in calculating its next payment to Fund A.

11. This Agreement contains the entire Agreement between the Parties with respect to the subject matter hereof and supersedes and cancels all previous Agreements, negotiations, and commitments in writings between the Parties hereto with respect to the subject matter hereof, including without limitation the MOU. This Agreement may not be changed or modified in any manner unless in writing and signed by a duly authorized officer of AHP and by a duly authorized representative of the Class Representatives.

12. Beginning on March 11, 2002, all references in this Settlement Agreement to "AHP" and "American Home Products" (except for the references to AHP in "AHP Settlement Trust") shall be deemed to refer to Wyeth. This name change does not affect the implementation of this Settlement Agreement or the AHP Settlement Trust.

IN WITNESS WHEREOF, the Parties have duly executed this Nationwide Class Action Settlement Agreement between American Home Products Corporation and the Class Representatives, by their respective counsel as set forth below, on this _____ day of November, 1999.

**AMERICAN HOME PRODUCTS CORPORATION**


BY:_____
         LOUIS L. HOYNES, JR., ESQUIRE
         GENERAL COUNSEL

149

CLASS COUNSEL

---
ARNOLD LEVIN, ESQUIRE
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19106
215-592-1500

---
GENE LOCKS, ESQUIRE
GREITZER & LOCKS
1500 WALNUT STREET, 20TH FLOOR
PHILADELPHIA, PA 19102
800-828-3489

---
MICHAEL D. FISHBEIN, ESQUIRE
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19106
215-592-1500

---
SOL H. WEISS, ESQUIRE
ANAPOL, SCHWARTZ, WEISS, COHAN,
   FELDMAN & SMALLEY, P.C.
1900 DELANCEY PLACE
PHILADELPHIA, PA 19103
215-735-2098

---
STANLEY CHESLEY, ESQUIRE
WAITE, SCHNEIDER, BAYLESS & CHESLEY
1513 CENTRAL TRUST TOWER
FOURTH & VINE STREETS
CINCINNATI, OH 45202
513-621-0267

---
CHARLES R. PARKER, ESQUIRE
HILL & PARKER
5300 MEMORIAL, SUITE 700
HOUSTON, TX 77007-8292
713-868-5581

---
JOHN J. CUMMINGS, ESQUIRE
CUMMINGS, CUMMINGS & DUDENHEFER
416 GRAVIER STREET
NEW ORLEANS, LA 70130
504-586-0000

150

**FOR THE PLAINTIFFS' MANAGEMENT COMMITTEE**

**FOR SUBCLASS 1(a):**

_____

DIANNE NAST, ESQUIRE
RODA & NAST
801 ESTELLE DRIVE
LANCASTER, PA 17601
717-892-3000

**FOR SUBCLASS 1(b):**

_____

RICHARD LEWIS, ESQUIRE
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 NEW YORK AVENUE, N.W.
SUITE 500, WEST TOWER
WASHINGTON, DC 20005-3934
202-408-4600

**FOR SUBCLASS 2(a):**

_____

MARK W. TANNER, ESQUIRE
FELDMAN, SHEPHERD & WOHLGELERNTER
1845 WALNUT STREET, 25TH FLOOR
PHILADELPHIA, PA 19103
215-567-8300

151

**FOR SUBCLASS 2(b):**

_____

R. ERIC KENNEDY, ESQUIRE
WEISMAN, GOLDBERG, WEISMAN & KAUFMAN
1600 MIDLAND BUILDING
101 PROSPECT AVENUE WEST
CLEVELAND, OH 44115
216-781-1111


**FOR SUBCLASS 3:**

_____

RICHARD WAYNE, ESQUIRE
STRAUSS & TROY
THE FEDERAL RESERVE BUILDING
150 EAST 4TH
CINCINNATI, OH 45202-4018
513-621-2120

152

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS               :
(PHENTERMINE, FENFLURAMINE,     :    MDL DOCKET NO. 1203
DEXFENFLURAMINE) PRODUCTS       :
LIABILITY LITIGATION            :

**MEMORANDUM AND PRETRIAL ORDER NO. 2984**

Bartle, J.                                    August 25, 2003

   Pending before this, the transferee court, are
"motions" of certain class members to dissolve MDL 1203 involving
the diet drug (fen-phen) litigation and to remand all pending
cases to the various transferor courts.[1]  We have been advised
that similar motions have been filed with the Judicial Panel on
Multidistrict Litigation ("MDL Panel").

   Under 28 U.S.C. § 1407(a), only the MDL Panel has the
authority to grant the relief requested.  However, Rule 7.6(d) of
the Rules of Procedure of the Judicial Panel on Multidistrict
Litigation states, "[t]he Panel is reluctant to order remand
absent a suggestion of remand from the transferee district
court."  Thus, we will treat the pending motions to dissolve as
motions seeking a suggestion of remand.[2]

---

1.  These motions have been filed by MDL 1203 plaintiffs
represented by Fleming & Associates of Houston, Texas, the Law
Offices of Daniel E. Becnel, Jr., and O'Quinn, Laminack & Pirtle
of Houston, Texas.  O'Quinn Laminack & Pirtle filed a second
motion that was joined by its local counsel in Louisiana.

2.  One group of class members did correctly entitle its paper as
a suggestion of remand.

Title 28 U.S.C. § 1407(a) provides in relevant part:

> When civil actions involving one or more
> common questions of fact are pending in
> different districts, such actions may be
> transferred to any district for coordinated
> or consolidated pretrial proceedings. Such
> transfers shall be made by the judicial panel
> on multidistrict litigation authorized by
> this section upon its determination that
> transfers for such proceedings will be for
> the convenience of parties and witnesses and
> will promote the just and efficient conduct
> of such actions. Each action so transferred
> shall be remanded by the panel at or before
> the conclusion of such pretrial proceedings
> to the district from which it was transferred
> unless it shall have been previously
> terminated ....

In an Amended Transfer Order dated January 6, 1998, the MDL Panel selected the Eastern District of Pennsylvania as the transferee court for MDL 1203 and assigned the matter to my able former colleague Judge Louis C. Bechtle for "coordinated or consolidated pretrial proceedings." It recognized that "the actions in this litigation involve common questions of fact and that centralization under section 1407 in [this district] will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 990 F. Supp. 834, 835-36 (J.P.M.L. 1998). Upon the retirement of Judge Bechtle, the MDL Panel reassigned the litigation to the undersigned on July 2, 2001. In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., Docket No. 1203 (J.P.M.L. July 2, 2001) (order reassigning litigation).

-2-

Movants seek the remand of all pending cases in MDL 1203 on the basis that the MDL has fulfilled the objectives set forth by the MDL Panel. They argue that generic discovery has long been completed and only case-specific issues and discovery remain. In addition, they point to the estimated 90,000 class members who recently have exercised downstream opt-out rights under the class action Settlement Agreement with Wyeth and the likelihood that thousands of these individuals ultimately will file lawsuits which will end up as part of MDL 1203.[3] Since in Movants' view only case-specific issues are left, they assert that continuation of proceedings in the MDL will inconvenience the parties and witnesses and unnecessarily delay the resolution of their cases. We note that Movants do not contend that all pending cases have reached the "conclusion of pretrial proceedings."

It is true that generic liability discovery is currently completed. It remains to be seen whether the generic liability discovery can be used as is in downstream opt-out lawsuits. Settlement Agreement §§ IV.D.3, IV.D.4. In any event, the Supreme Court has indicated that the phrase "consolidated or coordinated" pretrial proceedings "is to be interpreted broadly." In re Patenaude, 210 F.3d 135, 142 (3d Cir. 2000) (discussing

---

3. Under the class action Settlement Agreement, class members may exercise what are described as intermediate or back-end opt-out rights under certain conditions. Settlement Agreement §§ IV.D.3, IV.D.4. A class member who opts out may pursue a limited recovery against Wyeth in a lawsuit in state or federal court.

-3-

<u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S.
26, 33-34 (1998)). Although the MDL Panel certainly has the
power to dissolve the MDL once only case-specific issues remain,
it is clear that consolidated or coordinated pretrial proceedings
involving common facts have not yet run their course. <u>See id.</u> at
145.

Pretrial proceedings are ongoing in most if not all
cases currently pending in MDL 1203.[4] Judge Bechtle determined
that pretrial proceedings would include case-specific fact and
expert discovery. <u>See, e.g.</u>, Pretrial Order ("PTO") No. 1962
(May 9, 2001) at 8-12; PTO No. 417 (Jan. 6, 1999); PTO No. 292
(Sept. 24, 1998). Such discovery continues in accordance with
the framework and specific deadlines implemented by this court.
In addition, we recently updated the fact sheet and medical
authorization forms that plaintiffs are required to submit to
Wyeth and other named defendants in an effort further to
streamline and expedite the discovery process. PTO No. 2930
(July 23, 2003). The nature of that discovery and the type of
evidence sought by plaintiffs is generally similar from case to
case. Under such circumstances, we believe that the continued
administration of discovery and other pretrial matters through
the MDL process will provide much needed consistency and reduce
duplication of effort and expense.

---

4. Hundreds of cases, involving thousands of plaintiffs,
currently are pending in MDL 1203. In addition, the MDL Panel
continues to transfer cases here for the purpose of completing
coordinated or consolidated pretrial proceedings.

Remand of all cases and dissolution of MDL 1203 is also, in our view, premature because issues common to all MDL cases continue to arise as diet drug cases are litigated. As Movants are well aware, the litigation of intermediate opt-out lawsuits already has spawned issues of general applicability which not only implicate the class action Settlement Agreement approved by this court but also impact on federal lawsuits which are a part of the MDL.[5]  See Memorandum and PTO No. 2828 (Apr. 8, 2003); Memorandum and PTO No. 2717 (Jan. 29, 2003); Memorandum and PTO No. 2680 (Dec. 11, 2002); Memorandum and PTO No. 2625 (Oct. 17, 2002).

Under the Settlement Agreement, the relief available to downstream opt-out class members is strictly circumscribed.  In exchange for Wyeth's agreement to waive any defense based on the statute of limitations, opt-out class members may not seek punitive, exemplary or multiple damages in the tort system. Settlement Agreement §§ IV.D.3.c, IV.D.4.c.  This prohibition against non-compensatory damages overrides any contrary or inconsistent state evidentiary, procedural, or substantive rule of law.  Memorandum and PTO 2867 (May 22, 2003) at 3; Memorandum and PTO No. 2828 at 39.  On two occasions so far, we have been forced to enjoin certain opt-out class members and their counsel from pursuing punitive damages in state courts in violation of

---

5.  Opt-out plaintiffs, we must emphasize, still remain as class members and continue to be subject to various terms of the Settlement Agreement.  See Memorandum and PTO No. 2828; Memorandum and PTO No. 2717; Memorandum and PTO No. 2680; Memorandum and PTO No. 2625.

the clear terms of § IV.D.3.  See Memorandum and PTO No. 2828 at
¶¶ 2-4; Memorandum and PTO No. 2680 at ¶ 3.  Had we not granted
this relief, it is not unlikely that this type of improper
activity would have become rampant.  Moreover, it would not be
surprising if there is the need for similar injunctive relief in
MDL 1203 cases.  Suffice it to say, if punitive awards, either in
name or substance, are allowed against Wyeth in downstream opt-
out cases, its financial viability could be placed in doubt, and
many deserving class members in this MDL 1203 may never be
compensated for their injuries.  To ensure a unified
interpretation of the Settlement Agreement and to prevent it from
being eviscerated, it is critical that we continue in our role as
supervisor of active MDL cases.

      In addition, we anticipate that issues related to the
eligibility of individual class members to exercise an opt-out
under the terms of the Settlement Agreement will arise.
Eligibility to opt-out depends on the application of detailed
medical criteria set forth in the Settlement Agreement.
Settlement Agreement §§ IV.D.3.a, IV.D.4.a.  Again, coordinated
proceedings within MDL 1203 will best ensure that these criteria
are applied consistently.

      Finally, recurrent issues have continued to emerge in
connection with motions to remand to state courts cases removed
by Wyeth on the basis of diversity of citizenship.  We have now
developed a broader perspective than is usually available to
individual transferor courts in dealing with widespread efforts

                                    -6-

fraudulently to join Phentermine manufacturers as a tactic to thwart removal of cases to the federal courts.[6]  Likewise, we are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal.  Many of these issues have common patterns as well as ramifications far beyond any specific case.  Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203.

Parties, of course, may seek a suggestion of remand from this court once the pretrial process in their individual cases, including case-specific fact and expert discovery, has been completed.  See PTO No. 1962.  In PTO No. 1962, this court implemented an ongoing remand program "to foster prompt adjudication of cases transferred here by the Panel that have completed the pretrial process."  Id. at 3.  Although some of Movants' individual cases may have reached the stage where a suggestion of remand is appropriate, their motions do not make this clear.  Instead, they seek a suggestion for the blanket remand of all pending cases, including those involving class members they do not represent.

---

6.  Phentermine defendants manufactured a drug called phentermine which often was prescribed with Wyeth's diet drugs to counteract certain adverse side effects.  This court has on numerous occasions noted the lack of evidence linking phentermine to the injuries associated with the use of Pondimin and Redux. Memorandum and PTO No. 2946 (July 30, 2003) at 11-13; Memorandum and PTO No. 2876 (May 29, 2003) at 6-9; Memorandum and PTO No. 2567 (Aug. 13, 2002) at 8-10; Memorandum and PTO No. 1351 (June 28, 2000) at 15.

-7-

# EXHIBIT 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**
JUL 1 6 2003
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

GLENDA WISDOM, et al.,            )
                                  )
        Plaintiffs,               )
                                  )
    vs.                           )     Case No. 4:03CV552  CDP
                                  )
WYETH, INC., et al.,              )
                                  )
        Defendants.               )

## ORDER

This case has been conditionally transferred to the Judicial Panel on Multidistrict Litigation, Docket No. 1203, In re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation. There is currently a motion to remand pending before me. Plaintiffs claim that complete diversity does not exist among the parties. Defendants argue that the joinder of the Massachusetts plaintiff was so egregious that it constitutes fraudulent joinder, because it wrongfully deprives them of their right of removal. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

In lieu of guessing whether the Eighth Circuit would adopt the doctrine of egregious joinder as applied to plaintiffs, I will defer to the transferee court, because I conclude that this motion raises issues that are likely to arise in other



actions in the transferee court. In fact, because the transferee court is more familiar with this complicated jurisdictional issue as it applies to this type of litigation, and in fact has applied this doctrine in another case, it is more appropriate for that court to rule. See In re: Diet Drugs. 1999 WL 554584, at *2-4 (E.D. Pa. 1999). Therefore, I will cancel the hearing on plaintiffs' motion to remand previously set for Thursday, ~~July~~ July 24, 2003 at 2:00 p.m.

Accordingly,

**IT IS HEREBY ORDERED** that the hearing on plaintiffs' motion to remand previously set for Thursday, July 24, 2003 is cancelled.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this __16th__ day of July, 2003.

- 2 -

SEP 18 2002  9:32 AM FR MAYNARD COOPER  205 254 1999 TO 912025425999      P.03/12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

SEP 17 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

DIANNE SMITH,                          )
                                       )
      Plaintiff,                       )
                                       )
v.                                     )      Civil Action No.: 02-PT-1579-E
                                       )
AMERICAN HOME PRODUCTS                 )
CORPORATION, et al.                    )
                                       )
      Defendants.                      )

**ENTERED**

SEP 17 2002

ORDER

Pursuant to a Memorandum Opinion filed contemporaneously herewith, the court

STAYS ruling on the Plaintiff's Motion to Remand filed on July 11, 2002, pending further MDL

action. The Parties will advise the court if further rulings become necessary.

This ____17TH____ day of September 2002.

_____
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

19