SEP 18 2002   9:32 AM FR MAYNARD COOPER   205 254 1999 TO 9:2025425999      P.05/12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**



**FILED**

SEP 17 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

DIANNE SMITH,                     )
                                  )
        Plaintiff,                )
                                  )
v.                                )    Civil Action No.: 02-PT-1579-E
                                  )
AMERICAN HOME PRODUCTS            )
CORPORATION, et al.               )
                                  )
        Defendants.               )

**ENTERED**

SEP 17 2002

### MEMORANDUM OPINION

This cause comes to be heard upon plaintiff Dianne Smith's Motion to Remand filed on

July 11, 2002.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Dianne Smith ("Smith") is a resident of Calhoun County, Alabama. Defendant

American Home Products Corporation ("American Home")[1] is incorporated under the laws of

the State of Delaware, and has its principal place of business in the State of New Jersey.

Defendant Gate Pharmaceuticals ("Gate"), a Division of Teva Pharmaceuticals USA, is

incorporated under the laws of the State of Delaware, and has its principal place of business in

Pennsylvania. Defendant Dr. John Sherrer ("Sherrer") is a resident of Calhoun County,

Alabama.

Smith filed a products liability suit in the Circuit Court of Calhoun County, Alabama,

alleging that the diet drugs Pondimin and Adipex were responsible for her severe heart disease

_____

[1]American Home is the successor in interest to A.H. Robins Co., Inc. As of March 11, 2002, American
Home changed its name to Wyeth. *See* Notice of Removal at 1-3. As American Home is the captioned defendant in
this case, the court will continue to refer to Wyeth as American Home.

SEP 18 2002  9:52 AM FR MAYNARD COOPER  205 254 1999 TO 9:2029425995    P.06/12

Pondimin is manufactured by American Home, while Adipex is manufactured by Gate. In addition, Smith sued Sherrer for malpractice, alleging that he breached his duty of care to Smith by prescribing the two drugs to her. Sherrer prescribed the two drugs in combination to Smith on April 7, 1997, May 9, 1997, and on June 18, 1997. Adipex alone was prescribed on August 4, 1997, November 17, 1998, January 18, 2000, and February 23, 2000. Smith alleges that she did not discover her injuries from her use of these drugs until a November 9, 2001 echocardiogram.

Smith's suit was filed on May 8, 2002. On May 29, 2002, Defendants American Home and Sherrer were served with the summons and complaint.[2] In accordance with 28 U.S.C. §§ 1441 & 1446, Defendant American Home filed a notice of removal to this court within thirty days after receipt by the first-served defendant through service of process of the initial pleading setting forth the claims for relief upon which this action or proceeding is based.[3] Defendant American Home asserts that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants Gate and Sherrer did not join in the notice of removal.[4]

### MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994). Therefore, federal courts only have power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen v. Guardian Life Ins. Co of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where

---

[2]Defendant Gate was served on May 31, 2002.

[3]Defendant American Home filed the notice of removal on June 27, 2002.

[4]As will be discussed below, American Home alleges that Gate and Sherrer need not consent and/or join in the removal because they were fraudulently joined in the action.

2

SEP 19 2002  9:32 AM FR MAYNARD COOPER  205 254 1999 TO 9:2029425999        P.07/12

federal jurisdiction is not absolutely clear. *Burns*, 31 F.3d at 1095. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed from state to federal court only if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). The burden of establishing federal jurisdiction is placed on the removing party, with all doubts resolved in favor of remand. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). A state court action may be removed to federal court based upon diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a), (b). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See id.* Moreover, "courts have interpreted 28 U.S.C. § 1446(b) to require *all* served defendants to join in the removal." *Miles v. Kilgore*, 928 F. Supp. 1071, 1075 (N.D. Ala. 1996) (citations omitted) (emphasis added).

## ARGUMENTS

Smith argues that this civil action is due to be remanded to the Circuit Court of Calhoun County, Alabama, because this court lacks jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, Smith asserts that there is no diversity jurisdiction because Sherrer is a resident of Calhoun County, Alabama and has not been fraudulently joined in the action.[1] In addition, Smith points out that neither Gate nor Sherrer has joined in the removal, which would generally be required. *See Miles*, 928 F. Supp. at 1075. American Home counters that neither Gate nor Sherrer should be considered for purposes of removal, because both parties were fraudulently

---

[1] In its Notice of Removal, American Home assumes, based on the nature of Smith's allegations, that the amount in controversy requirement of $75,000 has been met. *See* Notice of Removal at 23. Smith does not address this point in her Motion to Remand, and the court will assume for purposes of this opinion that the amount in controversy requirement has been satisfied.

SEP 18 2002  9:33 AM FR MAYNARD COOPER  205 254 1999 TO S:2025425999     P.06/12

joined. *See Erkins v. American Bankers Ins. Co.*, 866 F. Supp. 1373, 1375 (N.D. Ala. 1994)

(citing cases that have held that fraudulently joined parties need not join in notice of removal)

1.       **Defendant Sherrer**

American Home cites *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.

1996), for the proposition that this court should disregard Sherrer's citizenship for purposes of

diversity because Sherrer was fraudulently joined. According to American Home, a plaintiff is

fraudulently joined when there is no possibility that the plaintiff can establish any cause of action

against the resident defendant. *Cabalceta v. Stand & Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.

1989).[6] More specifically, American Home argues Smith's claims against Sherrer are barred by

the Alabama Medical Liability Act's ("AMLA") two-year statute of limitations, *see* Ala. Code §

6-5-482, and thus Sherrer is fraudulently joined. *See, e.g., Whitlock v. Jackson Nat'l Ins. Co.*, 32

F. Supp. 2d 1286, 1290 (M.D. Ala. 1998) (holding that claims barred by a statute of limitations

are fraudulently joined); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213,

1222 (S.D. Ala. 1998) (same).

The AMLA provides, in part, that "[a]ll actions against physicians . . . must be

commenced within two years next after the act, or omission, or failure giving rise to the claim,

and not afterwards." Ala. Code § 6-5-482. The Eleventh Circuit has held that this statute of

limitations "begins to run when the first injury, however slight, occurs, even though that injury

may later become greater or different." *Free v. Granger*, 887 F.2d 1552, 1555 (11th Cir. 1989).

Relying on the factual findings of Judge Bechtle as part of the multi-district litigation

---

[6]*Cabalceta* also found fraudulent joinder when a plaintiff has fraudulently pled jurisdictional facts. 883
F.2d at 1561. American Home cites *Cabalceta* for this proposition, but since it has not alleged such fraud, this prong
of *Cabalceta* will not be addressed. American Home has later cited cases which purport to make the standard a
"reasonable possibility."

SEP 16 2002  9:33 AM FR MAYNARD COOPER  205 254 1999 TO 912029425999      P.05/13

("MDL"),[7] American Home argues that the injuries caused by Pondimin and Adipex occur when
the drugs are first ingested into the system, even if there is no outward physical manifestation of
injury.[8] Thus, since Smith's last prescription was filled in February 2000, and her suit was not
filed until May 8, 2002, American Home argues that any claim against Sherrer is barred by the
statute of limitations.

Smith counters that "Alabama law has long required a manifest, present injury before a
plaintiff can recover in tort." *Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001)  She
goes on to note that Judge Bechtle, as part of the MDL litigation, found that patients are often
asymptomatic at first and only begin to show outward symptoms once the heart begins to fail.
Smith thus seems to argue, contrary to American Home's position, that injury to her heart,
without outward physical manifestations of injury, is not a "manifest, present injury" sufficient
to trigger the two-year statute of limitations.

American Home also argues that Smith does not qualify for the "safe harbor" provision
found in the AMLA. While the usual statute of limitations for actions under the AMLA is two
years, the Act further provides that

> [I]f the cause of action is not discovered and could not reasonably have been
> discovered within such period, then the action may be commenced within six
> months from the date of such discovery or the date of discovery of facts which
> would reasonably lead to such discovery, whichever is earlier.

---

[1] Judge Bechtle presides over the multi-district litigation, *in re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, which is currently pending before the United States District Court for the Eastern District of Pennsylvania.  Smith was part of the plaintiff class for *in re Diet Drugs* prior to opting-out.

[8] American Home further argues that since Smith was still part of the plaintiff class when those findings were made, she is bound by them.  See Notice of Removal at 5.

5

SEP 18 2002  5:33 AM FR MAYNARD COOPER  205 254 1999 TO 912029425999    P.10/12

Ala. Code § 6-5-482. American Home argues that Smith was, or at least reasonably should have been, aware of the potential health risks associated with taking Pondimin and Adipex more than six months prior to filing the present suit. To support this claim, American Home cites the extensive national and local media coverage and publicity surrounding the recall of Pondimin and Adipex in the Fall of 1997. American Home further cites the extensive national and local media coverage, both print and broadcast, of the health problems associated with these drugs, also starting in the Fall of 1997. American Home notes that most of these media stories advised people who have taken Pondimin and Adipex to consult their doctors, even if they feel perfectly healthy. American Home also places special emphasis on a November 1997 warning published by the United States Department of Health and Human Services, in which people were advised to see their doctor if they had taken Pondimin or Adipex.

American Home also argues that the litigation surrounding Pondimin and Adipex should have given Smith notice of her health problems. American Home cites the publicity surrounding the first jury verdict involving these drugs, over $23 million to a woman in Van Zandt County, Texas, awarded in August 1999. It also cites the nationwide media attention given to the class action settlement approved by Judge Bechtle as part of the MDL, specifically citing the extensive measures taken to ensure that any potential class members received notice of the settlement. These notices were given throughout 1999 and early 2000, and Judge Bechtle described them as highly successful. American Home also refers to Smith's deposition taken on August 27, 2002, and, more particularly, the evidence related to her diagnosis by Dr. Kamran by at least September 2001.

In sum, American Home argues that Smith was on inquiry notice of her potential health

6

SEP 16 2002  9:34 AM FR MAYNARD COOPER  205 254 1999 TO 912029425999     P.11/12

problems as early as 1997, and no later than September 2001. Since American Home argues that these drugs do not cause latent health problems, it contends that Smith would have discovered her injuries if she had gone to the doctor. Since her suit was filed in May 2002, American Home argues that Smith does meet the standard two-year limitations period or the six-month safe harbor.[9]

Smith counters that the Eleventh Circuit has strictly construed claims of fraudulent joinder. Specifically, Smith points out that "[t]he burden of establishing fraudulent joinder is a heavy one. Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Thus, Smith contends that remand is required when "there is even a possibility that a State Court would find that the complaint states a cause of action against any one of the resident defendants." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

Smith argues that any evidence about national publicity and coverage surrounding these drugs is insufficient to show what *she* knew or reasonably could have discovered. Smith points out that there is no proof that any of these messages reached her specifically, or, that if they did, she should have been put on notice of her problems. She also notes that American Home and other drug manufacturers have consistently and publically denied that these drugs cause any health problems or that users need to have an echocardiogram. In essence, Smith asserts that while the actual damage to heart may not have been latent, a point that she does not concede, her *knowledge* of any health problems *was* latent, i.e., she did not know that there was damage until she had the echocardiogram. "The Alabama Supreme Court has held that 'the question of when

---

[9] American Home bases this argument on the premise that the alleged injuries began immediately when the drugs were taken and were discovered at least by September 2001, more than six months before May 2002

7

SEP 16 2002  9:34 AM FR MAYNARD COOPER  205 254 1999 TO 912029425999    P.12/12

a cause of action was or should have been discovered is a question of fact for the jury.'" *Barton v. American Red Cross*, 804 F. Supp. 1455, 1461 (M.D. Ala. 1992) (quoting *Herring v. Shirah*, 542 So. 2d 271, 274 (Ala. 1988)). In light of this standard, Smith argues that she has presented a question of fact for the jury as to when she should have known about her injuries. Thus, she argues that she has presented a colorable claim against Sherrer, and that the case should be remanded.

### CONCLUSIONS OF THE COURT

Although the underlying claim(s) present substantive issue(s) and the statute of limitations issue as to Sherrer is primarily procedural, the specialized nature of the claim(s) call for a uniform application by the MDL. This is true as to the Sherrer issue and the Gate issue. The MDL is better able to determine particularly the Gate issue and the Sherrer time of injuries issue. It is also likely better able to uniformly decide the Sherrer discovery of cause of action issue.

The court will stay ruling on the Motion to Remand until the MDL reaches whatever decisions it may.

This _____ day of September 2002.



ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

8

12/03/2002 14:37 FAX                                                    ☒002

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAR -8  AM 10: 52

LORE IA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROSALIE BERGERON, ET AL            *    CIVIL ACTION

VERSUS                             *    NO. 02-345

AMERICAN HOME PRODUCTS CORP, ET AL *    SECTION "L"(2)

## ORDER AND REASONS

The present case had its genesis in the mid-1990's when diet drug users around the country
filed lawsuits in state and federal courts alleging that the use of the diet drugs Pondimin and Redux,
alone or in combination with the diet drug Phentermine, caused cardiovascular injuries. American
Home Products (AHP), the manufacturer and marketer of Pondimin and Redux, together with the
manufacturer and marketers of Phentermine, and others were made defendants in the suits.

In 1997, the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407,
consolidated all of the federal cases for pretrial purposes and ordered them transferred to the United
States Federal District Court for the Eastern District of Pennsylvania where they bear the designation
*In re Diet Drugs (phentermine/fenfluramine/dexfenfluramine) Products Liability Litigation*, MDL-
1203. The number of cases involving these drugs in both state and federal courts exceeds 12,000.

In 1999, after two years of intensive and expensive litigation, AHP entered into a nationwide
class action settlement agreement with representatives of a putative class action. After a hearing and
briefing, the United States District Court for the Eastern District of Pennsylvania, pursuant to Federal

DATE OF ENTRY

MAR  8 2002



Rule of Civil Procedure 23, certified a nationwide class of "all persons...who ingested Pondimin and/or Redux." Under the terms of the settlement AHP agreed to pay up to $3.75 billion to fund benefits to class members and the class members agreed not to pursue claims against AHP unless they filed "valid and timely opt-outs from the settlement." *See* Pretrial Order 1475 of MDL-1203.

The plaintiffs in the present case have allegedly exercised their right to opt-out of the settlement agreement and subsequently filed suit against AHP and others in the 40th Civil District Court for the Parish of St. John the Baptist, State of Louisiana. (Plaintiffs' Initial Brief p. 1) AHP removed the case to this Court. In support of removal, AHP argues that the non-diverse defendants are fraudulently joinded and that removal is otherwise proper under the All Writs Act. Plaintiffs in the present case seek remand, and AHP requests a stay and transfer to the MDL transferee court.

Germane to these issues is the fact that approximately 17 other actions were filed in Louisiana state courts by the same counsel in complaints allegedly identical to the one filed here. (AHP's Supplemental Brief p.2). All of the cases involve issues concerning, among other things, the alleged fraudulent joinder of the Phentermine manufacturers, the meaning and intent of the settlement agreement, and whether the opt-outs were timely and properly asserted.

The first of the above actions was transferred to the MDL transferee court prior to a decision on the remand motion. *See Anderson v. American Home Products Corp.*, Civil Action 01-20182, MDL-1203 (E.D. Pa.). (AHP Supplemental Brief p.2). The MDL court is now considering plaintiffs' motion to remand. Initial briefings on the plaintiff's motion have taken place, a discovery schedule has been approved by the MDL Special Discovery Master, and a tentative date for argument before the MDL court has been set. (See AHP Supplemental Brief pp. 3 and 4). The discovery before the MDL court is focused on the issue of the alleged fraudulent joinder of the Phentermine

2

12/03/2002 14:37 FAX                                                    ☎004

manufacturers. Specifically, AHP has sought discovery as to whether the plaintiffs attorneys have an agreement or understanding with the Phentermine manufacturers under which they would refuse consent to removal in cases brought by these attorneys in exchange for plaintiffs not pursuing judgments against them. These same issues exist in the present case and this Court might profit from such discovery.

In view of the fact that the issues before this Court in the pending motion to remand are identical to those presently before the MDL transferee court, it seems appropriate for this Court to stay these proceedings pending future action by the transferee court. Accordingly,

IT IS ORDERED that the above captioned case be and hereby is STAYED pending future action by the MDL transferee court.

NEW ORLEANS, LOUISIANA, this 7th day of March, 2002.

UNITED STATES DISTRICT COURT JUDGE

3

06/05/2003 15:54 FAX 512 474 1128          CLARE THOMAS & WINTERS                              ☑050

MINUTE ENTRY
LAINEY, J.
MARCH 25  2002

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PEGGY MARTINEZ, ET AL. | CIVIL ACTION |
| VERSUS | NO. 02-0144 |
| AMERICAN HOME PRODUCTS CORP., ET AL. | SECTION "A"(5) |

Before the Court are a Motion to Remand (Rec. Doc. 15) filed
by plaintiffs Peggy Martinez and Tefferny Perez and intervenors
Frilda Alfonso, et al., and a Motion of AHP Defendants for Stay
of Proceedings Pending Transfer to MDL (Rec. Doc. 14).
Plaintiffs and Intervenors oppose the motion to stay and
defendants oppose the motion to remand.  The motions, which were
set for hearing on March 27, 2002, are before the Court on the
briefs without oral argument.

The instant lawsuit was brought by plaintiffs/intervenors
who claim to have opted-out of the nationwide settlement
agreement entered in the class action lawsuit brought by users of
the diet drugs Pondimin, Redux, and Phentermine.  The instant

DATE OF ENTRY

MAR 2 6 2002



EXHIBIT

N-3

03/25/02  TUE 13:47   [TX/RX NO 7841] ☑003

lawsuit is one of many, brought in Louisiana and elsewhere, in
which alleged opt-out plaintiffs are seeking damages outside of
the class settlement.

Other judges of this Court have considered motions to remand
and to stay that raise virtually identical arguments to those
raised in this case. In his Order and Reasons of March 7, 2002,
issued in Civil Action Number 02-145, Rosalie Bergeron, et al. v.
American Home Products Corp., et al., Judge Fallon concluded that
the MDL transferee court was the more appropriate forum for
deciding the issues raised, and therefore, stayed the matter
before him. Likewise, Judge Beer adopted Judge Fallon's March 7,
2002, Order and Reasons when called upon to decide similar
motions to remand and to stay that were pending before him. See
Franz v. American Home Prods., et al., Civil Action Number 02-85,
Section M.

Like Judge Beer, this Court is in complete agreement with
Judge Fallon's Order and Reasons of March 7, 2002, and hereby
adopts them as its own. Although there seems to be no dispute
that the Martinez and Perez did in fact opt out of the
settlement, in the interest of judicial economy, the issues of
fraudulent joinder that this Court would be forced to resolve in
order to address plaintiffs' motion should be decided by the
transferee Court which has spent years acquiring expertise in the
issues pertaining to the litigation arising out of the diet drugs

2

08/05/2003 15:54 FAX 512 474 1129        CLARK THOMAS & WINTERS                    @052

involved in this lawsuit.

Accordingly:

The Motion of ARP Defendants for Stay of Proceedings Pending
Transfer to MDL (Ref. Doc. 14) should be and is hereby GRANTED.
This matter is STAYED pending further action of the MDL
transferee court.

. . . . . . . .

3

08/05/2003 13:54 FAX 512 474 1129      CLARE THOMAS & WINTERS                    ☐053



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PEGGY MARTINEZ, ET AL                          CIVIL ACTION

VERSUS                                         NO: 03-184

AMERICAN HOME PRODUCTS CORP.,                  SECTION: "A"
ET AL

## ORDER

The Court has been advised that this action cannot proceed to trial and disposition because of the following reasons.

The above captioned case is stayed pending transfer to the MDL panel.

IT IS ORDERED that the Clerk of Court mark this action closed for statistical purposes, and

IT IS FURTHER ORDERED that the court shall retain jurisdiction and that the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition; this order shall not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, this ___ day of March, 2003.

UNITED STATES DISTRICT JUDGE

03/28/03 THU 11:59  [TX/RX NO 5796] ☐001

236 F.Supp.2d 509
(Cite as: 236 F.Supp.2d 509)

Page 1

United States District Court,
D. Maryland

Gayle MOORE, et al
v.
WYETH-AYERST LABORATORIES, et. al.

No. CIV.CCB-02-2691.

Nov. 14, 2002.

Patient who was prescribed prescription diet drug brought action, in state court, against diet drug manufacturer and pharmacy, asserting products liability and negligence claims. Following removal by manufacturer, patient moved to remand and manufacturer moved to defer consideration, pending transfer of action as multidistrict litigation. The District Court, Blake, J., held that stay of consideration of motion to remand would be warranted.

Plaintiff's motion denied, defendant's motions granted.

West Headnotes

[1] Removal of Cases ⊙=82
334k82 Most Cited Cases

Defendant who is fraudulently joined does not need to consent to removal.

[2] Removal of Cases ⊙=107(.5)
334k107(.5) Most Cited Cases

Stay of consideration of motion to remand products liability action against diet drug manufacturer, by patient who was prescribed drug, would be warranted, pending judicial panel on multidistrict litigation's ruling on manufacturer's motion to transfer the action as part of diet drugs product liability litigation; transferee court of multidistrict litigation had ruled on similar motions to remand involving state law claims against pharmacies, and stay would further goals of judicial economy and consistency. 28 U.S.C.A. § 1407; Judicial Panel on Multidistrict Litigation, Rule 1.5, 28 U.S.C.A foll. § 1407.

*509 Thomas F. Yost, Jr., Thomas F. Yost Jr. P.A., Baltimore, MD, for Plaintiffs

Richard M. Barnes, Charles P. Goodell, Jr., Bonnie

J. Beavan, Goodell DeVries Leech and Dann LLP, Baltimore, MD, J. Stephan Lawrence, Jr., Michael Rubin, Arold and Porter, Washington, DC, Robert H Bouse, Jr., Anderson Coe and King LLP, Baltimore, MD, for Defendants.

MEMORANDUM

BLAKE, District Judge.

Before the court are the plaintiffs' motion to remand and Wyeth's motion to defer consideration of the motion to remand and for a stay of pretrial proceedings pending transfer to MDL 1203. Both motions have been fully briefed and no hearing is necessary. See Local Rule 105.6. For the reasons set forth below, the court grants Wyeth's motion to defer consideration of the motion to remand and for a stay of pretrial proceedings, and, *510 therefore, defers consideration of the plaintiffs' motion to remand.

Background

Gayle Moore, a resident of Maryland, brought suit for injuries sustained as a result of her use of the diet drug Pondimin. She initially filed her complaint in the Circuit Court for Baltimore City Clara Tremaine and Sheila Lotsberg joined in the action. Ms. Moore alleged claims against Wyeth on products liability theories, and against Northern Pharmacy, an in-state defendant, based on negligence. Ms. Tremaine and Ms. Lotsberg alleged identical causes of action against Wyeth, but did not assert claims against Northern Pharmacy.

[1] Wyeth removed the case to this court alleging that the in-state defendant, Northern Pharmacy, had been fraudulently joined.[FN1] Wyeth contends that the plaintiffs have no possibility of success against Northern Pharmacy because, under the circumstances of this case, the pharmacy had no duty to warn Ms. Moore when filling a prescription signed by her doctor. Wyeth also filed a motion with the Judicial Panel for Multidistrict Litigation to transfer the case to the Eastern District of Pennsylvania to be consolidated with other diet drug litigation in MDL 1203. The plaintiffs brought a motion to remand, and Wyeth requested a deferral of consideration of the motion to remand and a stay of other pretrial proceedings pending the Judicial Panel on Multidistrict Litigation's resolution of the motion to transfer.

FN1. Northern Pharmacy did not consent to



removal. (Def. Notice of Removal at 12.) However, a defendant who is fraudulently joined does not need to consent to removal. *Richardson v. Phillip Morris Inc.* 950 F.Supp. 700, 701 n. 1 (D.Md.1997).

### MDL 1203

According to the complaint, "[t]his case involves the diet drugs Fenfluramine, Phentermine and Dexfenfluramine commonly know as Fen-Phen and Redux which were manufactured, sold, distributed and promoted by Defendants to capitalize on the public's obsession with being thin." (Def. Notice of Removal Ex. A ¶ 1) [FN2]. The Judicial Panel on Multidistrict Litigation has consolidated in the Eastern District of Pennsylvania actions relating to "alleged defects in three prescription drugs-known by the chemical names fenfluramine, dexfenfluramine, and phentermine-used in the treatment of obesity." [FN3] *In re Diet Drugs Products Liability Litigation,* 990 F.Supp. 834, 836 (Jud.Pan.Mult.Lit.1998). This action, therefore appears to be within the scope of MDL 1203 in the Eastern District of Pennsylvania [FN4]

>FN2. Citations to the complaint will be to Exhibit A of Wyeth's Notice of Removal, because the complaint there has numbered paragraphs.

>FN3. MDL 1203 was originally transferred to Judge Louis C. Bechtle. *In re Diet Drugs Products Liability Litigation,* 990 F.Supp. at 836. Judge Bechtle retired on June 30, 2001 and the case was reassigned to Judge Harvey Bartle III. *In re Diet Drugs Products Liability Litigation* 220 F.Supp.2d at 420 n. 5.

>FN4. The plaintiffs' argument that they are "outside the nationwide class action settlement agreement and thus, not subject to transfer to MDL 1203" (Def. Notice of Removal Ex. A ¶ 2) is best addressed by the Judicial Panel on Multidistrict Litigation

Since the Judicial Panel for Multidistrict Litigation consolidated cases in the Eastern District of Pennsylvania in MDL 1203, that court has issued over 2500 pretrial orders, conducted *Daubert*

hearings, and approved a settlement. *See In re Diet Drugs Litigation,* 220 F.Supp.2d 414, 420-21 (E.D.Pa.2002); 2000 WL 962545 (E.D.Pa. June 28, 2000); 282 F.3d 220, 229 n. 3 (3d Cir.2002). The court in MDL 1203 *511 has also considered motions to remand similar to the motion before this court. *See in re Diet Drug Products Liability Litigation,* Pretrial Order 37, 1998 WL 254976 (E.D.Pa April 16, 1998); Pretrial Order of April 23, 1999, 1999 WL 240330; Pretrial Order of February 15, 2000, 2000 WL 217509; Pretrial Order of December 7, 2000, 2000 WL 1886594; Pretrial Order of August 13, 2002, 220 F.Supp.2d 414. Indeed, many of these motions involved the joinder of in-state pharmacies on claims similar to those alleged against Northern. *In re Diet Drugs Products Liability Litigation,* Order of August 13, 2002, 220 F.Supp.2d 414, 422-25; Order of December 7, 2000, 2000 WL 1886594; Order of April 16, 1998, 1998 WL 254976.

*Framework for a Motion to Stay Pending Transfer to Multidistrict Litigation*

[2] The Judicial Panel on Multidistrict Litigation has held that a district court judge has the authority to either wait for a transfer order without ruling on a motion to remand, or to rule on the motion before a transfer order has been issued. *In re Asbestos Products Liability Litigation,* 170 F.Supp.2d 1348, 1349 n. 1 (Jud.Pan.Mult.Lit.2001) ("[T]hose courts wishing to address [motions to remand] have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them...."); *see also* Rules of the Judicial Panel on Multidistrict Litigation, Rule 1.5 ("The pendency of a motion ... before the Panel concerning transfer ... of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").

Allowing the transferee judge to rule on the motion to remand provides for consistent treatment of similar issues and may reduce the burden on litigants and the judiciary. In transferring the diet drug products liability litigation to the Eastern District of Pennsylvania, the Judicial Panel on Multidistrict Litigation noted that "[c]entralization under Section 1407 is ... necessary in order to eliminate duplicative discovery, prevent inconsistent or repetitive pretrial rulings ..., and conserve the resources of the parties, their counsel and the judiciary." *In re Diet Drugs Products Liability Litigation* 990 F.Supp. at 836; *but see Kohl v. American Home Products,* 78 F.Supp.2d 885, 888 (W.D.Ark.1999) (holding that it does not

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

236 F.Supp.2d 509
(Cite as: 236 F.Supp.2d 509)

Page 3

further efficiency or uniformity to transfer a motion to remand when it depends entirely on a unique question of state law).

Similarly, ruling on an appeal of the transfer to multidistrict litigation of an Agent Orange case with a jurisdictional issue pending, the Second Circuit held that,

"[t]he jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years.    Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served."

*In re Ivy,* 901 F.2d 7, 9 (2d Cir.1990) (internal citations omitted).

As noted above, the transferee court has already ruled on a number of motions to remand involving state law claims against pharmacies. These cases have required *512 that court to determine the scope of the learned intermediary doctrine as applied to a pharmacy, which is the same issue presented in this case.  See e.g., *In re Diet Drugs Products Liability Litigation* 220 F.Supp.2d 414, 422-23 (E.D.Pa.2002). The transferee court has experience deciding motions to remand in this case involving pharmacies, and has intimate familiarity with the issues involving products liability claims arising from the use of Pondimin. Because it furthers the goals of judicial economy and consistency, the motion to remand will be stayed until the Judicial Panel on Multidistrict Litigation can rule on Wyeth's motion to transfer.

*Possibility of Recovery Against Northern Pharmacy*

Though the court does not decide the issue, the motion to remand would very likely be denied if the court were to consider it.  Despite the plaintiffs' arguments to the contrary, they have only stated a cause of action under negligence, [FN5] and the court is skeptical that there is a possibility of recovery against Northern Pharmacy, such that a finding of fraudulent joinder is inappropriate.

FN5.  The complaint alleges only that Northern Pharmacy was negligent. *(Def*

Notice of Removal Ex. A ¶ ¶ 101-105.)  However, the complaint incorporates by reference all the products liability allegations against Wyeth in its descriptions of the negligence counts against Northern Pharmacy. *(Id* at ¶ ¶ 101, 105.)  The plaintiffs argue that since the complaint incorporates the products liability allegations against Wyeth by reference, they have stated product liability claims against Northern Pharmacy.  (Pls Mot. to Remand at 9-10.)

The plaintiffs are mistaken about the effect of an adoption by reference "Adoption by reference is useful as a matter of convenience, but it may not be used to transform a negligence claim into one of strict liability." *Ziegler v. Kawasaki Heavy Industries,* 74 Md.App. 613, 539 A.2d 701, 704 (1988).

The Court of Appeals of Maryland has held that a pharmacist may not substitute his judgment for that of a physician writing a prescription. *People's Service Drug Stores v. Somerville* 161 Md. 662, 158 A. 12, 13 (1932). The court in that case found that if a physician is liable for writing a prescription that causes harm, that does not mean that the pharmacist is also liable, noting that "[i]t would be a dangerous principle to establish that a druggist cannot safely fill a prescription merely because it is out of the ordinary.  If that were done, many patients might die from being denied unusual remedies in extreme cases." *Id.*

The plaintiffs' allegation is not that Northern Pharmacy was negligent in filling Ms. Moore's prescription, but rather that Northern had a duty to warn her of statements contained in the Physicians Desk Reference.   The Fourth Circuit, applying Maryland law, has held that a pharmacist has no duty to warn a customer when filling a doctor's prescription, noting that.

"[i]f the law is going to require .. that the physician be second-guessed by the pharmacist ... only danger could result.  A pharmacist .. who advised a patient not to take a drug prescribed by a physician might easily cause death or serious injury, and we think the practice of medicine by pharmacists ... is not a field in which we should even encourage them to engage, much less require it...."

*Hofherr v. Dart Industries, Inc.* 853 F.2d 259, 263-64 (4th Cir.1988).



236 F.Supp.2d 509
(Cite as: 236 F.Supp.2d 509)

Page 4

The Fourth Circuit's opinion in *Hofherr* adopts the same rationale as the Maryland Court of Appeals in *People's Service Drug Stores*: it is unwise to impose liability on a pharmacist for filling a prescription signed by a physician, because the physician is in a better position to evaluate the patient's *513 medical needs. There are certainly exceptions to this broad limit on a pharmacist's liability, but they are limited. For example, "this does not mean that pharmacists can safely fill prescriptions calling for doses that are obviously fatal; o r that where the doses prescribed appear to be unusual the prescription can safely be filled without inquiry of the physician to make sure there has been no error." *People's Service Drug Stores*, 158 A. at 14. Failing to warn a patient that the Physicians Desk Reference says a prescription may h ave harmful s ide effects is a far c ry from the imminent safety concerns which appear necessary to impose liability on a **pharmacy**. The court is therefore skeptical that the **Maryland** courts would find a pharmacist can be held liable on a negligence theory simply because he or she filled a prescription which later turns out to be the subject of nationwide products liability litigation. A final determination on this question, however, is better left to the transferee court, in light of its superior knowledge of the scientific and legal issues involved in this case.

Finally, only one of the plaintiffs, Gayle Moore, has made any allegations against Northern **Pharmacy**. (Def. Notice of Removal Ex. A ¶ ¶ 101- 109.) The other two plaintiffs do not allege that they had any interaction with Northern **Pharmacy** at all. It is unlikely that Wyeth should be deprived of a federal forum to litigate a complaint brought by two plaintiffs who have no claims against any in-state defendant w here the a mount i n c ontroversy e xceeds the jurisdictional minimum.

For the foregoing reasons, the motion for deferral of consideration of the motion to remand and stay of pretrial proceedings pending transfer to MDL 1203 will be granted. If the motion to transfer is denied, the m otion t o r emand will b e d ecided p romptly. A separate Order follows.

### ORDER

For the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) W yeth's motion for d eferral of consideration of the motion to remand and for a stay of pretrial proceedings pending transfer to MDL 1203 (docket number 12) is hereby Granted; and

(2) the Clerk shall send copies of this Order and the accompanying Memorandum to counsel of record.

236 F.Supp.2d 509

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CYNTHIA J. BURT,

        Plaintiff,

-vs-                        Case No.  6:03-cv-324-Orl-28JGG

WYETH,
f/k/a American Home Products
Corporation,
WYETH PHARMACEUTICALS,
f/k/a Wyeth-Ayerst Laboratories, Inc.,
A.H. ROBINS COMPANY, INC.,
GOLDLINE LABORATORIES, INC.,
f/k/a Zenith Goldline Pharmaceuticals,
Inc., JUDITH ALKIRE,

        Defendants.

_____

## ORDER

This cause comes before the Court on Plaintiff's response (Doc. No. 18) and

Defendants' response (Doc. No. 17) to this Court's Order to Show Cause (Doc. No. 15). On

April 18, 2003, the Court issued an Order to Show Cause why it should not enter a stay

pending transfer to the Multi-District Litigation. Both parties have responded that they have

no objection to entry of a stay.

    IT IS THEREFORE ORDERED that this case is STAYED pending transfer to the MDL

action. All pending motions in this case are DENIED without prejudice subject to the parties

to refile.

    DONE and ORDERED in Chambers, Orlando, Florida this ___ day of May,

2003.

                                   JOHN ANTOON II
                                   United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

06/05/03  15:43 FAX 202 942 5999       A & P FAX CTR DC #6                    ☒005

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAN 2 2 '03

IDA HAYES,                          )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Civil No. 3:02CV822
                                    )
WYETH, et al.,                      )
                                    )
        Defendants.                 )

## ORDER

This matter is before the Court on Plaintiff's Motion to Remand this case back to the Circuit Court for the City of Richmond, from which court the case was originally removed, and also on Defendant Wyeth's Motion to Stay Pending Transfer to Multi-district Litigation 1203, currently pending in the Eastern District of Pennsylvania. The Court having reviewed the pleadings of counsel and having determined that no oral argument is necessary, hereby GRANTS Defendant Wyeth's Motion to Stay. All proceedings in this case are hereby STAYED pending transfer to the Honorable Harvey Bartle, III, United States District Judge for the Eastern District of Pennsylvania. The Court takes no action with respect to Plaintiff's Motion to Remand.

The Clerk is directed to send a copy of this Order to all counsel of record and all unrepresented parties by regular mail.

It is so ordered.

United States District Judge

Date: Jan. 22, 2003
Richmond, VA

AUG 06 2003 02:56 PR

TO 200257::9014048: P.02

08/06/03  09:41 FAX 902 942 5303     ARNOLD & PORTER     @002

08/06/2003 19:01 FAX 6019884508     BUTLER SNOW ATTYS.     @001

**FYI**  FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DISTRICT

Butler Snow

PATRICIA BROWN, ET AL.                                    PLAINTIFFS

V.                              CIVIL ACTION NO. 3:03cv29-M-A

WYETH, FKA AMERICAN
HOME PRODUCTS CORPORATION, ET AL.              DEFENDANTS

## ORDER

This cause comes before the court on the plaintiffs' motion for preliminary injunction and/or expedited hearing [13-1] on their motion to remand. The court finds that the motion is not well-taken and should be DENIED.

The plaintiffs fear that if their case is transferred to MDL they will be "forced to Court for a number of years without potential of recovery, subject their Motion to Remand to be heard by a judge who has no authority to hear the motion, and who is likely to apply an erroneous standard of law regarding remand and deny the motion." They move this court to enjoin Wyeth, et al., and the Clerk from transferring this case to MDL until the court rules on its motion to remand.

In *Lemont v. Microsoft Corp.*, No. CIV. A. 00-0779, 2000 WL 462829 at *2 (E.D. La. 2000) stated that "the [MDL Panel] has the power to transfer cases with motions to remand pending, and the district courts have discretion to stay actions pending decisions of the [MDL Panel] even where jurisdictional questions exist." In *In re Ivy*, 901 F. 2d 7, 9 (2nd Cir. 1990), the appellate court held that "not only was transfer allowed where a remand motion is pending, but further that having the transferee court decide the remand motion is most appropriate because "the jurisdictional issue is easily capable of arising" in other later transferred actions."

AUG 06 2003 02:56 PR                          TO 200257::90:4048: P.23

05/08/03  09:42 FAX 202 942 8303    ARNOLD & PORTER                    ☎003

05/06/2003 13:54 FAX 6019854806     BUTLER SNOW ATTYS.                  ☎003

Though the court is sensitive to the arguments advanced by the plaintiff, it has no reason to believe that they cannot be properly addressed to Honorable Harvey Bartle III, the transferee judge. This court concludes that the issues involved in this instant motion is likely to be common to other transferred cases and, therefore, this court finds that centralized pretrial proceedings are necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings concerning common factual questions. Accordingly, the plaintiffs' motion for a preliminary injunction and/or expedited hearing is DENIED.

SO ORDERED this is the ___ day of May 2003.

MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE

** TOTAL PAGE.03 **

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

JUL 2 4 2002

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | |
|---|---|
| HARRY WAKEFIELD, Individually and as Surviving Parent of Larissa Wakefield, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS | ) Civil Action No: SA-02-CA-501-EP |
| | ) |
| WYETH-AYERST LABORATORIES DIVISION OF AMERICAN HOME PRODUCTS CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER STAYING TRIAL PROCEEDINGS

On this date the Court considered Defendant Wyeth's motion to stay all proceedings pending the transfer of this case to the Eastern District of Pennsylvania for consolidated and coordinated pretrial proceedings as part of the MDL-1203, and the plaintiff's opposition to that motion. After careful consideration, the Court will grant the motion until it is either transferred to the United States District Court for the Eastern District of Pennsylvania as part of *In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, No. 1203, or the Judicial Panel on Multisite Litigation declines to accept the case.

### Procedural History

This lawsuit seeks to recover damages resulting from the ingestion of the diet drugs Pondimin and/or Redux. The plaintiff, Harry Wakefield is sole statutory beneficiary and representative of the Estate of Larissa Wakefield, has asserted claims against the drug manufacturer Wyeth (formerly known as American Home Products Corporation), their agents, Mark Golden and Clayton Lacy and the prescribing physician, Dr. Leonel Reyes.

16

EXHIBIT
K

07/25/02  THU 15:52  [TX/RX NO 0833]

08/05/2003 15:50 FAX 512 474 1129          CLARK THOMAS & WINTERS                          ☑036

On May 22, 2002, Defendant Wyeth removed this action to federal court based on fraudulent joinder and the plaintiff filed a motion to remand. Subsequently, defendant filed a response to that motion along with a motion to stay pending the transfer of this case to the Eastern District of Pennsylvania for consolidation and coordinated pretrial proceedings as part of the MDL-1203 (a nationwide consolidation of diet drug cases).

### Discussion

To become part of this consolidation, the Judicial Panel on Multidistrict Litigation must verify the case and issue an order transferring it to the MDL. If this determination is made, the plaintiff then has an opportunity to appeal the decision before it becomes final. On May 28, 2002, the defendant notified the Judicial Panel on Multidistrict Litigation of the existence of this case. Due to the common factual issues regarding the alleged fraudulent joinder of Dr. Lionel Reyes, Mark Golden, and Clayton Lacy, as well as the timeliness of removal issue in the present case, this Court finds that a stay will promote judicial efficiency and decrease the possibility of inconsistent rulings on similar points of law. As a result, the Court GRANTS the defendant's motion to stay pending the determination of the Judicial Panel on Multidistrict Litigation on whether to transfer this case to the MDL (docket entry #8) and STAYS further trial proceedings. Accordingly, the Court's consideration of the motion to remand motion will be HELD IN ABEYANCE pending resolution of the issue of transfer. To ensure that the Court remains apprized of the status of this cause, the Court ORDERS the defendant, Wyeth, to report the status of transfer proceedings to this Court quarterly beginning November 1, 2002.

SIGNED this 2ʸᵗʰ day of July, 2002.

EDWARD C. PRADO
UNITED STATES DISTRICT JUDGE

07/25/02  THU 15:53  [TX/RX NO 8847]

06/05/03  15:19 FAX 202 942 5209        ARNOLD & PORTER                    ☒002

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

BETH B. CASO                          §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §          CIVIL ACTION NO. G-03-440
                                      §
WYETH AND LINA T. BAUTISTA, M.D.      §
                                      §
        Defendants.                   §

United States Courts
Southern District of Texas
ENTERED

JUL 1 8 2003

Michael N. Milby, Clerk

## ORDER STAYING LITIGATION AND ADMINISTRATIVELY CLOSING CASE

Plaintiff Beth Caso brings this action seeking damages for injuries that allegedly occurred as a result of using diet drugs fenfluramine and dexfenfluramine. Plaintiff originally brought her action against Defendants in Brazoria County District Court. Defendants removed the action to this Court on June 19, 2003. Subsequently, Defendants requested the Court to stay this action pending transfer to the Multi-District Litigation Court ("MDL"), and Plaintiff timely responded. Additionally, Plaintiff filed her Motion to Remand urging this Court to remand this action for lack of subject matter jurisdiction, asserting a lack of diversity amongst the Parties. Defendants' Response contends that the prescribing physician, Dr. Bautista, is fraudulently joined because Plaintiff has no possibility of recovery against her, and therefore, there is complete diversity between Plaintiff and Wyeth. See Vargas v. State Farm Lloyds, 216 F. Supp. 2d 643, 646-47 (S.D. Tex. 2002).

Generally, the decision to stay proceedings is discretionary, and that decision is guided by common sense policies of justice and judicial efficiency. Staying an action such as this pending transfer is proper if the Motion to Remand raises issues that are common and typical of other issues that are likely to arise in other cases that have or will be transferred to the MDL transferee court. See In re Ivy, 901 F.2d 7, 9 (2d. Cir. 1990). In the instant case, as noted above, Plaintiff is suing her

08/05/03   15:20 FAX 202 942 5208        ARNOLD & PORTER                    ☑003

treating physician.   If her Doctor was properly joined, then this Court has no subject matter jurisdiction because the Parties are not completely diverse.   On the other hand, if Dr. Bautista was fraudulently joined, the action is properly before an Article III Court.  After considering the Parties' Motions and the issues that similar cases before the MDL Court pose, it is obvious that a stay will promote judicial efficiency because the exact issue before the Court (whether the treating physician was fraudulently joined to defeat diversity jurisdiction) is present in most cases pending before the MDL Court.  Since this remand issue is common in most of the cases before the MDL, judicial economy is best served by allowing the transferee Court to decide this remand question collectively, which will then avoid widespread conflicting pretrial rulings and manifestly piecemeal litigation.

For the reasons articulated above, the Court respectfully GRANTS Defendants' Motion and hereby ORDERS that this action be STAYED and Administratively Closed until it is either transferred to the United States District Court for the Eastern District of Pennsylvania as part of *In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, No. 1203, or until the Judicial Panel on Multidistrict Litigation declines to transfer this action.

IT IS SO ORDERED.

DONE this _12_ day of July 2003, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JAN   8 2003

Michael N. Milby, Clerk

| | |
|---|---|
| MARILYN CRISLIP | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. G-02-752 |
| | § |
| MAHA K. AL-LAHIQ, M.D., WANDA P. | § |
| SPUHLER, M.D., AND WALGREEN CO. | § |
| D/B/A WALGREENS | § |
| | § |
| Defendants. | § |

## ORDER STAYING LITIGATION AND ADMINISTRATIVELY CLOSING CASE, AND DENYING DEFENDANT MAHA K. AL-LAHIQ, M.D.'S MOTION TO TRANSFER VENUE

Plaintiff Marilyn Crislip ("Plaintiff") brings this action seeking damages for injuries that allegedly occurred as a result of ingesting prescription medications known as Pondimin, Redux, and Phentermine, a diet drug combination popularly known as fen-phen. Plaintiff took these medications for approximately ten months, from April 1996 until February 1997. Plaintiff originally brought her action against Defendants in state court, Galveston County District Court, 10th Judicial District, on September 12, 2002.  Defendants removed the action to this Court on October 24, 2002. Subsequently, Walgreens requested the Court to stay this action pending transfer to the Multi-District Litigation Court ("MDL"), and Plaintiff timely responded.  Additionally, Plaintiff filed her Motion to Remand urging the Court to remand this action for lack of subject matter jurisdiction, asserting that diversity is lacking in the instant case because the two prescribing physicians, Dr. Maha K. Al-Lahiq, M.D and Wanda P. Spuhler, M.D. ("Physician Defendants"), are Texas residents.  Walgreens contends that the Physician Defendants are fraudulently joined because Plaintiff has no possibility

1

Rx Date/Time    JAN-02-200  (WED)   13:09                113 250 25                    P 002

of recovery against them, and therefore, there is complete diversity between Plaintiff and Walgreens. See Vargas v. State Farm Lloyds, 216 F. Supp. 2d 643, 646–47 (S.D. Tex. 2002). Last, Dr. Maha K. Al-Lahiq seeks a Transfer to the Houston Division, which Plaintiff opposes.

Generally, the decision to stay proceedings is discretionary, and that decision is guided by common sense policies of justice and judicial efficiency. Staying an action such as this pending transfer is proper if the issues presented by this lawsuit raise issues that are common and typical of other issues that are likely to arise in other cases that have or will be transferred to the MDL transferee court. See In re Ivy, 901 F.2d 7, 9 (2d. Cir. 1990). In the instant case, as noted above, Plaintiff is suing her treating physicians and the pharmacy who filled her prescriptions. If the Physician Defendants were properly joined, then this Court has no subject matter jurisdiction because the Parties are not completely diverse. On the other hand, if they were fraudulently joined, the action is properly before an Article III Court. After considering the Parties' Motions and the issues that like cases before the MDL Court pose, it is obvious that a stay will promote judicial efficiency because the exact issue before the Court (whether the Physician Defendants were fraudulently joined to defeat diversity jurisdiction) is common in many cases pending before the MDL Court. Since this remand issue is typical of most diet drug cases, judicial economy is best served by allowing the transferee Court to decide this remand question collectively, which will then avoid widespread conflicting pretrial rulings and manifestly piecemeal litigation.

For the reasons articulated above, the Court respectfully GRANTS Walgreen Company's Motion to Stay All Proceedings Pending Transfer to MDL 1203 and hereby ORDERS that this action is STAYED and Administratively Closed until it is either transferred to the United States District Court for the Eastern District of Pennsylvania as part of In re: Diet Drugs (Phentermine,

2

Rx Date/Time     JAN-08-200 (WED)    15:09              713 250 54                    P 004

*Fenfluramine, Dexfenfluramine) Products Liability Litigation*, No. 1203, or until the Judicial Panel

on Multidistrict Litigation declines to transfer this action. Accordingly, the Rule 16 Scheduling

Conference set for January 8, 2003, is cancelled. Furthermore, after reviewing the applicable facts

and the Parties' Motions, the Court concludes that Defendant Maha K. Al-Lahiq, M.D.'s Motion to

Transfer Venue must be **DENIED**.

      IT IS SO **ORDERED**.

      DONE this _____ day of January, 2003, at Galveston, Texas.

                          SAMUEL B. KENT

                          UNITED STATES DISTRICT JUDGE

01/08 '03    WED 16:10    [TX/RX NO 8376]



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
ENTERED

DEC 1 8 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| SHIRLEY KAY | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-02-736 |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION, WYETH, | § | |
| WYETH-AYERST LABORATORIES | § | |
| DIVISION OF AMERICAN HOME | § | |
| PRODUCTS CORPORATION, | § | |
| WYETH-AYERST LABORATORIES | § | |
| COMPANY, A.H. ROBINS | § | |
| COMPANY, INC., MEDICINE | § | |
| MAN, INC., AND DR. DALE | § | |
| MESSER | § | |
| | § | |
| Defendants. | § | |

## ORDER STAYING LITIGATION AND ADMINISTRATIVELY CLOSING CASE

Plaintiff Shirley Kay brings this action seeking damages for injuries that allegedly occurred as a result of ingesting a prescription medication known as Pondimin for approximately two years (1995-1997). Plaintiff originally brought her action against Defendants in state court, Brazoria County District Court, 23rd Judicial District, on August 30, 2002. Defendants removed the action to this Court on October 17, 2002. Subsequently, Defendants requested the Court to stay this action pending transfer to the Multi-District Litigation Court ("MDL"), and Plaintiff timely responded. Additionally, Plaintiff filed her Motion to Remand urging this Court to remand this action for lack of subject matter jurisdiction, asserting a lack of diversity regarding "local" Defendants. Defendants' Response contends the issuing pharmacy, Medicine Man, Inc., and the prescribing physician, Dr. Messer, are fraudulently joined because Plaintiff has no possibility of recovery against them, and

therefore, there is complete diversity among Plaintiff and the remaining Defendants. See Vargas v. State Farm Lloyds, 216 F. Supp. 2d 643, 646-47 (S.D. Tex. 2002).[1]

Generally, the decision to stay proceedings is discretionary, and that decision is guided by common sense policies of justice and judicial efficiency. Staying an action such as this pending transfer is proper if the Motion to Remand raises issues that are common and typical of other issues that are likely to arise in other cases that have or will be transferred to the MDL transferee court. See In re Ivy, 901 F.2d 7, 9 (2d. Cir. 1990). In the instant case, as noted above, Plaintiff is suing her treating physician and the pharmacy who filled her prescriptions. If these two Defendants were properly joined, then this Court has no subject matter jurisdiction because the Parties are not completely diverse. On the other hand, if they were fraudulently joined, the action is properly before an Article III Court. After considering the Parties' Motions and the issues that like cases before the MDL Court pose, it is obvious that a stay will promote judicial efficiency because the exact issue before the Court (whether the treating physician and pharmacy were fraudulently joined to defeat diversity jurisdiction) is present in most cases pending before the MDL Court. Since this remand issue is typical of most diet drug cases, judicial economy is best served by allowing the transferee Court to decide this remand question collectively, which will then avoid widespread conflicting pretrial rulings and manifestly piecemeal litigation.

For the reasons articulated above, the Court respectfully GRANTS Defendants' Motion and hereby ORDERS that this action is STAYED and Administratively Closed until it is either transferred to the United States District Court for the Eastern District of Pennsylvania as part of In

---

[1] Defendants assert the Texas's statute of limitations bars Plaintiff's claims against both Dr. Messer and Medicine Man, Inc.

2

*re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, No.

1203, or until the Judicial Panel on Multidistrict Litigation declines to transfer this action.

IT IS SO ORDERED.

DONE this __12th__ day of December, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

3