UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Mary Andrus; Eleanor Archambeau; Diane Bonneau; Lertis Caldwell; Priscilla Cote; Theresa DeJoy; Laural Fankhauser; Nancy Kennedy; Barbara Williams; Lucinda Youell,**<br><br>　　　Plaintiffs<br><br>v.<br><br>**Indevus Pharmaceuticals, Inc., F/K/A Interneuron Pharmaceuticals, Inc.; Wyeth, Inc., F/K/A American Home Products Corporation; Wyeth Pharmaceuticals, Inc F/K/A Wyeth-Ayerst Pharmaceuticals, Inc., A Division Of American Home Products Corporation; and Boehringer Ingelheim Pharmaceuticals, Inc.,**<br><br>　　　Defendants | C.A. NO. 04-10911 GAO |

**PLAINTIFFS' OPPOSITION TO WYETH'S MOTION TO STAY THIS CASE AND ALL OTHER DIET DRUG CASES REMOVED TO THIS COURT**

In response to national class plaintiffs' exercise of their right to opt out of the diet drug class action settlement and to select the forum of their choice, Wyeth has attempted to remove virtually every case from state courts by asserting that a non-diverse co-defendant was fraudulently joined. It has done so by characterizing every claim as a "sham" regardless of the theories of liability asserted by the plaintiffs under their respective states' law and without taking into account the different defendants involved in each case. In this case, Wyeth has chosen to attack the Massachusetts plaintiffs through the tactic of guilt by association, in an effort to dissuade this Court from deciding the Massachusetts cases on their own merits.

In an oft-repeated maneuver, as soon as any plaintiffs attempted to rebuff an improvident removal, Wyeth has sought to stay action by the local district court, pending transfer to the overburdened MDL Court administering the diet drug claims. This has led to a flood of cases being transferred to the United States District Court for the Eastern District of Pennsylvania. In response, on February 20, 2004, the Judicial Panel on Multidistrict Litigation ("JPML") "encouraged" local district courts to rule on pending diet drug motions, "**particularly a motion to remand**," unless the motion raised issues likely to arise in other actions before the MDL court. (*See* attached Ex. 1). Ignoring this entreaty, Wyeth persists here in seeking to prevent this Court from ruling on the pending motions to remand.

This Court should deny Wyeth's motion and should decide plaintiffs' remand motions for the following reasons: (1) the issues presented by the removal and remand papers are simple, straight-forward and based on Massachusetts law which this Court is best qualified to interpret and apply; (2) the linchpin of the remand issue – whether plaintiffs' claims against Indevus were timely filed by virtue of the Massachusetts discovery rule - was fully briefed and argued before the Honorable Judge Raymond Brassard of the Superior Court of the Commonwealth of Massachusetts and a decision is imminent; (3) federal courts have denied Wyeth's motions to stay on multiple occasions consistent with their obligations and the mandate of the JPML; (4) judicial consistency, economy, and efficiency will be harmed through a stay or transfer; (5) without an immediate ruling, this case will be transferred to the MDL Court which will greatly prolong and delay plaintiffs' case, prolonging the potentially invalid exercise of federal jurisdiction over this case, and causing severe prejudice to plaintiffs who have been

diagnosed with valvular heart disease, a serious and potentially life threatening condition; and (6) only Wyeth, the removing party, will benefit unjustly by its own improvident removal of this action.

## BACKGROUND

As described more fully in the consolidated memorandum in support of their motions to remand, plaintiffs filed claims against Indevus, Wyeth and Boehringer in Middlesex County Superior Court, alleging that they have been seriously injured by the ingestion of the diet drug Redux.[1] Those cases were added to an existing consolidated docket for diet drug litigation that has been under the supervision of Judge Brassard since April 6, 2000.

In one of these actions, *Sawyer v. Indevus Pharmaceuticals* (Civil Action No. 03-5028-B), where Indevus was the sole defendant, Indevus filed a motion for summary judgment, with Wyeth supporting the motion as *amicus curiae*, contending that the statute of limitations barred plaintiffs' claims. Notably, although Wyeth does not even mention the pendency of *Sawyer* in its motion to stay, Wyeth's argument for removal here is virtually identical to Indevus's argument for summary judgment in *Sawyer*. Judge Brassard heard arguments on the Indevus motion on June 16, 2004, after which he indicated that a decision would be rendered expeditiously.

## ARGUMENT

**1. The Motions to Remand Hinge Upon The Application of Massachusetts Law.**

Wyeth's removal of these actions, and plaintiffs' motions to remand, hinge upon a determination of Massachusetts law – whether the Massachusetts discovery rule has

---

[1] Indevus, a Massachusetts corporation, played a central role in the diet drug saga and admitted that it had obtained the license to market Redux in the United States and that it sponsored the application to the FDA for approval of the use of Redux as a diet drug.

3

delayed the accrual of the plaintiffs' cause of action against Indevus so that they have been timely filed. This issue will not be raised in other cases transferred to the United States District Court for the Eastern District of Pennsylvania from around the country. The MDL Court has no special expertise or knowledge of Massachusetts law, or of the application of Massachusetts law to the allegations of the plaintiffs' complaint, that would make it more efficient to resolve the motions to remand in that court. Rather, <u>this Court</u> has a greater familiarity with the Massachusetts statute of limitations and discovery rule than does the Pennsylvania District Court, and is in a better position to quickly and efficiently decide plaintiffs' motion to remand.

The application of the Massachusetts statute of limitations in the context of a claim for fraudulent joinder is unique to the cases brought against Indevus in Massachusetts. Granting a stay in this action and, thereby, deferring ruling on the plaintiffs' motion to remand will not conserve judicial resources or promote consistent rulings, but instead will only serve *Wyeth's* interest in delaying the resolution of the plaintiffs' motion and, ultimately, their ability to prosecute their claims.

**2. An Imminent State Court Ruling Denying Indevus's Motion For Summary Judgment Will Terminate Federal Subject-Matter Jurisdiction Over These Cases.**

Wyeth does not dispute that its sole basis for removing plaintiffs' actions to federal court is identical to the argument for summary judgment made by Indevus in Massachusetts Superior Court. Indeed, in its *amicus* memorandum in the *Sawyer* action Wyeth explicitly supported Indevus's argument and acknowledged the negative ramifications of a contrary ruling on its removal of the Massachusetts cases. *See* Ex. 2, Wyeth's a*micus* memorandum at 8.

4

A ruling by Judge Brassard in favor of the *Sawyer* plaintiffs on the discovery rule issue - common to all the removed cases in Massachusetts - will nullify Wyeth's fraudulent joinder argument and invalidate the removal of all the Massachusetts cases. This is because plaintiffs need only show that there is a *possibility* of stating a valid cause of action in state court to defeat removal. *Fabiano Shoe Company, Inc. v. Black Diamond Equipment, Ltd.,* 41 F. Supp. 2d 70, 71 (D.Mass. 1999). A finding in *Sawyer* that there are issues of material fact precluding summary judgment would demonstrate that plaintiffs' claims far exceed the standard that would defeat assertions of fraudulent joinder.

Because Judge Brassard's ruling on the motion for summary judgment is imminent, Wyeth's motion to stay is intended to forestall the inevitable remand of these cases in the event that Judge Brassard denies Indevus's motion for summary judgment. This exceeds the proper use of the removal statute and should not be countenanced. "Perhaps they should be given credit for their ingenuity, but it should not surprise them that a federal court, careful of its diversity jurisdiction, is, in the circumstances, unwilling to indulge the masquerade." *Mill-Bern Associates, Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240, 246 (D.Mass. 1999); *see also, Duffin v. Honeywell Int'l, Inc.*, 312 F.Supp.2d 869, 874 (N.D. Miss. 2004) (recognizing that removal litigation in the context of a motion to stay pending transfer to an MDL "generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time. While the desire of defendants to reach the comparative safety of an MDL court is

5

understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts . . .").

**3. This Court Should Not Delay Decision on Its Subject-Matter Jurisdiction.**

It is axiomatic that subject-matter jurisdiction is a threshold issue in every case before a federal court. *See Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir. 1999); *O'Connell Management Co., Inc. v. Massachusetts Port Authority*, 744 F.Supp. 368, 371 (D. Mass 1990) (holding that subject matter jurisdiction is a threshold matter; motion related to subject matter jurisdiction should be heard before other motions). This is because the actions of a federal court outside of its statutory subject-matter jurisdiction amount to an unconstitutional invasion of the powers reserved to the states and offends fundamental principles of separation of powers. *See Univ. of South Ala. v. Amer. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). For this reason, "a court should inquire into whether it has subject matter jurisdiction **at the earliest possible stage in the proceedings**." *Id*. (emphasis added). *See also, Spielman v. Genzyme Corp.,* 251 F.3d 1, 4-5 (1st Cir. 2001) (holding that determination of jurisdiction should be done quickly).

Plaintiffs' motion for remand specifically challenges the subject-matter jurisdiction of this Court. The complaints, on their face, show that there <u>IS</u> a resident defendant and there <u>ARE</u> colorable claims under Massachusetts law against Indevus, a citizen of Massachusetts, thereby making the case non-removable under 28 U.S.C. § 1441(b). The motions are ripe for resolution and any delay amounts to an unconstitutional retention of federal power.

**4. Multidistrict Litigation Procedure Favors Action By The Transferor Court.**

6

According to Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, "[t]he pendency of a motion, order to show cause, conditional transfer order . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Thus, this Court has the explicit authority to rule on plaintiffs' motion to remand notwithstanding Wyeth's motion to stay pending transfer to M.D.L. proceedings. *See, e.g., Barragan v. Warner-Lambert Co.,* 216 F. Supp. 2d 627, 630 (W.D. Tex. 2002) ("Despite the issuance of a conditional transfer order, this Court nonetheless retains jurisdiction to consider the instant Motion."); *Meyer v. Bayer AG*, 143 F. Supp. 2d 1044, 1046 (E.D. Wis. 2001) ("A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions.").

The prevailing trend in multidistrict litigation is to have the transferor court decide pending motions to remand: "The transferor court should not automatically stay discovery . . . postpone rulings on pending motions, or generally suspend further proceedings upon being notified of the filing of a motion for transfer. **Matters such as motions to dismiss or remand, raising issues unique to the particular case, may be resolved before the panel acts on the motion to transfer.**" Manual for Complex Litigation, 3d, at 31.131, p.288 (emphasis added).

**5. The Judicial Panel on Multidistrict Litigation And The MDL Court Prefers That The Transferor Court Rule On Pending Diet Drug Litigation Motions To Remand.**

The general preference for transferor courts to rule on pending motions in multidistrict litigation has been specifically applied to the diet drug litigation. In a

7

February 20, 2004 letter addressed to judges involved in the diet drug litigation, the Judicial Panel on Multidistrict Litigation referred to Panel Rule 1.5 and went on to state:

> Thus your jurisdiction continues until any transfer ruling becomes effective. **If you have any motion pending before you in the action – particularly a motion to remand to state court (if the action was removed to your court) – you are encouraged to rule on the motion** unless you conclude that the motion raises issues likely to arise in other actions in the transferee court, should we order transfer, and would best be decided there.

*See* Ex. 1, Letter of JPML (emphasis added). It is clear that the JPML was cognizant of the importance of conserving judicial resources and preventing undue delay in the resolution of pending issues. The Panel was especially concerned that motions to remand be ruled upon without delay. This reflects the importance of determining the issue of subject-matter jurisdiction as soon as possible.

In response to the JPML letter, some courts revisited previously stayed matters and proceeded to rule on pending motions to remand. *See, e.g. Davis v. Wyeth, et al.*, CV-03-J-3167-J, at 1 & n.1 (N.D. Ala. Feb. 25, 2004) (lifting stay following notice from JPML), attached hereto as Ex. 3. Wyeth should not be permitted to ignore the JPML's request, particularly in view of the local nature of the pending motions, the fact that the motions do **not** raise issues likely to arise in other actions in the transferee court, and the inevitable delay that will accompany any stay of proceedings.

At a March 4, 1998 hearing, Judge Louis Bechtle, the original judge presiding over the diet drug MDL, set out the Court's preference for remand motions to be heard by the transferor court:

> When cases are transferred here, many times they are transferred here and very little has been done in the transferor court. They have been filed there and they are a tagalong and everything kind of stops that allow it to work. Although, in many instances there are motions filed in the

8

> transferor court, some are motions to remand back to state court. For example, there might be other motions pending in the transferor court at the time that the case is to be transferred here. In virtually every instance, the transferor court, when that court learns that it could become involved in the MDL, they do not rule on any of those motions. Although they have the authority and, indeed, the power to do so, they – it is a matter of custom, do not do that. <u>It is better if they did</u>, but they don't.

*See* Ex. 4, *In Re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine Products Liability Litigation)*, *MDL 1203 – March 4, 1998-Transcript pp. 105 – 106*. (emphasis added). More recently, Judge Bechtle's successor in supervising the MDL diet drug litigation, Judge Harvey Bartle, specifically questioned why matters of remand regarding state law issues and removal based on fraudulent joinder were being brought before the MDL Court, when they were more properly decided by the local district court. See Ex. 5, *In Re Diet Drugs Product Liability Litigation, MDL No. 1203*, *Hearing Transcript,* (E.D. P.A. July 16, 2002). Specifically, Judge Bartle when asked to address issues regarding the alleged fraudulent joinder of defendants, asked:

> "Why shouldn't that matter be decided by the federal court in Louisiana rather than my remanding cases to the State Court?" *Id*. at 15.
>
> "Is that really a matter for me to get involved in? Isn't it better for a federal court in Mississippi to decide that? I mean, that court would certainly be better versed in the nuances of Mississippi law than I." *Id*. at 102.
>
> "Wouldn't it be better for a federal court in Mississippi - in Mississippi to decide whether a party is proper?" *Id*. at 103.

Judge Bartle further explained the reason why the local federal court rather than the MDL court should decide these case specific, state law remand issues:

> "Maybe doctor x did prescribe the drug for a plaintiff in Mississippi and that doctor is appropriately joined. Maybe in another case down in Texas, a particular doctor who is joined didn't do so. Now, there is no big picture about it. It's just a specific case. One place, it is right; one place it is wrong." *Id*. at 104-105.

9

"[I]f I make a decision, a case specific decision about what the law of Mississippi is with respect to a pharmacy, you know, I'm going to have to look at the complaint that was filed and see what the cause of action is. And then I'm going to have ...to decide what Mississippi law is. I'm going to have to decide whether it is proper to bring that particular defendant into the case." *Id*. at 126.

"Now, maybe complaint A will have a certain theory against a pharmacy [Eckerd Drugs and sales representatives]. And then I will have to decide, well, does Mississippi permit that or not. Then complaint B in Mississippi will have a slightly different theory. Therefore, I'm then going to have to decide whether in B, you can sue a pharmacy [Eckerd Drugs and sales representatives] under that theory. Maybe you can't sue it under theory A but maybe under B. You can't sue under failure to warn, but we all know about the ingenuity of lawyers. There are probably or 30 in this room. And I'll bet there could be 25 or 30 different theories that lawyers could develop to sue pharmacies [Eckerd Drugs and sales representatives] in Mississippi." *Id*. at 127.

"I'm just saying to you that it's simply, you know, deciding one Mississippi case related to pharmacies [Eckerd Drugs or sales representatives] may not be the end of the story." *Id*. at 128.

These statements illustrate that this Court is in the best position to decide the remand motions, and that the directive of the JPML should be followed. Otherwise, these cases will be subject to needless delay, and the MDL Court will be forced to take on additional burdens.

**6. Diet Drug Transferor Courts Have Denied Motions To Stay In Order To Rule On Motions To Remand.**

Contrary to the impression given by Wyeth, many courts have been cognizant of their responsibility to promptly rule on motions for remand and to avoid burdening the MDL Court. Thus, federal courts in Florida have granted plaintiffs' motions to remand while specifically rejecting Wyeth's requests to stay proceedings. *See e.g., Moore v. Wyeth, et al.*, Case No. 5:03cv301-RH (N.D. Fla. 2004) (denying Wyeth's motion to stay proceedings in diet drug case and granting plaintiff's motion to remand upon a finding

that defendant Eckerd had not been fraudulently joined, even though Wyeth claimed Florida's four-year statute of limitations would bar such claims); *Hroncich v. Wyeth*, Case No. 2:03-cv-659-FTM-29SPC (M.D. Fla. 2004), attached hereto as Exs. 6 and 7.

Similarly, federal courts in Alabama have remanded at least thirty-seven (37) cases back to state court despite Wyeth's attempts to stay the cases pending transfer to the MDL Court. *See* Composite Ex. 8. For example, in *Floyd v. Wyeth*, Civil Action No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemen, C.J.), the Court remanded a factually identical diet drug case brought against Wyeth and its sales representatives, holding that Wyeth had "improvidently removed" the case, and had "failed to carry its heavy burden of fraudulent joinder" of the non-diverse sales representative, and taxed costs against Wyeth for removing the case. *Id.* (emphasis added), attached hereto as Ex. 9.

It is noteworthy that in *In Re Fen-Phen, No. 1:03-MD-1-RLV*, (N.D. Ga. August 27, 2003), (Ex. 10), a consolidated proceeding that is cited in Wyeth's memorandum, Judge Vining ruled that, as a federal court sitting in the 11th Circuit, he was in a better position to apply Georgia law than was the MDL Court in Pennsylvania:

> I am going to dispose of all of the motions to remand that I can without sending it to the multidistrict judge, and I am going to do that because it is local, and I think it ought to be handled here… I have read what has been filed and the hearings before the judge, multidistrict judge, and that judge as I read it, just does not want to deal with those motions, I gather. I say that very simply by being one of the district judges, I know how I would feel about dealing with cases that involve say Indiana law or Oregon law or California law, and I would prefer the local people do it. So, I am going to do all of the motions to remand.

*Id*. at 2-3. Judge Vining's decision in the Northern District of Georgia to follow the preference of the MDL Court and decide remand issues expeditiously prior to transfer to

the MDL, is based upon the same factors that apply in this case – a preference for local courts to decide matters of local law.

### 7. Wyeth Misconstrues The Jurisdiction Of The MDL Court.

Throughout its memorandum, Wyeth claims that this Court should stay pending motions because the MDL Court has exclusive jurisdiction to interpret the settlement agreement. This argument is ill-founded for several reasons. Most significantly, plaintiffs' remand motions are not based upon an interpretation of the settlement agreement. Instead, plaintiffs maintain that Indevus is a proper defendant because the Massachusetts discovery rule dictates that a cause of action accrues only when the plaintiff has knowledge or reasonable notice of harm. Under Massachusetts law, that is a question of fact to be determined by a jury.

Indevus and Wyeth contend that plaintiffs are collaterally estopped from making this argument as a result of a determination by the MDL court - in its order approving the settlement agreement - that the harm caused by Redux is non-latent. However, plaintiffs have responded that there is an issue of fact even if the defendants' position is correct. As another court observed in an analogous diet drug case: "The fallacy of Defendant's argument in this regard is that the issue is not whether or not the condition is latent, but whether . . . the condition should have been found with "reasonable diligence"… Whether Plaintiff should have discovered her condition prior to June 21, 2000, is a fact question." *Dykes v. Reeves*, No. 2:03CV121PG (S.D. Miss. Nov. 6, 2003), at 6-7 (*See* Ex. 11).

Thus, the determination of when plaintiffs should reasonably have discovered their injuries does not require interpretation of the settlement agreement, nor is it

12

foreclosed by the judgment of the MDL Court approving the agreement. Nevertheless, in a third-level argument, plaintiffs have challenged Wyeth's assertion of collateral estoppel on several grounds, including the fact that the settlement agreement precludes Wyeth from relying in other cases upon the findings of the MDL Court in approving the settlement agreement. There is no reason to delay ruling upon the motions to remand on the basis of this merely ancillary argument.

In any case, even though the MDL Court reserved jurisdiction over the interpretation of the settlement agreement in some circumstances, it need not do so with respect to issues of collateral estoppel. *See Arata v. Nu Skin International, Inc.,* 96 F.3d 1265, 1269 & n.2 (9th Cir. 1996) (holding that settlement court is not required to determine issue of res judicata effect of its final judgment; matter should be resolved by motion in court of subsequent proceeding).

It is also somewhat surprising to see Wyeth invoke the exclusive jurisdiction of the MDL Court to interpret the settlement agreement, when Wyeth itself interpreted the settlement agreement in its *amicus* brief in *Sawyer*. Even though the same collateral estoppel arguments were raised in *Sawyer* as are made in this Court, and even though Wyeth filed an *amicus* brief and appeared at oral argument in support of Indevus's motion, it never took the position that only the MDL Court, rather than Judge Brassard should interpret the settlement agreement.

In fact, in its *amicus* memorandum filed in *Sawyer,* Wyeth itself interpreted the settlement agreement and advocated the same conclusion as did the plaintiffs: "The Settlement Agreement imposes no restrictions on the claims the plaintiffs may assert against Indevus … The plaintiffs are in the same position with respect to their claims

13

against Indevus as they would have been had Wyeth never reached a class action settlement." Ex. 2, Wyeth's *amicus* memorandum at 5.  Although Wyeth has taken a contrary position in its Notice of Removal and in its opposition to plaintiffs' motions to remand, it has invoked the settlement agreement and the MDL Court's approval of the agreement in its own arguments before the Massachusetts Superior Court.

The retention of jurisdiction by the MDL Court over certain aspects of the settlement agreement was not intended to delay decisions on subject matter jurisdiction merely because the Wyeth and Indevus raised arguments, however erroneous, to support their invocation of the statute of limitations defense to plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, Wyeth's motion to stay proceedings should be denied.

                                            The Plaintiffs

                                            By their attorneys,
/s/ __Michael S. Appel_____
Edward J. Barshak (BBO # 032040)
Michael S. Appel (BBO  #  543898)
Samuel M. Furgang (BBO #  559062)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030

Samuel W. Lanham, Jr. *(Motion for Pro Hac Vice filed)*
Cuddy & Lanham, P.A.
470 Evergreen Woods
Bangor, ME 04401
(207) 942-2898

Neil D. Overholtz *(Motion for Pro Hac Vice filed)*
Aylstock, Witkin & Sasser, P.L.C.
55 Baybridge Drive
P.O. Box 1147
Gulf Breeze, FL 32562-1147
(850) 916-7450

DATED: June 25, 2004
351011