COMMONWEALTH OF MASSACHUSETTS

EASTERN COUNTIES, ss.                                         SUPERIOR COURT

---------------------------------x
IN RE MASSACHUSETTS STATE          :   Civil Action
COURT DIET DRUG LITIGATION         :   No. 00-9999-G
---------------------------------x
KARLA SAWYER, LINDA PAUL,          :
JEANNIE ROSE and JOYCE PALOMBA,    :

            Plaintiffs,            :   Civil Action No. 03-5028-B
                                       (Middlesex County)
      v.                           :

INDEVUS PHARMACEUTICALS, INC.,     :
f/k/a INTERNEURON                  :
PHARMACEUTICALS, INC.,             :

            Defendant.             :
---------------------------------x

## WYETH'S *AMICUS* MEMORANDUM IN SUPPORT OF INDEVUS PHARMACEUTICALS, INC.'S MOTION FOR SUMMARY JUDGMENT

At the status conference hearing held on March 24, 2004, the Court remarked that it had been some time since there was any activity in the consolidated diet drug litigation in Massachusetts, and suggested that the parties could provide it with information and background concerning recent developments in the nationwide diet drug litigation. This Memorandum accordingly provides the Court, first, with some brief background regarding the nationwide class action settlement of diet drug litigation, including the provisions under which thousands of plaintiffs have now filed suit against Wyeth in Middlesex County. It then provides factual context concerning the recent surge of diet drug litigation across the country, including the efforts of the plaintiffs' bar to avoid federal jurisdiction by fraudulently joining local defendants in their actions against Wyeth. As set forth below, the *Sawyer* suit against Indevus now pending before the Court is part of that effort to block Wyeth's removal rights.

I.   THE NATIONWIDE CLASS ACTION SETTLEMENT AGREEMENT

As the Court is aware, a wave of litigation involving the diet drugs Pondimin and Redux followed the withdrawal of those drugs from the market in September of 1997. In the federal system, the diet drug litigation was coordinated by the Judicial Panel on Multidistrict Litigation before Judge Louis Bechtle of the United States District Court for the Eastern District of Pennsylvania.[2] Litigation was also coordinated in a number of state courts around the country, such as the litigation consolidated before this Court in Massachusetts.

In April 1999, Wyeth invited representatives of state and federal diet drug plaintiffs to commence negotiation of a nationwide class action settlement of diet drug litigation. As a result of extended negotiations, in November of 1999, a Nationwide Class Action Settlement Agreement (the "Settlement Agreement") was executed by Wyeth and attorneys representing state and federal diet drug plaintiffs in the nationwide class action captioned *Brown, et al. v. American Home Products Corporation*, Civ. No. 99-20593. Under the terms of the Settlement Agreement, Wyeth agreed to pay a total of up to approximately $3.75 billion into a Settlement Trust, to be used to provide benefits to members of the *Brown* Class. The Settlement Agreement was approved by Judge Bechtle in August of 2000, and became finally effective in January 2002 through the exhaustion of all appeals of the trial court's approval order.[3] Indevus was not a party to the Settlement Agreement.

---

[2]   Following his retirement from the bench, Judge Bechtle was succeeded by Judge Harvey Bartle III as the District Judge supervising the settlement and the federal multidistrict litigation.

[3]   Judge Bechtle's opinion approving the Settlement Agreement provides a more extensive discussion of the history of the diet drug litigation and the terms of the

Footnote continued on next page

Class Members – including all individuals in the United States who had used Pondimin or Redux – had a choice of either opting out of the class as an initial matter or remaining in the Settlement and retaining the right to apply for Settlement benefits. *See In re Diet Drugs*, 2000 WL 1222042, at *25. Approximately 50,000 individuals opted out of the class initially by the March 30, 2000 deadline for exercising that right. Most of those "initial opt-out" cases have been resolved through individual settlements.

In addition to the "initial opt-out" right, there are certain other circumstances under which diet drug users may opt out and sue Wyeth under the terms of the Settlement Agreement.[4] Diet drug users who are eligible can exercise one of two negotiated "downstream" opt-out rights, an Intermediate Opt-Out ("IOO") or a Back-End Opt-Out ("BEOO"). *See id.* at *25-26. Class Members who were first diagnosed with specified levels of heart valve regurgitation after September 30, 1999, but before January 3, 2003, by an echocardiogram performed and interpreted in accordance with the specific requirement of the Settlement Agreement are eligible to exercise an IOO. *See id.* at *25. Class Members timely and properly diagnosed with a "Matrix Level" medical condition, as defined in the Settlement Agreement (and which should involve more serious cardiac conditions than those which qualify a claimant for an IOO) are eligible to exercise a

---

Footnote continued from previous page
Settlement Agreement. *See In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) (Exh. A). For ease of reference, when explaining the relevant provisions of the Settlement Agreement we will refer herein to that opinion rather than citing to the underlying provisions in the Settlement Agreement.

[4]   Primary Pulmonary Hypertension ("PPH") is not a "Settled Claim" under the Settlement Agreement. *See In re Diet Drugs*, 2000 WL 1222042 at *29-31. Those Class Members who have PPH as it is defined under the Settlement Agreement may accordingly assert a claim based upon that condition even if they have not opted out.

3

BEOO, provided that they meet certain other requirements set forth in the Settlement Agreement. *See id.* at *26.[5]

Significantly, although individuals who exercise an IOO or BEOO are contractually permitted to sue Wyeth if they meet the qualifications set forth in the Settlement Agreement for exercising such rights, they remain Class Members and are subject to certain restrictions imposed by the Settlement Agreement upon any claims they wish to assert against Wyeth. For example, the Settlement Agreement precludes such IOO and BEOO claimants from asserting against Wyeth any claim for punitive, multiple or exemplary damages. *See id.* at *25, *49 n.22. The Settlement Agreement further precludes IOO and BEOO claimants from asserting against Wyeth claims for consumer fraud, such as a claim under G.L. c. 93A. *See id.* at *25-26. Wyeth also retains the right under the Settlement Agreement to challenge whether a Class Member has the medical conditions necessary to render him or her eligible for an IOO or BEOO. Such a challenge must be brought in the court in which the plaintiff's lawsuit is pending.

Wyeth, too, is subject to limitations on the defenses that it can raise in IOO and BEOO lawsuits. For example, Wyeth has waived its right to assert a statute of limitation defense for IOO lawsuits filed within one year of the date that the plaintiff's IOO form was filed. *Id.* at *25-26. The MDL Court held in its opinion approving the Settlement Agreement that the Class Members' agreement not to assert punitive damage claims in

---

[5] These "downstream" opt-out rights were negotiated provisions of the settlement that, among other things, allowed the settlement program to be implemented over a period of years. They did not represent a concern about latency of heart valve regurgitation associated with diet drug use, as both Wyeth and Class Counsel, based on their review of the relevant literature and consultation with experts, agreed that heart valve injuries attributable to Pondimin or Redux were not latent – and the Court so found. *See Brown*, 2000 WL 1222042, at *18, *46.

IOO and BEOO lawsuits in return for Wyeth's waiver of statute of limitations defenses was a fair trade-off in light of the protection that the statute of limitations waiver affords Class Members against one of the "main risks they face toward recovery." *Id.* at *49 n.22.

But defendants that were not parties to the Settlement Agreement – such as Indevus – are not bound by the terms of that Agreement. The Settlement Agreement imposes no restrictions on the claims that plaintiffs may assert against Indevus, and Indevus has not waived any defenses against those claims – including any defense based upon the statute of limitations. The plaintiffs are in the same position with respect to their claims against Indevus as they would have been had Wyeth never reached a class action settlement.

## II. THE INTERMEDIATE AND BACK-END OPT-OUT LITIGATION TO DATE

Following final judicial approval of the Settlement Agreement in January 2002, thousands of plaintiffs purporting to have exercised IOO or BEOO rights have filed lawsuits against Wyeth across the country. In Wyeth's experience in the litigation to date, large numbers of these lawsuits have been generated through "mass-production" operations established by plaintiffs' counsel. These operations include mass echocardiographic screenings of clients conducted using mobile equipment in places like hotel rooms or lawyers' offices.[6] Through attorney advertising and such screening

---

[6] For example, one operation – a company called EchoMotion – conducted more than 60,000 echocardiograms on the clients of various law firms. The AHP Settlement Trust, which is the entity created by the Settlement Agreement to administer claims for benefits within the Settlement, has filed a motion seeking to disqualify EchoMotion's

Footnote continued on next page

operations, the plaintiffs' bar has amassed tens of thousands of clients who claim to be eligible to assert IOOs or BEOOs. Wyeth has publicly reported that, based on preliminary estimates, approximately 70,000 Intermediate Opt-Out forms were submitted by the May 3, 2003 deadline for most Class Members to file IOO forms.

In the vast majority of IOO and BEOO cases filed to date, the plaintiffs' bar has attempted to evade the MDL Court by filing IOO and BEOO lawsuits in state court, and by fraudulently joining resident or non-diverse defendants in an attempt to defeat diversity jurisdiction. These local defendants are named in complaints even though there is no reasonable possibility of recovery against them. Plaintiffs have also routinely misjoined in one complaint the claims of dozens or even hundreds of plaintiffs – only one, or a small number, of whom are not diverse from Wyeth.

The MDL Court addressed one such attempt to evade federal jurisdiction in *Anderson v. American Home Products Corp.*, 220 F. Supp. 2d 414 (E.D. Pa. 2002), explaining:

> What has been transpiring can only be characterized as a sham, at the unfair expense not only of AHP [now known as Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against AHP, the real target, in a federal forum.

*Id.* at 425.

---

Footnote continued from previous page
echocardiograms from serving as the basis for Settlement claims. *See* Motion To Disqualify All EchoMotion Echocardiograms From Supporting Claims For Benefits, filed Nov. 19, 2003, *Brown v. American Home Products Corp.*, Civ. No. 99-20593 (E.D. Pa.); MDL Pretrial Order No. 3389 (setting evidentiary hearing on Trust's motion) (Exh. B).

The attempts of the plaintiffs' bar to evade federal jurisdiction have persisted despite the *Anderson* decision. Last summer, in a bid similarly to avoid the MDL Court, plaintiffs' attorneys – including, among others, the plaintiffs' attorneys involved in the *Sawyer* case[7] – filed 168 cases naming more than 14,000 plaintiffs in state court in Fulton County, Georgia, even though only 5 percent of the plaintiffs were from Georgia. The complaints each named several resident Wyeth employee defendants and one or a small number of plaintiffs non-diverse from Wyeth. The Hon. Robert L. Vining of the U.S. District Court for the Northern District of Georgia held that the resident defendants were fraudulently joined and that it was improper to join the claims of one or two plaintiffs non-diverse from Wyeth with the unrelated claims of plaintiffs from other states. Judge Vining denied plaintiffs' motions to remand, and the cases were transferred to the MDL Court for discovery. *See* Order, *In re Fen-Phen Litig.*, No. 1:03-MD-1-RLV (N.D. Ga. Oct. 14, 2003) (Exh. C).

With their efforts to funnel plaintiffs to Fulton County, Georgia, soundly rejected, the plaintiffs' bar is now attempting to funnel plaintiffs from around the country to Middlesex County, Massachusetts. The plaintiffs' bar has recently filed 176 cases on behalf of 2,368 plaintiffs, only 41 of whom are from Massachusetts, and has indicated its intent to file cases on behalf of a total of 4,597 plaintiffs. *See, e.g.*, complaint in *Lisa Anderson et al. v. Indevus Pharmaceuticals, Inc.*, Exh. D. Most cases were filed on behalf of approximately 10-15 plaintiffs. These plaintiffs come from virtually every state

---

[7] The Florida law firm that is among those listed as counsel for numerous recently filed diet drug cases in Massachusetts, Aylstock, Witkin & Sasser, also was involved in the unsuccessful efforts in Georgia to keep diet drug cases out of the MDL Court.

in the union – from New York to California and from Florida to Maine. Plaintiffs proffer no legitimate reason for why they would bring suit in a jurisdiction as distant as 3,000 miles from their homes. Rather, the obvious reason for plaintiffs to name Indevus – a citizen of Massachusetts – as a defendant is to attempt to defeat federal jurisdiction and to prevent Wyeth from removing the cases to federal court. Wyeth intends at this time to remove these cases to federal court, notwithstanding plaintiffs' attempts to block Wyeth's removal rights.

The *Sawyer* case now before the Court is part of plaintiffs' broad strategy to prevent Wyeth from exercising its statutory right to removal. It is no doubt the plaintiffs' view that they are unlikely to convince the MDL Court that Indevus is a bona fide defendant in the multitude of cases they have filed, particularly in light of the MDL Court's repeated rejection of similar removal-blocking tactics. By filing the *Sawyer* case against Indevus – and by electing not to sue Wyeth in that particular case – the plaintiffs apparently seek to obtain an expedited ruling in their favor from this Court on the statute of limitations issue raised by Indevus' summary judgment motion. If the Court were to so rule, plaintiffs would then use that opinion to argue in the context of removal disputes that they have a bona fide claim against Indevus. However, as set forth at length in the memorandum submitted by Indevus in support of its summary judgment motion – which Wyeth supports – the statute of limitations has expired as to Indevus, and plaintiffs' claims against Indevus are accordingly time-barred.

Respectfully submitted,

*Daniel Pariser/ny*

Peter T. Grossi
Daniel S. Pariser
ARNOLD & PORTER LLP
555 Twelfth Street
Washington, DC 20004
(202) 942-5862

William A. McCormack BBO 329580
Janice W. Howe BBO 242190
David Yamin BBO 562216
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Attorneys for Defendant Wyeth

Dated: April 23, 2004

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/hand on 4/23/04.