```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2

 3
    IN RE: DIET DRUGS (Phentermine/  :  MDL NO. 1203
 4  Fenfluramine/Dexfenfluramine)
    PRODUCTS LIABILITY LITIGATION    :
 5                                   :
                                     :
 6  SHEILA BROWN, et al.             :
                                     :
 7      V.                           :
                                     :
 8  AMERICAN HOME PRODUCTS           :
    CORPORATION                      :
 9

10
                   ---------------
11
                PHILADELPHIA, PENNSYLVANIA
12                TUESDAY, JULY 16, 2002
                   ---------------
13

14
         BEFORE:  HONORABLE HARVEY BARTLE, III, J
15

16                        HEARING

17

18                   - - - - - -

19

20

21

22            SUZANNE R. WHITE, C.M.
         FEDERAL CERTIFIED REALTIME REPORTER
23               601 MARKET STREET
               1234 U.S. COURTHOUSE
24              PHILADELPHIA, PA
                 (215) 627-1882
25
```

```
 1    APPEARANCES:

 2    LEVIN, FISHBEIN, SEDRAN & BERMAN
      510 Walnut Street, Suite 500
 3    Philadelphia, PA  19106
      BY:   ARNOLD LEVIN, ESQ.
 4
      PLAINTIFFS' CLASS COUNSEL
 5
      AYLSTOCK, WITKIN & SASSER
 6    55 Baybridge Drive
      Gulf Breeze, FL  32561
 7    BY:  NEIL D. OVERHOLTZ, ESQ.

 8    PLAINTIFFS CASTAL AND ASHLEY

 9    PEPPER HAMILTON, LLP
      3000 Two Logan Square
10    18th and Arch Streets
      Philadelphia, PA  19103
11    BY:  EDWARD W. MADEIRA, JR., ESQ.

12    Liaison Counsel for Phentermine Manufacturers
      and Suppliers, and Medeva Pharmaceuticals,
13    Inc., Fisons, Inc.

14    ARNOLD & PORTER
      399 Park Avenue
15    New York, NY  10022-4690
      BY:  PETER L. ZIMROTH, ESQ.
16         ANAND AGNESHWAR, ESQ.
           DAVID WEINTRAUB, ESQ.
17
      Attorneys for A.H. Robins Company, Inc.,
18    American Home Products Corp.,
      Wyeth-Ayerst Laboratories Company, Division
19    of American Home Products Company

20    ARNOLD & PORTER
      555 Twelfth Street, N.W.
21    Washington, D.C.  20004-1202
      BY:  DANIEL A. PARISER, ESQ.
22
      Attorneys for A.H. Robins Company, Inc.,
23    American Home Products Corp.,
      Wyeth-Ayerst Laboratories Company, Division
24    of American Home Products Company

25
```

3

```
 1    ARNOLD & PORTER
      370 F STREET, SUITE 4500
 2    Denver, CA  80203
      BY:  KERI HOWE, ESQ.
 3
      Attorneys for A.H. Robins Company, Inc.,
 4    American Home Products Corp.,
      Wyeth-Ayerst Laboratories Company, Division
 5    of American Home Products Company

 6    O'QUINN, Laminack AND PIRTLE
      440 LOUISANA
 7    2300 LYRIC CENTRE BUILDING
      HOUSTON, TX  77002
 8    BY:  THOMAS W. PIRTLE, ESQ.
           Richard n. Laminack, ESQ.
 9
      ATTORNEYS FOR DEFENDANT
10    DUNN

11    MILLER, ALFANO & RASPANTI
      1818 Market Street, Suite 3402
12    Philadelphia, PA  19103
      BY:  GREGORY P. MILLER, ESQ.
13    Special Discovery Master

14                           -------

15

16

17

18

19

20

21

22

23

24

25
```

15

1  firm representing the plaintiffs at the time, and he
2  does not even and still to this day, does not know any
3  of the Louisiana lawyers involved.
4       Then Wyeth's story changes again and now, we
5  are in here in front of you because Wyeth asserts that
6  the phentermines, as well as some doctors, were
7  fraudulently joined.
8       I submit to you it's rather transparent that
9  an exception to the consent rules is fraudulent
10 joinder.
11      With that lead in, I would like to talk
12 about the law which controls fraudulent joinder in the
13 third circuit.
14      THE COURT: Why shouldn't that matter be
15 decided by the federal court in Louisiana rather than
16 my remanding the cases to the State Court?
17      MR. PIRTLE: That's a good point. I will
18 tell you why --
19      THE COURT: Thank you.
20      MR. PIRTLE: -- you need to decide this.
21 Because we tried in Louisiana. This is the third
22 federal body that we have been in front of, just trying
23 to get a hearing.
24      THE COURT: What did the Federal Judge in
25 Louisiana do?

16

1        MR. PIRTLE: He said you will be the one to
2    decide that.
3        THE COURT: I understand he passed it off.
4    But the question then becomes, since we have a lot of
5    these cases, whether they should not be decided by the
6    particular federal court where the removal has been, in
7    order to -- because it's so fact intensive, each one is
8    going to be different. Why should I remand it directly
9    to state court? Shouldn't there be a proceeding in the
10   Louisiana court where Wyeth would have an opportunity
11   to get full discovery if they want full discovery, the
12   judge permits it to see whether or not there is
13   fraudulent joinder?
14       MR. PIRTLE: We are not opposed to that
15   procedure. In coming in here today, there is not a
16   procedure, as you understand, judge, and we would
17   welcome a procedure that could shortcut this process.
18   As you know, we have been in a quest for remand hearing
19   for many, many months. And a procedure adopted by this
20   court that would allow the originator, federal courts,
21   to decide this question, I think every plaintiff would
22   welcome that procedure, because I will tell you, your
23   Honor, this is not the only case that I have that has
24   been removed. There are 14 more just like this on
25   interventions and, your Honor, every single case that I

                                                                102

1    doctors since the Moorik decision came down.  And at
2    the end of the day, when we go to trial, and one case
3    that did go to trial in Mississippi in Jefferson county
4    in 1999 that is emblematic of this, everybody else
5    disappears.  No evidence was presented against the
6    phentermine defendant, no evidence was presented
7    against the pharmacy defendant.  The pharmacy made a
8    motion for directed verdict after the plaintiff's
9    evidence came through.  It was not even opposed by the
10   plaintiff.  The phentermines got out without any
11   opposition, as well.  That has been happening just
12   repeatedly.  And there is really just no reason to
13   think that this case is different.
14              And to start, to take things backwards
15   from -- from what my adversary was talking about.
16   Let's talk about the sales reps.  There is not a single
17   decision in Mississippi State Court saying that sales
18   reps can be liable.  Not a single one.
19              THE COURT:  Is that really a matter for me
20   to get involved in?  Isn't it better for a federal
21   court in Mississippi to decide that?  I mean, that
22   court would certainly be better versed in the nuances
23   of Mississippi law than I.  Cases come down in courts
24   every day, the nuances of Mississippi law are not
25   something that I obviously deal with every day.

                                                                103

1           MR. AGNESHWAR:  I understand, you know,
2    that's the position that you are articulating.
3           THE COURT:  I'm asking in running an MDL,
4    there are a lot of issues we deal with, and rightly so.
5    As I said, for example, they were claims, punitive
6    damages.  It seems to me I have a right to step in and
7    join the plaintiffs or take some action to prevent them
8    from seeking punitive damages, or doing certain other
9    things.  But to get into whether or not individual
10   defendants can be sued under state law in Mississippi
11   and Louisiana, this is an unprecedented case, as we
12   said, in a lot of respects.  For an MDL judge to sit
13   here and decide what the latest law is in Mississippi
14   and Louisiana, and Texas and Montana and New Hampshire
15   and Virginia and Florida.
16          MR. AGNESHWAR:  I see what -- I understand
17   what you are --
18          THE COURT:  I raise the question now,
19   wouldn't it be better for a federal court in
20   Mississippi -- in Mississippi to decide whether a party
21   is proper?
22          MR. AGNESHWAR:  I think --
23          THE COURT:  All the people are there.
24   Discovery can be taken there of that limited issue, if
25   necessary.

104

MR. AGNESHWAR: Your Honor, there might be cases where the issues are really complicated and the Federal Judge in Mississippi might be closer to this situation. This case, I don't think, is one of them. But in any event, let me respond with two things. The first, procedurally, this is another case like the Anderson case, where the plaintiffs, they moved for an emergency hearing actually and went to the judge in Mississippi, the Federal Judge, and said, we want you to decide this. And this was a situation where our position was, and I think this is still -- this is what I feel very strongly is, there is an advantage, and this is the whole purpose of MDLs, for one judge to get the picture of what is going on throughout the country, really. And that picture is consistent.

THE COURT: In terms of a specific doctor in Louisiana. Now, what is the big picture nationally that I have to get? Maybe that is happening other places but I have to be case specific. Maybe doctor X did prescribe the drug for a plaintiff in Mississippi and that doctor is appropriately joined. Maybe in another case in Texas, a particular doctor who is joined didn't do so.

Now, there is no big picture about it. It's just a specific case. One place, it is right; one

1  place it is wrong. Maybe it was wrong that that
2  pharmacy in Mississippi that was being sued. But why
3  would I have a better grasp of that than a Federal
4  Judge in Mississippi, who would probably have a better
5  view of it in terms of a small pharmacy. A pharmacist
6  can come in and say, judge, look, they are strangling
7  me economically here. And there is no reason in the
8  world to bring me in. I have a -- you know, a place is
9  open, I'm closed on weekends. You know, I have two
10 employees, and I'm in this particular county and
11 it's -- the judge may know the county and say, this is
12 really crazy what is going on.
13         MR. AGNESHWAR: Actually, in Castal in
14 particular, I don't think it raises these kinds of
15 factual issues that make it any more difficult for your
16 Honor to decide the issues here about what the state
17 law cause than a Mississippi Federal Judge. And I do
18 think it's helpful, rather than we have cases -- and
19 just a little bit. I have been managing the
20 Mississippi diet drug litigation for quite a while, for
21 a couple of years.
22         THE COURT: Apparently you have your hands
23 full.
24         MR. AGNESHWAR: I certainly do. And we have
25 seen every stripe. I'm going to be candid with you. I

106

1  mean, it makes a huge difference to the parties whether
2  this case -- these cases stay in Jefferson County,
3  Mississippi or get removed to federal court.
4          THE COURT: I don't have any doubt about
5  that at all. I understand the reality. That is not
6  the real question. The question I'm wrestling with is
7  whether I'm the better -- this is a better court to
8  decide those issues, which may be so case specific, or
9  is it better for the Federal Judge in Mississippi, I'm
10 not talking about not having a Federal Judge decide it,
11 or the Federal Judge in New Orleans decide it, or the
12 Federal Judge in Houston or Galveston or wherever, to
13 decide those issues, because I'm having -- I understand
14 your argument about the phentermines but, you know, if,
15 for example, there is under state law some kind of a
16 doctrine of civil conspiracy, isn't it better for --
17 even in terms of commonality for a Federal Judge in
18 Louisiana to decide what the -- what the Louisiana law
19 is with respect to civil conspiracy than having me
20 sitting here in Philadelphia do that?
21         As I say, it would be one thing if they are
22 coming in here and claiming punitive damages. That,
23 obviously, they cannot do. It has a direct effect on
24 the settlement, on what the parties agreed to. And I
25 would agree in a minute to handle that. Or, if the

107

1  complaint goes far beyond what the settlement agreement
2  provides. It seems to me that would be certainly
3  appropriate.
4       MR. AGNESHWAR: Your Honor, one
5  clarification. These particular cases, Ashley and
6  Castal, do not raise settlement issues. These are
7  initial opt-out cases.
8       THE COURT: I understand. I am giving you
9  examples of matters. I mean, I don't think everything
10 should be dealt with necessarily by the federal court
11 to which the case may be removed, but -- or any other
12 situation that may be in the State Court.
13      MR. AGNESHWAR: I think, again, your Honor,
14 these kinds of issues are coming up every part of
15 Mississippi. They are being removed to a plethora of
16 federal judges in Mississippi. I really think that
17 principles of consistency and uniformity --
18      THE COURT: Mississippi does not really have
19 a plethora of federal judges down there. There are
20 only two districts and about two or three judges each.
21      MR. AGNESHWAR: We have removals that have
22 been removed to probably six or seven judges in
23 Mississippi. And if we look at the decisions that have
24 come down, like on the pharmacy issue before In Re:
25 Reslin, plaintiffs had a decision coming out their way.

126

1   And I really don't know the answer to this question,
2   and we are going to look into it. Whether or not under
3   the MDL, under the MDL statute, the Court can sort of
4   separate out issues and send them back. I just don't
5   know the answer to that question. It has been
6   suggested to me that that is not available under the
7   statute but I don't know whether that is true or not.
8   We are going to look into that and, you know, because
9   you have raised serious questions. Obviously, you have
10  some serious questions. But I just would say that the
11  solution that Mr. Laminack has suggested, and also
12  counsel from Mississippi, in our view, would be a --
13  would be a disaster for us. We would be litigating
14  these same issues over and over again all over the
15  country. It's the very reason we have an MDL.
16          THE COURT: You might be anyway because if I
17  make a decision, a case specific decision about what
18  the law of Mississippi is with respect to a pharmacy,
19  you know, I'm going to have to look at the complaint
20  that was filed and see what the cause of action is.
21  And then I'm going to have to take -- decide what
22  Mississippi law is. I'm going to have to decide
23  whether that is proper to bring that particular
24  defendant into the case.
25          Now, the next --

127

1    MR. ZIMROTH: Not whether -- not whether it
2  is proper to bring the case, but whether for --
3    THE COURT: Whether it's a fraudulent
4  joinder. So, in effect, I'm saying you really can't
5  bring a suit against this particular party under the
6  law.
7    MR. ZIMROTH: Or you have to -- it depends
8  on what the issue is, or ignore their consent.
9    THE COURT: Well, but putting aside the
10 phentermines for the moment. A particular doctor or
11 particular pharmacy now, I have to look into the law of
12 Mississippi and determine whether pharmacies can be
13 sued, under various causes of actions. Now, maybe
14 complaint A will have a certain theory against a
15 pharmacy. And then I will have to decide, well, does
16 Mississippi permit that or not. Then complaint B in
17 Mississippi will have a slightly different theory. So
18 I'm then going to have to decide whether or not in case
19 B, you can sue a pharmacy under that theory. Maybe you
20 can't sue it under theory A but maybe under B. Maybe
21 you can't sue under failure to warn, but we all know
22 about the ingenuity of lawyers. There are probably 25
23 or 30 in this room. And I'll bet there could be 25 or
24 30 different theories that lawyers could develop to sue
25 pharmacies in Mississippi.

128

```
 1              MR. ZIMROTH:  I'm sure 40 or 50.
 2              THE COURT:  That is probably right.  So then
 3    I would have to sit here and decide, well, you can have
 4    30 complaints, 30 different theories against
 5    pharmacies.  So the fact that I decided case A doesn't
 6    make it simple to deciding case B necessarily.
 7              MR. ZIMROTH:  Nor for any other Federal
 8    Judge.
 9              THE COURT:  I understand that.  I'm just
10    saying to you that it's simply, you know, deciding one
11    Mississippi case related to pharmacies may not be the
12    end of the story.
13              MR. ZIMROTH:  It may not, your Honor.  And I
14    say this with some trepidation because I know you won't
15    --
16              THE COURT:  Go ahead.  It's ten of six.  We
17    are going to spend five more minutes.
18              MR. ZIMROTH:  I think as long as there is an
19    MDL here, that that is --
20              THE COURT:  The job -- you would be saying I
21    would be shirking my responsibilities if I did not
22    handle that.
23              MR. ZIMROTH:  That is not what -- I did not
24    want to say that, judge.  But that's -- there is an
25    MDL.  And the MDL judges do this all the time.  I mean,
```