Travis is not fraudulent, and the case must be remanded. For this reason, the Court will only examine the more clearly arguably-viable cause of action, Plaintiff's claim against Dr. Travis for fraudulent concealment.

## II.    APPLICABLE LAW

### A.    Fraudulent Joinder

Plaintiffs who want to stay before a state court may be tempted to add a Defendant whose citizenship they share, but against whom the Plaintiff does not have a proper claim. To thwart this tactic, courts have fashioned tests to unmask fraudulent joinder. Even if the parties appear to be completely diverse in their citizenship, these tests empower a court to look behind the docket sheet to see if the Plaintiff has improperly added a Defendant whose citizenship he shares solely for the purpose of defeating federal jurisdiction. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). In examining a case for fraudulent joinder, a court does not look to the plaintiff's motives, but to the propriety of the joinder. Motives are irrelevant because it is the plaintiff's prerogative to avoid federal court: the plaintiff is master of his claim. However, the Court must look at how the plaintiff has joined the claims and the defendants to see if the plaintiff has done anything improper in his quest to stay in state court.

To this end, the federal courts have held that joinder is fraudulent in three instances: where (1) the plaintiff cannot possibly prove a cause of action against the resident (non-diverse) defendant, (2) the plaintiff has committed "outright fraud" in pleading his jurisdictional facts, or (3) the plaintiff has joined a diverse defendant with a nondiverse defendant as to whom there is no joint, several or alternative liability and the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Triggs*, 154 F.3d at 1287. Here, Wyeth argues that this a category

3

(1) fraudulent joinder; that is, that the Plaintiff cannot possibly prove a cause of action against Dr. Travis.

To succeed with this argument, Wyeth must show, by clear and convincing evidence, that there is not "even a possibility that a state court would find that the complaint states a cause of action against" the doctor or the clinic. *Id.; Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)[2] ("claim of fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence"). If there is such a possibility, "the federal court must find that the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287, *quoting Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993). Thus, this Court does not look for "a winning case against the allegedly fraudulent Defendant," but merely for the Plaintiff's pleading "a possibility of stating a valid cause of action." This does not require that the Plaintiff's cause of action be certain under state law: "even an *arguable* cause of action" will survive the "possibility" test. *See Crowe v. Coleman*, 113 F.3d 1536, 1539-40 (11th Cir. 1997) (where the Plaintiff's Georgia-law nuisance claim survived this test, even though Georgia case law was in conflict on the issue of whether the conduct in question was actionable, and the Georgia Supreme Court had not spoken on the issue). If the Plaintiff's claim is at least arguably viable under state law, joinder is legitimate. *Id.* Furthermore, "any ambiguity or doubt about the substantive state law favors remand to state court." *Id.* at 1539.

Wyeth argues that Plaintiff cannot possibly state a cause of action against Dr. Travis because

---

[2] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

Plaintiff's claims against Dr. Travis are time-barred. Therefore, the Court must examine the claims that Plaintiff raises against Dr. Travis, the applicable statutes of limitations, and the Alabama law interpreting the two.

Because the Plaintiff need only state an "arguable" claim under either of her causes of action against Dr. Travis for joinder to be not fraudulent, the Court will only examine the more clearly arguable cause of action, Plaintiff's claim against Dr. Travis for fraudulent concealment. *Cf. Adams v. American Home Products*, 122 F.Supp.2d 1301, 1303 (M.D. Ala. 2000) (where the court only examined the plaintiff's claims against one of the several defendants who were allegedly fraudulently joined, "[b]ecause American Home Products' motion fails if any Alabama citizen has not been fraudulently joined").

### B.    Plaintiff's Alabama-Law Fraudulent Concealment Claim, Generally

The Alabama Supreme Court recognizes a patient's cause of action against her doctor for fraudulent concealment. *See Johnson v. McMurray*, 461 So.2d 775, 778 (Ala. 1984). This cause of action, born in the common law, and codified at Ala. Code § 6-5-102, allows a plaintiff to sue another when that other has suppressed a material fact that he has a duty to disclose by virtue of a confidential relationship with the plaintiff. The Alabama high court has held that "the relationship between a doctor and patient is a 'confidential' one." *Id.*, citing *Hudson v. Moore*, 194 So. 147 (Ala. 1940), *other grounds superseded by statute, as stated in Ex parte Sonnier*, 707 So.2d 635, 638 (Ala. 1997).

### C.    The Statute of Limitations on Plaintiff's Alabama-Law Fraudulent Concealment Claim

Under Alabama law, all claims brought by a patient against her doctor arising out of the

doctor-patient relationship are governed by the limitations of the Alabama Medical Liability Act ("AMLA"), Ala. Code §§ 6-5-480 *et seq.*. This includes classic malpractice claims as well as claims for medical fraud or fraudulent concealment. *See, e.g., Sonnier*, 707 So.2d at 637-38 (applying the AMLA limitations to patient's claims that (1) her doctor had performed an unnecessary hysterectomy, and (2) her doctor had misrepresented information about her diagnosis); *Horn v. Citizens Hosp.*, 425 So.2d 1065,1070-71 (Ala. 1982) (applying the AMLA limitations provision to a patient's claim of fraudulent concealment).

The AMLA limitations period begins running at the time the patient first suffers injury. *See Adams,* 122 F.Supp.2d at 1303-04 (collecting Alabama Supreme Court cases). The limitations provision reads, in pertinent part:

> (a)    All actions against physicians...for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act...

> (b)    Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, Section[] ... 6-2-3...; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of...

Ala. Code § 6-5-482. As the text of the statute indicates, the AMLA provides for a two-year statute of limitations and a four-year statute of repose. The statute also provides a discovery rule, allowing a patient to bring an action within six months of discovering the injury, even if two years has passed since the injury happened. § 6-5-482(a). While the two-year statute of limitations can be tolled by

the statutory discovery rule, the four-year statute of repose cannot. *Id.*

Finally, in § 6-5-482(b), the AMLA statute of limitations expressly incorporates several specific other code provisions governing statutes of limitations. Importantly, § 6-5-482(b) incorporates Ala. Code § 6-2-3, which provides: "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Reading the AMLA together with this fraud limitations-accrual statute, the Alabama Supreme Court has divined the following rule for limitations on medical fraudulent concealment claims: "a plaintiff should be entitled to maintain an action based on fraud or misrepresentation arising out of an act or omission by a physician *as long as that action was filed within two years of the discovery of the fraud or misrepresentation and within four years of the act or omission.*" *Trammer v. Bernstein*, 596 So.2d 572, 575 (Ala. 1991), *citing Horn*, 425 So.2d at 1070-71 (where AMLA's four-year statute of repose was not tolled by patient's discovery of doctor's fraudulent concealment).

## III. ANALYSIS

The question of whether Plaintiff's fraudulent concealment claim is time barred is two-fold: first, the Court must determine whether Plaintiff's claim is within the two-year statute of limitations, and second, whether Plaintiff's claim is within the four-year statute of repose. The Court will take these in turn. The Plaintiff filed the instant action on July 18, 2002, and this date is the starting point for both inquiries. (Complaint, p.1).

To answer the statute of limitations question, the Court must look to the date Plaintiff

7

discovered the injury which she alleges Dr. Travis's fraudulent concealment caused.[3]  In her complaint, Plaintiff alleges that "it was not until [she] sought assistance and underwent an echocardiogram, that she first learned of the possible association between her medical condition and the diet drug, Pondimin.  After undergoing this echocardiogram, [she] discovered that she had sustained heart valve damage in January of 2002"  Id. at p.23.  Elsewhere in her complaint, she alleges that she first "sought assistance" sometime after she first developed the complained-of symptoms in the summer of 2001.  Id. at p.27.  From either date, under the two-years-from-discovery limitations rule of Trammer, Plaintiff's fraudulent concealment claim is within the two-year statute of limitations.

To answer the statute of repose question, the Court must look back four years from July 18, 2002 and ask whether the "act or omission" giving rise to the claim happened within those four years.  Here, since the claim is that Dr. Travis's shirked her duty to disclose her knowledge of the health risks of the drugs Plaintiff had taken, the relevant starting point for the statute of repose is Dr.

_____

[3]Plaintiff's complaint acknowledges that Pondimin was taken off the market on September 15, 1997, and that she took Pondimin sometime before that date. (Complaint, p.22).  Defendant argues that any injury that the Plaintiff suffered from taking Pondimin must have occurred sometime before September 15, 1997, (Doc. 14, pp.7-8), as the Plaintiff is bound by the determination of the U.S. District Court for the Eastern District of Pennsylvania's finding that, with Pondimin-caused injuries, that there is no latency period between taking the drug and the onset of the injury. (Doc. 1, Ex. 42, pp.33-34) (order certifying class and approving nation-wide class settlement in In re Diet Drugs Products Liability Litigation, 2000 WL 1222042 (E.D.Pa. 2000)).  However, even assuming that the order containing this ruling is binding on the Plaintiff, the injury that Plaintiff pleads against Dr. Travis is different from the initial injury caused by Pondimin use.  The injury that Plaintiff's complaint claims Dr. Travis's alleged fraudulent concealment caused her was exacerbation of the initial injury caused by the Pondimin use.  Plaintiff states that "the injuries she sustained may have been avoided or have been diagnosed and treated at an earlier stage to prevent further injury," and that "the injuries for which she complains could have been altogether avoided or greatly minimized." (Complaint, p.23).  Thus, the injury Plaintiff attributes to Dr. Travis is not the initial Pondimin-related injury, the turn-for-the-worse that Plaintiff's initial injury took following Dr. Travis's failing to advise Plaintiff of what Dr. Travis knew.

Travis's omission. This raises a problem: how does the Court place a date on something that never happened? Legal authority cited in the *Horn* opinion, 425 So.2d at 1068, suggest that it may be the date on which the physician gains actual knowledge of the material fact that the duty to disclose arises. *Id.*, *citing* 70 A.L.R.3d 7(1976) (for the notion that it is the date on which a physician gains actual knowledge that he has left a foreign object in a patient's body that the duty to disclose arises). If this is the case, it would seem that failure to act immediately on that knowledge is a breach of the duty to disclose, and that such a breach would be the "omission...complained of" which starts the statute of repose clock. *See Trammer*, 596 So.2d at 575 (where the date of the defendant doctors' misrepresentations were the date on which the statute of repose began to run).[4]

If indeed the relevant date is the date on which Dr. Travis actually learned about the dangers associated with Pondimin, it is possible, even arguable, that Plaintiff has a viable claim for fraudulent concealment against Dr. Travis. Plaintiff provides a time period in which she alleges Dr. Travis failed to tell her of the medical information that Dr. Travis was duty-bound to share. This time period is between "September 15, 1997," when, "following the abrupt withdrawal of fen-phen from the market..., the US Department of Health and Human Services ("DHHS"), through the Centers for Disease Control and Prevention and the National Institutes of Health, published written recommendations to physicians...that 'all patients with a history of use of [the drugs] undergo a careful history and thorough cardiovascular examination," and sometime after November 3, 1998, when the American College of Cardiology "again published" these recommendations. (Complaint

---

[4]However, the Court is not certain that this is the rule Alabama's supreme court would employ, as the parties have cited to no authority, and the Court's own research has not revealed any precedent of that court answering this question. This uncertainty makes the Plaintiff's claim even more "arguable."

at 22). Dr. Travis could have actually learned about the drug hazards at the later end of this time period, which would be within the four-year statute of repose window.

## IV.    CONCLUSION

For these reasons, Plaintiff has at least an arguably viable cause of action under Alabama law against Dr. Travis for fraudulent concealment, and thus Plaintiff's joining Dr. Travis was not fraudulent. Because Dr. Travis is not a fraudulently joined party, her citizenship must be considered for diversity-jurisdiction purposes. As both she and the Plaintiff are Alabama citizens, there does not exist diversity jurisdiction, the Plaintiff's motion to remand is **due to be and is hereby GRANTED** and this action is **hereby REMANDED to the Circuit Court of Marengo County, Alabama.**

SO ORDERED this _____ day of September, 2002

_W. B. H_____
SENIOR DISTRICT JUDGE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED

04 MAR 11 PM 3:1

U.S. DISTRICT COU
N.D. OF ALABAM.

WANDA CAMPBELL, et al.,    )
    )
    Plaintiffs    )
    )
vs.    )    CASE NO. CV03-HGD-3364-M
    )
WYETH, et al.,    )
    )
    Defendants    )

**ENTERED**

MAR 1 1 2004

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## O R D E R

The above-entitled civil action is before the court on the Motion to Remand and Motion for Sanctions filed by plaintiffs [Doc. #9] and the Motion to Stay to Allow Transfer to Multi-District Litigation Proceeding filed by defendants [Doc. #15].

Plaintiffs, Wanda Campbell, Marie Cork, Shirley Edmondson, Julia Eudy, Dottie Harvell, Vikki Jimerson, Donna Robertson, Beverly Scarborough, Vicky Scott, Jimmy Swords, Linda Thrower, and Phyllis Tollman, all Alabama residents, commenced this action by filing a complaint in the Circuit Court of Marshall County, Alabama. Named as defendants are Wyeth, Inc., Stacy Stubblefield, and Betsy R. Weaver. Plaintiffs state that they have opted out of the nationwide class action settlement reached in *Brown v. American Home Products* and wish to pursue their claims for damages individually. They allege that they took Pondimin or Redux, medications that were manufactured and

20

distributed by Wyeth, Inc., and suffered injuries as a result. They also allege that defendants Stubblefield and Weaver, residents of Alabama, acted as pharmaceutical sales representatives. Plaintiffs assert causes of action for strict liability under the Alabama Extended Manufacturers Liability Doctrine, failure to warn, breach of the warranty of merchantability, negligence, fraud and suppression.

With respect to the individual defendants, Stubblefield and Weaver, plaintiffs claim that they, along with Wyeth, "promoted, detailed, distributed, sold and/or marketed and made representations to plaintiffs' treating physicians . . . regarding Pondimin and/or Redux." It further is alleged that based on these representations made by Wyeth and its agents, plaintiffs' treating physicians prescribed Pondimin and/or Redux for plaintiffs. [Complaint, at ¶ 8]. Plaintiffs further allege that Stubblefield and Weaver, Wyeth's sales representatives, owed duties to plaintiffs which were breached by, *inter alia*, their failure to convey adequate warnings, negligent misrepresentations regarding the safety and efficacy of the drugs, negligent or intentional withholding of information about the danger of the drugs when they had actual or constructive knowledge of same, and continuing to promote the drugs despite actual or constructive knowledge of adverse drug reports. [*Id.* at ¶ 24, ¶¶ 73-75]. In Count VI, plaintiffs allege causes of action against all defendants for fraud, misrepresentation and suppression. [*Id.* at ¶¶ 83-93]. In that count, the individual defendants are alleged to have made negligent or

2

intentional representations that Pondimin and/or Redux were safe and effective and actively concealed adverse information about the drugs' physical effects. Plaintiffs also allege that defendants had a post-sale duty to warn plaintiffs about the potential risks associated with the drugs. [*Id*.].

Defendants removed the action to federal court, asserting that the individual defendants were fraudulently joined to defeat diversity jurisdiction in the federal court. Plaintiffs have filed a motion to remand this action to state court, arguing that Alabama law allows them to assert claims against the individual defendants for fraud and suppression. They also seek sanctions against defendants for removing this action. Defendants have asked the court to stay this action pending transfer to the United States District Court for the Eastern District of Pennsylvania, the court handling the multidistrict litigation (MDL) against these defendants based on their manufacture and distribution of Pondimin and Redux, and allow the MDL court to rule on the motion to remand.

On February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation sent a letter to all judges involved with MDL-1203, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, encouraging them to issue rulings on pending motions to remand. It is noted that the identical issue raised by plaintiffs' motion to remand in this action has been addressed by other judges of this court. *See Hough v. Wyeth, et al.*, CV04-H-0393-S; *Eaton v. Wyeth, et al.*, CV04-P-0380-M; *McGowan v. Wyeth, et al.*, CV04-TMP-0298-S; *Bridges v. Wyeth, et al.*, CV04-AR-0297-J; *Marshal*

*v. Wyeth, et al.*, CV04-TMP-0179-S; *Storey v. Wyeth, et al.*, CV04-BE-0027-E; *Cash v. Wyeth, et al.*, CV03-RRA-3378-E; *Davis v. Wyeth, et al.*, CV03-J-3167-J; *Terrell v. Wyeth, et al.*, CV03-BE-2876-S; *Floyd v. Wyeth, et al*, CV03-C-2564-M]. In each of those cases, the judge remanded the action to state court based on lack of diversity among the properly-named parties.

Title 28 U.S.C. § 1332 provides that the district courts have original jurisdiction of all civil actions involving an amount in controversy in excess of $75,000 and between citizens of different states. Title 28 U.S.C. § 1441(a) allows actions filed in state court to be removed to federal court when the federal court would have original jurisdiction over the action. If a non-diverse defendant has been fraudulently joined to defeat jurisdiction, the action may nonetheless be removed to federal court, and the citizenship of the fraudulently-joined defendant is ignored.

The removing parties bear the burden of proving the joinder of resident defendants was fraudulent. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden can be met by presentation of evidence or information "that compels the conclusion that the joinder is without right and made in bad faith . . . ." *Frontier Airlines, Inc. v. United Airlines, Inc.*, 758 F.Supp. 1399, 1404 (D.Colo. 1989), quoting *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 152 (1914). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the court must find that the joinder was proper

and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993). A claim of fraudulent joinder must be supported by "clear and convincing evidence." *Lane v. Champion International Corp.*, 827 F.Supp. 701, 706 (S.D.Ala. 1993). The Eleventh Circuit Court of Appeals has established a two-step test for determining if a defendant is fraudulently joined:

> (1) look to see whether there is **no possibility** the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.

*Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir. 1988) (emphasis added). The test looks to the plaintiff's pleadings at the time of removal, *Cabalceta*, 883 F.2d at 1561, and all questions of fact and controlling law must be resolved in favor of the plaintiff. *Id*.

In deciding whether plaintiffs have stated an arguable cause of action against the defendants alleged to have been fraudulently joined, the court must not allow the jurisdictional question to "subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A 1981)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the

joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis in original).

Defendants herein claim that Stacy Stubblefield and Betsy R. Weaver, Alabama residents, have been fraudulently joined to defeat jurisdiction in that plaintiffs cannot state a cause of action against these defendants for negligence, fraud or fraudulent concealment. They provide the affidavits of Stubblefield and Weaver, both of whom state they were sales representatives for Wyeth and both of whom deny they advertised, assembled, created, designed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, tested or warranted Pondimin or Redux. [Doc. #14 at Exhs. P, Q]. Stubblefield admits he detailed Redux, based solely on information provided to him by Wyeth. He also denies any knowledge of the alleged association between the drugs and valvular heart disease. [*Id.* at Exh. P]. However, the contents of the affidavits contradict plaintiffs' complaint allegations and go to the merits of plaintiff's claims against the individual defendants; they cannot provide the basis for a determination that plaintiffs' claims for negligence, misrepresentation, fraud or suppression against these individuals are without merit and can be ignored in the jurisdictional analysis.

After a review of the pleadings and Alabama law, the court cannot say that plaintiffs have no possibility of establishing a cause of action against Stubblefield or Weaver. At the very least, plaintiffs have stated a legally possible claim against these defendants for negligent misrepresentation.

Plaintiffs have alleged that Stubblefield and Weaver misrepresented certain material facts about the risks associated with the use of Pondimin and Redux and that plaintiffs, through their physicians, reasonably relied on the representations. Even if the court assumes neither Stubblefield nor Weaver had any knowledge of the risks associated with the drugs at the time they acted as sales representatives for Wyeth, thereby foreclosing any claim for intentional misrepresentation or suppression, the court cannot say that plaintiffs have wholly failed to state a claim for negligent misrepresentation under Alabama law. *See George v. Associated Doctors Health & Life Ins. Co.*, 675 So.2d 860, 862 (Ala. 1996); *Goggans v. Realty Sales & Mortgage*, 675 So.2d 441, 443 (Ala.Civ.App. 1996). *See also Thomas v. Halstead*, 605 So.2d 1181, 1184 (Ala. 1992) ("If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place") (citations omitted). Therefore, defendants have not satisfied their burden of coming forward with clear and convincing evidence that the joinder of Stubblefield and Weaver was fraudulent.

Accordingly, it is ORDERED that the Motion to Stay is due to be and hereby is DENIED. It is further ORDERED that the Motion to Remand is due to be and hereby is GRANTED and this action will be REMANDED to the Circuit Court of Marshall County, Alabama, fifteen (15) days after the date of entry of this order. The Motion for Sanctions is DENIED. Any party may seek a review of this order of remand pursuant to Rule 72(a), Fed.R.Civ.P.

7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 APR 27 AM 8: 16

U.S. ~~DISTRICT COURT~~
N.D. OF ALABAMA

MARCIA CARLISLE, *et al.*,          )
                                    )
        Plaintiffs,                 )
                                    )
vs.                                 )          Civil Action No. CV-04-HGD-0394-S
                                    )
WYETH, *et al.*,                    )          **ENTERED**
                                    )
        Defendants.                 )          APR 2 7 2004

                                               UNITED STATES DISTRICT COURT
**ORDER**                                      NORTHERN DISTRICT OF ALABAMA

On March 11, 2004, Magistrate Judge Harwell G. Davis entered an order

granting plaintiffs' motion to remand, and remanding this action to the Circuit Court

of Jefferson County, Alabama.[1]  The order advised the parties that they could seek

review of the order of remand pursuant to Federal Rule of Civil Procedure 72(a).  On

March 25, 2004, defendant Wyeth filed objections and an appeal to the district court

of the magistrate judge's order.[2]  Plaintiffs filed a response to Wyeth's objections on

March 31, 2004.[3]

After careful consideration of the record in this case, the magistrate judge's

order of remand, Wyeth's objections and appeal, and plaintiff's response to Wyeth's

objections, the court OVERRULES Wyeth's objections and AFFIRMS the order of

---

[1]Doc. no. 14.

[2]Doc. no. 17.

[3]Doc. no. 18.

the magistrate judge.[4] Accordingly, it is ORDERED that this action be, and the same hereby is, remanded to the Circuit Court of Jefferson County, Alabama, from which it was removed. The clerk is directed to send a certified copy of this order to the clerk of the state court. Costs incurred herein are taxed to Wyeth. The clerk is directed to close the file.

DONE this __27th__ day of April, 2004.

_____
United States District Judge

---

[4]This result is in accordance with the memorandum opinions entered by the undersigned on even date herewith in *Legg v. Wyeth,* Civil Action No. CV-04-S-0435-NE, and *Armstrong v. Wyeth,* Civil Action No. CV-04-S-0247-NW.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 MAR 11 PM 3: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARCIA CARLISLE, et al.,       )
                               )
            Plaintiffs         )
                               )
      vs.                      )          CASE NO. CV04-HGD-0394-S
                               )
WYETH, et al.,                 )
                               )          **ENTERED**
            Defendants         )
                               )          MAR 11 2004

## O R D E R

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

The above-entitled civil action is before the court on the Emergency Motion to Remand filed by plaintiffs [Doc. #7], the Motion to Stay to Allow Transfer to Multi-District Litigation Proceeding filed by defendants [Doc. #11], and the Motion for Oral Argument filed by plaintiffs [Doc. #9].

Plaintiffs, Marcia Carlisle, Kathleen Johnson, and Donna McGuffie, all Alabama residents, commenced this action by filing a complaint in the Circuit Court of Jefferson County, Alabama. Named as defendants are Wyeth, Inc., Ben Lavender, and Anthony Cherry. Plaintiffs state that they have opted out of the nationwide class action settlement reached in *Brown v. American Home Products* and wish to pursue their claims for damages individually. They allege that they took Pondimin or Redux, medications that were manufactured and distributed by Wyeth, Inc., and suffered injuries as a result. They also allege that defendants Lavender and Cherry, residents of Alabama, acted as



pharmaceutical sales representatives. Plaintiffs assert causes of action for strict liability under the Alabama Extended Manufacturers Liability Doctrine, failure to warn, failure to test, negligence, breach of warranties, fraud, misrepresentation, and conspiracy to defraud and conceal.

With respect to the individual defendants, Lavender and Cherry, plaintiffs claim:

> Upon information and belief, and at all times material hereto, these Sales Rep Defendants were individually employed, contracted, associated or otherwise engaged as a pharmaceutical sales person, detailer and/or pharmaceutical representative by [Wyeth] in furtherance of marketing, promoting, selling and/or distributing the pharmaceutical drugs fenfluramine (Pondimin®) and/or dexfenfluramine (Redux™) in the State of Alabama. As set forth more completely herein, the Sales Rep Defendants committed positive tortuous [sic] acts against each Plaintiff. Specifically, withinn the years of 1996 and 1997, and prior to that time, the following named Sales Rep Defendants were directly involved in detailing, marketing, promoting, selling and/or distributing of drugs fenfluramine (Pondimin®) and/or dexfenfluramine (Redux™), alone or in combination with phentermine to the following named Plaintiff's prescribing physicians:

> 1. Sales Rep Defendant Ben Lavender detailed, marketed, promoted, sold and/or distributed fenfluramine (Pondimin®), dexfenfluramine (Redux™), alone or in combination with phentermine to Plaintiff Marcia Carlisle, Kathleen Johnson, and Donna McGuffie's prescribing physician, Omar Khalaf, M.D.; and

> 2. Sales Rep Defendant Anthony Cherry detailed, marketed, promoted, sold and/or distributed fenfluramine (Pondimin®), dexfenfluramine (Redux™), alone or in combination with phentermine to Plaintiff Marcia Carlisle, Kathleen Johnson, and Donna McGuffie's prescribing physician, Omar Khalaf, M.D.

2

[Complaint at ¶ 24]. The tortious acts alleged to have been committed by Lavender and Cherry include failure to convey adequate warnings about the risks of fenfluramine and dexfenfluramine; negligent distribution, marketing, advertisement or promotion of the drugs; and fraudulent or reckless misrepresentations about the safety and efficacy of the drugs. The individual defendants also are alleged to have been part of a conspiracy to conceal from the public and plaintiffs information relating to the dangers associated with the drugs. [*Id.* at ¶ 25].

In Count IV, plaintiffs assert a cause of action for negligence against all defendants, alleging that each defendant owed a duty to plaintiffs to exercise reasonable care in the marketing and promotion of fenfluramine and dexfenfluramine. The individual defendants are claimed to have been negligent in their actions, misrepresentations, and omissions toward plaintiffs. [*Id.* at ¶¶ 101-02]. Count VI alleges a cause of action for intentional or reckless misrepresentation for providing allegedly false, incomplete and misleading information about the drugs to plaintiffs' physicians and others, upon which plaintiffs relied to their detriment. [*Id.* at ¶¶ 112-17].

In Count VII, plaintiffs allege that defendants negligently represented to plaintiffs' physicians and others that the drugs were safe and the utility of the drugs outweighed any risks. It also is alleged that defendants negligently failed to disclose important safety and injury information, which they had a duty to disclose in the marketing and promotion of the drugs. [*Id.* at ¶¶118-23].

3

Plaintiffs assert that defendants, "individually and collectively, committed acts of negligent misrepresentation and negligent concealment by suppressing material facts relating to the dangers and injuries associated with, and caused by, the use of the subject drugs." [*Id.* at ¶ 120].

Defendants removed the action to federal court, asserting that the individual defendants were fraudulently joined to defeat diversity jurisdiction in the federal court. Plaintiffs have filed a motion to remand this action to state court, arguing that Alabama law allows them to assert claims against the individual defendants for negligence, fraudulent, reckless or negligent misrepresentation, and conspiracy to conceal material information. Plaintiffs have submitted the affidavit of Dr. Omar Khalaf, in which he states that Lavender and Cherry visited his office and promoted and marketed fenfluramine and dexfenfluramine to him. [Doc. #7 at Exh. A, ¶ 3]. Dr. Khalaf further states that he relied on Lavender and Cherry to disclose to him any side effects of the drugs not discoverable in common sources, any safety issues, and any adverse drug events reports received by Wyeth. [*Id.* at ¶ 4]. Neither Lavender nor Cherry informed him of any safety issues; in fact, they continuously represented that the drugs were safe and effective for long term use. [Id. at ¶¶ 5, 6].

Defendants have asked the court to stay this action pending transfer to the United States District Court for the Eastern District of Pennsylvania, the court handling the multidistrict litigation (MDL) against these defendants based

4

on their manufacture and distribution of Pondimin and Redux, and allow the MDL court to rule on the motion to remand.

On February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation sent a letter to all judges involved with MDL-1203, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, encouraging them to issue rulings on pending motions to remand. It is noted that the identical issue raised by plaintiffs' motion to remand in this action has been addressed by other judges of this court. *See Hough v. Wyeth, et al.*, CV04-H-0393-S; *Eaton v. Wyeth, et al.*, CV04-P-0380-M; *McGowan v. Wyeth, et al.*, CV04-TMP-0298-S; *Bridges v. Wyeth, et al.*, CV04-AR-0297-J; *Marshal v. Wyeth, et al.*, CV04-TMP-0179-S; *Storey v. Wyeth, et al.*, CV04-BE-0027-E; *Cash v. Wyeth, et al.*, CV03-RRA-3378-E; *Davis v. Wyeth, et al.*, CV03-J-3167-J; *Terrell v. Wyeth, et al.*, CV03-BE-2876-S; *Floyd v. Wyeth, et al*, CV03-C-2564-M]. In each of those cases, the judge remanded the action to state court based on lack of diversity among the properly-named parties.

Title 28 U.S.C. § 1332 provides that the district courts have original jurisdiction of all civil actions involving an amount in controversy in excess of $75,000 and between citizens of different states. Title 28 U.S.C. § 1441(a) allows actions filed in state court to be removed to federal court when the federal court would have original jurisdiction over the action. If a non-diverse defendant has been fraudulently joined to defeat jurisdiction, the action may

5

nonetheless be removed to federal court, and the citizenship of the fraudulently-joined defendant is ignored.

The removing parties bear the burden of proving the joinder of resident defendants was fraudulent. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden can be met by presentation of evidence or information "that compels the conclusion that the joinder is without right and made in bad faith . . . ." *Frontier Airlines, Inc. v. United Airlines, Inc.*, 758 F.Supp. 1399, 1404 (D.Colo. 1989), quoting *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 152 (1914). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993). A claim of fraudulent joinder must be supported by "clear and convincing evidence." *Lane v. Champion International Corp.*, 827 F.Supp. 701, 706 (S.D.Ala. 1993). The Eleventh Circuit Court of Appeals has established a two-step test for determining if a defendant is fraudulently joined:

> (1) look to see whether there is **no possibility** the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.

*Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir. 1988) (emphasis added). The test looks to the plaintiff's pleadings at the time of removal, *Cabalceta*, 883 F.2d at 1561, and all questions of fact and controlling law must be resolved in favor of the plaintiff. *Id.*

In deciding whether plaintiffs have stated an arguable cause of action against the defendants alleged to have been fraudulently joined, the court must not allow the jurisdictional question to "subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A 1981)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis in original).

Defendants herein claim that Ben Lavender and Anthony Cherry, Alabama residents, have been fraudulently joined to defeat jurisdiction in that plaintiffs cannot state a cause of action against these defendants. They provide the affidavits of Lavender and Cherry, both of whom state they are or were sales representatives for Wyeth and both of whom deny they advertised, assembled, created, designed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, tested or warranted Pondimin or Redux. [Doc. #6]. Both admit they promoted and detailed Redux, based solely on information provided to them by Wyeth. They also deny any knowledge of the alleged

7

association between the drugs and valvular heart disease. [*Id.*]. However, the contents of the affidavits contradict plaintiffs' complaint allegations and go to the merits of plaintiff's claims against the individual defendants; they cannot provide the basis for a determination that plaintiffs' claims for negligence, misrepresentation, fraud or suppression against these individuals are without merit and can be ignored in the jurisdictional analysis.

After a review of the pleadings and Alabama law, the court cannot say that plaintiffs have no possibility of establishing a cause of action against Lavender or Cherry. At the very least, plaintiffs have stated a legally possible claim against these defendants for negligent misrepresentation. Plaintiffs have alleged that Lavender and Cherry misrepresented certain material facts about the risks associated with the use of Pondimin and Redux and that plaintiffs, through their physicians, reasonably relied on the representations. Even if the court assumes neither Lavender nor Cherry had any knowledge of the risks associated with the drugs at the time they acted as sales representatives for Wyeth, thereby foreclosing any claim for intentional misrepresentation or suppression, the court cannot say that plaintiffs have wholly failed to state a claim for negligent misrepresentation under Alabama law. *See George v. Associated Doctors Health & Life Ins. Co.*, 675 So.2d 860, 862 (Ala. 1996); *Goggans v. Realty Sales & Mortgage*, 675 So.2d 441, 443 (Ala.Civ.App. 1996). *See also Thomas v. Halstead*, 605 So.2d 1181, 1184 (Ala. 1992) ("If a third person is injured by the deceit, he may recover against the one who made

8

possible the damages to him by practicing the deceit in the first place") (citations omitted). Therefore, defendants have not satisfied their burden of coming forward with clear and convincing evidence that the joinder of Lavender and Cherry was fraudulent.

Accordingly, it is ORDERED that the Motion to Stay is due to be and hereby is DENIED, and the Motion for Oral Argument is due to be and hereby is DENIED. It is further ORDERED that the Emergency Motion to Remand is due to be and hereby is GRANTED and this action will be REMANDED to the Circuit Court of Jefferson County, Alabama, fifteen (15) days after the date of entry of this order. Any party may seek a review of this order of remand pursuant to Rule 72(a), Fed.R.Civ.P.

DONE this ___11th___ day of March, 2004.


　　　　　　　　　　　　　　　　　　HARWELL G. DAVIS, III
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

YOLANDA CARTER, et al.,      )

        Plaintiffs,      )

vs.      )      CV 04-AR-0446-S

WYETH, et al.,      )

        Defendants.      )

**ENTERED**

MAR 3 0 2004

## ORDER

In accordance with the accompanying memorandum opinion, the court finds that it lacks subject matter jurisdiction under 28 U.S.C. § 1447(c), and therefore that the case was improvidently removed. Accordingly, plaintiffs' motion to remand is GRANTED, and the case is REMANDED to the Circuit Court of Jefferson County, Alabama. The Clerk is directed to effectuate this order.

Costs are taxed against the removing defendant.

**DONE** and **ORDERED** this ___30__ day of March, 2004.

William M. Acker, Jr.
Sr. United States District Judge



FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

04 FEB -3  AM 10: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

SANDRA CASH,                        )
                                    )
    Plaintiff,                  )
                                    )
                                    )
                                    )
vs.                                 )    CIVIL ACTION NO. 03-RRA-3378-E
                                    )
WYETH, et al.,                      )
                                    )
    Defendants.                 )

**ENTERED**

FEB - 3 2004

## MEMORANDUM OF DECISION

    This action was removed from the Circuit Court of Calhoun County, Alabama. The

plaintiff has filed a motion to remand. The complaint alleges that she suffered valvular heart

disease as a result of taking the drug Pondimin or Redux. (The defendants state that the

plaintiff took Pondimin only.) The question before the court is whether defendant Anthony

Cherry, Wyeth's sales representative, was fraudulently joined as a defendant in order to defeat

diversity jurisdiction.

    Remand must be granted if there is a possibility that the state court would find that the

plaintiff has stated a claim against the defendant in question. *Cabalceta v. Standard Fruit Co.,*

883 F.2d 1553, 1561 (11th Cir. 1989). Evidence may be considered as well as the allegations

in the complaint:

        To determine whether the case should be remanded, the district court must
    evaluate the factual allegations in the light most favorable to the plaintiff and must
    resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549.
    The federal court makes these determinations based on the plaintiff's pleadings at the



time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties.

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), *quoting B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Along with other submissions, the defendants have submitted the affidavit of Cherry, and the plaintiff has presented the affidavit of her doctor, Omar Khalaf. The parties have not conducted discovery.

The complaint alleges the following against Cherry:

22.   Upon information and belief the positive tortious acts which were committed by the Sales Rep Defendant in his individual and/or corporate capacity, include, but are not limited to, the following:

    a.    Sales Rep Defendant <u>failed to convey adequate warnings to the Plaintiff through the prescribing physician</u> set forth above regarding the risks of prescribing fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

    b.    Sales Rep Defendant was in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™) which has caused harm to the Plaintiff SANDRA CASH;

    c.    Sales Rep Defendant <u>negligently distributed, marketed, advertised and/or promoted</u> the drugs fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

    d.    Sales Rep Defendant made <u>fraudulent and reckless misrepresentations regarding the character, safety and efficacy</u> of the drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), and;

    e.    Sales Rep Defendant, <u>with knowledge of unreasonable risks</u> associated with the ingestion of fenfluramine (Pondimin®) and dexfenfluramine (Redux™), alone and/or in combination with phentermine <u>continued to make misrepresentations regarding the character, safety and efficacy</u> of drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), while providing and/or offering incentives, rebates, reimbursements, perks, and/or other consideration to Plaintiff's prescribing physician

2

in furtherance of attempting to influence the prescribing of said diet drugs.

23.   Defendant Anthony Cherry is a citizen of Calhoun County and is over nineteen years of age.  At all times material hereto, this Defendant was in the business of promoting, marketing , developing, selling and/or distributing the pharmaceutical drugs fenfluramine and/or dexfenfluramine in the State of Alabama and did market, develop, sell, detail and/or distribute said drugs to Plaintiff, Sandra Cash's prescribing physician, Omar Khalaf, M.D.  This defendant was also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiff.

*Complaint*, ¶¶22-23 (emphasis added). Thus, the complaint alleges that Cherry failed to warn of the dangers of Pondimin, negligently marketed and distributed this dangerous drug, recklessly and intentionally misrepresented its dangers, and conspired to conceal its dangers.

The defendants state that under Alabama law the plaintiff clearly cannot state a claim against Cherry.  They cite law holding that, absent personal participation, an employee is not liable for the negligence of his employer, that the fraud and conspiracy claims are not pled with particularity, and that a conspiracy claim fails when the claims underlying the conspiracy fail. Moreover, they factually contend that Cherry said nothing about Pondimin whatsoever. Relying on Cherry's affidavit, the defendants state that Cherry did not even promote Pondimin, that Wyeth composed warnings and other information concerning Pondimin for Cherry, who was not a part of that process, and that Cherry did not have the expertise to question the accuracy of any information supplied by Wyeth.  Cherry further states in his affidavit that he was unaware of any association between Pondimin and the heart disease of which the plaintiff complains, and he made no representation whatsoever concerning this

3

drug. The defendants assert in their written opposition to remand that this evidence is uncontroverted. However, Dr. Khalaf states that Cherry visited his office and "promoted and marketed" Pondimin, *Khalaf Affidavit*, ¶3, and that Cherry "continuously represented that [Pondimin and Redux] were safe and effective. Also, [Cherry] represented to [him] that the drugs were safe and effective for long term use," *id.* at ¶6.[1] Khalaf additionally states:

> The reliance I placed on Mr. Cherry and Mr. Lavender regarding safety issues for Pondimin and Redux was made even more critical by the fact that warnings to physicians prescribing Pondimin and Redux that these drugs could cause valvular heart disease were not contained in the Physicians' Desk Reference ("PDR") until the 1998 edition, which was after Pondimin and Redux were withdrawn from the market.

*Id.* at ¶7.


### Whether to Defer to MDL Judge

The defendants want the court to allow this remand issue to go to the MDL court. In her motion to remand, the plaintiff responds that in an MDL hearing the judge "indicated a preference" for all remand motions to be handled by the various district courts. In their written opposition to remand, the defendants respond that a copy of the transcript of the 1998 hearing stating such "sentiments" has not been supplied by the plaintiff. The defendants, however, do not deny that the judge did, in fact, indicate such a preference.

The defendants refer to statements in an August, 2003 memorandum written by the MDL judge:

---

[1] Materials presented to the court by the defendants included information sent to Wyeth's sales force. In "Questions and Answers About Pondimin" and in the Pondimin "Fact Sheet" it is stated that Pondimin is for short-term use.

[R]ecurrent issues have continued to emerge in connection with motions to remand to state courts cases removed by Wyeth on the basis of diversity of citizenship. We have now developed a broader perspective than is usually available to individual transferor courts in dealing with widespread efforts fraudulently to join Phentermine manufacturers as a tactic to thwart removal of cases to the federal courts. Likewise, we are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal. Many of these issues have common patterns as well as ramifications far beyond any specific case. Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203.

This memorandum was addressing motions to remand all pending *cases* to the various transferor courts on the ground that the MDL had done its work. The court gave several reasons why the cases should not be remanded to the transferor courts, one of which was that, after all its work, the MDL had developed a "broader perspective than is usually available" to the transferor courts in dealing with motions to remand to state courts based on fraudulent joinder.

Also, the defendants cite *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990):

Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, see *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988), and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years, see *In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 154-59 (2d Cir.1987) (describing history of proceedings before Judge Weinstein), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served. We hold, therefore, that the MDL

Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, *cf. United States v. United Mine Workers*, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947) (district court has authority to issue injunction while jurisdictional questions are pending), that objection to be resolved by the transferee court.

*Id.* at 9. This language points out what lies at the heart of MDL litigation: common questions of law or fact.

The question of whether Cherry was negligent or made fraudulent statements is specific to this case. The MDL court would not be in a better position to decide remand than this court. Also, this court has heard oral argument and considered the parties' contentions. Wherefore, the court will exercise its discretion to decide the question of fraudulent joinder.

<u>Whether There Is Fraudulent Joinder</u>

The defendants' argument against remand is premised upon the evidence being uncontroverted that Cherry did not promote or market or make any representation to Dr. Khalaf about Pondimin. If that were true, the motion to remand might be due to be denied. But there is clearly a factual dispute about what Cherry did and said, as Dr. Khalaf states that Cherry visited his office, promoted and marketed Pondimin, and represented that Pondimin was safe and effective for long-term use. Wherefore, there is at least a possibility that the plaintiff has a claim against Cherry.

<u>Decision</u>

For the reasons stated above, the court has decided to exercise its discretion to decide

the remand issue, this is not a case of fraudulent joinder, and the motion to remand is due to be granted for lack of subject matter jurisdiction. An appropriate order will be entered.

DONE this __2nd__ day of February, 2004.

Robert R. Armstrong, Jr.
United States Magistrate Judge

FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NOV 2 1 2003

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

SHARON C. CRITTENDEN,          )
et al.,                        )
                               )
     Plaintiffs,               )
                               )
     v.                        )     CIVIL ACTION NO.
                               )     03-T-920-N
WYETH, a corporation,          )
et al.,                        )
                               )
     Defendants.               )

## ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C.A. §§ 1332, 1441, is now before the court on
plaintiffs' motion to remand.   The court agrees with
plaintiffs that this case should be remanded to state
court.  First, there has not been fraudulent joinder of any
resident defendant (that is, plaintiffs have colorable
claims against such a defendant), see Coker v. Amoco Oil
Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v.
Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

EOD   11/24/03

20

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 2) of the Federal Rules of Civil Procedure). *See* Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motions to remand, filed on September 30 and October 15, 2003 (doc. nos. 9, 13, and 14), are granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Covington County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 21st day of November, 2003.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED

04 FEB 25 PM 1:5

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA M. DAVIS,

    PLAINTIFF,

VS.

                    CASE NO. CV 03-J-3167-J

WYETH, et al.,

    DEFENDANTS.

ENTERED

FEB 2 5 2004

## MEMORANDUM OPINION

This matter is before the court on the plaintiff's motion to remand and motion for sanctions (doc. 10) and the defendant's opposition to remand (doc. 13). The court having previously stayed this matter pending decision on conditional transfer by the Judicial Panel on Multidistrict Litigation, said stay is hereby **LIFTED**.[1] Having considered the motion to remand and the opposition thereto, the court finds as follows:

Plaintiff filed suit in the Circuit Court of Walker County against defendant Wyeth, Inc. ("Wyeth"), and three of defendant Wyeth's pharmaceutical sales representatives, Mary Lou Carnaggio, Nikki N. Windham and David Wurm. The parties do not dispute that the sales representatives are Alabama residents. The plaintiff asserts claims under the Alabama Extended Manufacturer's Liability Doctrine

---

[1] The court has received notice from the Judicial Panel on Multidistrict Litigation concerning opposition to the conditional transfer order. Said notice further states that said conditional transfer order "does not in any way limit the pretrial jurisdiction of [this] court." The latter further encourages the court to rule on "a motion pending before you in the action - particularly a motion to remand to state court ..." Given this stance by the Judicial Panel, this court has revisited its prior stay of this litigation and the motion to remand pending before it.